**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) LIMITED, and YANTAI CIMC RAFFLES OFFSHORE LIMITED, | Civil Action No.:  1:13-cv-00052-JSR ECF Case |
| Petitioners, | Hon. Jed S. Rakoff |
| - against - | |
| SCHAHIN HOLDING S.A., SCHAHIN ENGENHARIA S.A., SEA BISCUIT INTERNATIONAL INC., BLACK GOLD DRILLING LLC, BAERFIELD DRILLING LLC, and SORATU DRILLING LLC, | **ORAL ARGUMENT REQUESTED** |
| Respondents. | |

**CIMC RAFFLES' MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR**
**POST-JUDGMENT ENFORCEMENT PURSUANT TO FED. R. CIV. P. 69**

**SCHULMAN BLACKWELL LLP**
Dan J. Schulman
Christopher A. Blackwell
11 Broadway, Suite 615
New York, New York 10004
Tel:  (646) 688-5214
Fax:  (646) 304-1117
Email:  dschulman@schulmanblackwell.com
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Limited*
*and Yantai CIMC Raffles Offshore Limited*

**DEBEVOISE & PLIMPTON LLP**
David W. Rivkin
Nwamaka G. Ejebe
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836
Email:  dwrivkin@debevoise.com
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Limited and*
*Yantai CIMC Raffles Offshore Limited*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ……………………………………………………………1

FACTS……………………………………………………………………………………3

ARGUMENT …………………………………………………………………………10

I.   The Court Should Enter a Turnover Order
     Against Black Gold, BDL, and SDL……………………………………………10

     The Court Has Authority to Issue a Turnover Order………………………10

     Judgment Debtors Should Be Directed to Pay the Judgment………………14

     The Court Should Direct Debtor Black Gold, 100% Owner
     of BDL and SDL, to Turnover, Execute, and Assign its
     Membership Interests to CIMC Raffles…………………………………………16

II.  The Court Should Enter a Restraining Notice Against
     Schahin Holding, Schahin Engenharia, and Sea Biscuit……………………17

CONCLUSION………………………………………………………………………19

# TABLE OF AUTHORITIES

Page

## CASES

1.  Dep't of Environmental Protection  of City of New
    York v. Dep't of Environmental Protection of the State
    of New York, 70 N.Y.2d 233, 519 N.Y.S.2d 539 (1987)…..…..………….…………......……10

2.  Festinger v. Edrich,
    32 A.D.2d 412, 820 N.Y.S.2d 302 (2d Dep't 2006) ...........................................................15

3.  Gallant v. Kanterman,
    249 A.D.2d 59, 671 N.Y.S.2d 50 (1st Dep't 1998) ...........................................................16

4.  Hotel 71 Mezz Lender LLC v. Falor,
    14 N.Y.3d 303, 900 N.Y.S.2d 698, 926 N.E.2d 1202 (2010).............................11, 13, 14, 16

5.  Koehler v. Bank of Bermuda Ltd.,
    577 F.3d 497 (2d Cir. 2009)..............................................................................................11

6.  Koehler v. Bank of Bermuda Ltd.,
    12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825 (N.Y. 2009) ............................11, 14, 15

7.  New Hampshire v. Maine,
    532 U.S.742, 121 S.Ct. 1808, 149 L.Ed.3d 968 (2001)......................................................15

8.  Peacock v. Thomas,
    516 U.S. 349 (1996)..........................................................................................................12

9.  Riggs v. Johnson County,
    6 Wall. 166 (1868) ...........................................................................................................12

10. Rosen v. Wolpert,
    244 A.D.2d 202, 664 N.Y.S.2d 910 (1st Dep't 1997) .........................................................16

11. Samuels v. Samuels,
    99 A.D.2d 986, 473 N.Y.S.2d 436 (1st Dep't 1984) ..........................................................17

12. Sequa Capital Corp. v. Nave,
    921 F. Supp. 1072 (S.D.N.Y. 1996).................................................................................17

13. Simon v. Safelite Glass Corp.,
    128 F.3d 68 (2d Cir. 1997).................................................................................................16

# TABLE OF AUTHORITIES

<u>Page</u>

## STATUTES

14.  9 U.S.C. § 9…………………………………………………..……………………12

15.  9 U.S.C. § 201-204……………………………………………………..……………12

16.  Fed. R. Civ. P. 55…………………………………………………..……………17

17.  Fed. R. Civ. P. 64…………………………………………………..……………17

18.  Fed. R. Civ. P. 69……………………..…………………….…………3, 10, 11, 12, 17

19.  Fed. R. Civ. P. 71…………………………………………………..……………10

20.  N.Y. CPLR 5201…..………………………………………….……12, 13

21.  N.Y. CPLR 5225…..……………………………………….………...…10, 14, 16

22.  N.Y. CPLR 5229…..………………………………………...……………..3, 17, 18

## SECONDARY SOURCES

23.  David Siegel, New York Practice § 487……..…...................…......……...…...........……14

24.  David Siegel, Practice Commentaries to CPLR 5201..……….................……….….…....……13

**<u>Preliminary Statement</u>**

      Petitioners CIMC Raffles Offshore (Singapore) Limited and Yantai CIMC Raffles Offshore Ltd.  ("Petitioners" or "CIMC Raffles") respectfully submit this memorandum of law in support of CIMC Raffles' motion to enforce the judgment rendered by this Court and entered by the Clerk on or about March 19, 2013 as against respondents Black Gold Drilling LLC ("Black Gold"), Baerfield Drilling LLC ("BDL") and Soratu Drilling LLC ("SDL") (collectively, "Judgment Debtors"), by directing:

(1) <u>Black Gold and its wholly owned subsidiary, BDL</u>,[1] jointly and severally, to turnover on or before April 16, 2013, cash or cash equivalents, bank deposits, or other funds  to pay the judgment in the approximate amount of <u>$46.961 million</u> ($46,094,027.32 + $784,229.89 + 13,206.28 + $350+ $69,582.68 + post-judgment interest); <u>and</u> <u>Black Gold and its wholly owned subsidiary SDL</u>, jointly and severally, to turnover on or before April 16, 2013, cash or cash equivalents, bank deposits, or other funds to pay the judgment in the approximate amount of $23.857 million  ($23,376,750.09 + $397,724.98 + $13,206.28 + $350 + $69,582.68 + post-judgment interest) , for a total of  approximately $70.8 million owed by Black Gold; and

(2) if sufficient funds are not turned over to satisfy the Judgment, directing <u>Black Gold</u> to turnover and transfer on or before April 16, 2013,  all membership interests and ownership interests it holds in BDL and SDL to CIMC Raffles, and to execute all necessary documents to effect such transfers, on or before April 16, 2013; and issuing

---

[1] Mr. Schahin testified on June 19, 2012 (Schulman Aff. Ex. C Tr. 96 line 14- Tr. 97 line 4) that BDL and SDL were wholly owned by Black Gold, and Black Gold is owned by Sea Biscuit.

(3)  a restraining order as against respondents <u>Schahin Holding S.A. ("Schahin Holding"),</u>

<u>Schahin Engenharia S.A. ("Schahin Engenharia") and Sea Biscuit International LLC</u>

<u>("Sea Biscuit")</u> barring and restraining each of them from transferring or selling any of

their property or assets, tangible or intangible, vested or unvested, pending entry of

judgment, and that such restraint continue until they have paid the Judgment in full.

(All Respondents, including Judgment Debtors, are referred to collectively as

"Respondents" or "Schahin Entities").

The facts relied on in support of CIMC Raffles' motion are taken from the

extensive evidence sworn to and argued by Schahin Entities (Respondents) in the NY

Arbitration, the NY Attachment Proceeding, the London High Court Action, the London

Arbitrations, and the NY Domestication Proceeding, as such terms are defined below.

The Chief Financial Officer for all of the Respondents, Fernando Schahin, who is

also the son of one of the two brothers (Milton and Salim Schahin) who beneficially own all

Schahin Entities, submitted an extensive affidavit to the NY state court, in opposition to and in

order to lift an order of attachment, claiming that the Schahin Entities have "ample" assets to pay

all of CIMC Raffles' claims as against Schahin Entities, totaling more than $208 million.  <u>See</u>

Schulman Aff. Ex. A (Schahin Affidavit) ¶ 14.

Schahin should be judicially estopped from denying that it has ample funds to pay

the Judgment, given that the Schahin Entities successfully argued to lift an attachment relying on

Mr. Schahin's affidavit and testimony that there are "ample" funds available to pay any and all

arbitration awards and court judgments.  This Court should take Mr. Schahin at his word, and

direct that BDL and SDL and Black Gold pay the Judgment.

In the alternative, if BDL, SDL, and Black Gold do not fully satisfy the Judgment, Black Gold should be ordered to turnover its 100% ownership interests in BDL and SDL.

Finally, the Court should also exercise its discretion pursuant to Fed. R. Civ. P. 69 and CPLR 5229, and restrain and bar Schahin Holding, Schahin Engenharia, and Sea Biscuit from transferring any stock, membership interests or any other assets, tangible or intangible, pending entry and payment of the  judgment being sought in the pending motion for judgment.

Such restraint is appropriate, given that Schahin Holding, Schahin Engenharia, and Sea Biscuit are currently in default, having failed to answer the petition in this Action, which default is the subject of a pending motion, which will transform that default into a judgment. The restraint is also appropriate in light of (a) Fernando Schahin's perjurious affidavit, in which he swore to the state court that Schahin would satisfy any final judgment or arbitration award should CIMC Raffles obtain any such judgment or award, which point was repeated and argued to the state court by counsel for Schahin Entities, and (b) Schahin's conceded failure to comply with attachment orders of Justice Kapnick, and Schahin's removal of tens of millions of dollars of assets from New York in violation of those orders, which is the subject of motions for civil and criminal contempt of court, currently *sub judice*.   (Schulman Aff. Exs. A, F, G.)

### Facts[2]

CIMC Raffles has brought multiple proceedings, both in state and federal court in New York, as well as arbitrations in New York and London, to recover well in excess of $208 million from Schahin Entities owed on account of two semi-submersible drilling vessels that CIMC Raffles constructed for the Schahin Entities.  The parties entered into two Shipbuilding

---

[2]  The Facts are more fully set forth in the text of the underlying NY Arbitration Award, and the admissions contained in the testimony and affidavits of Mr. Fernando Schahin submitted in the various proceedings in the US and UK.

Contracts, each dated July 12, 2006 (as amended, the "Shipbuilding Contracts"), two Advance

and Equity Conversion Agreements each dated August 23, 2010 (as amended, the "ECAs"), and

one Deed of Guaranty and Indemnity, dated December 18, 2009 (the "Deed of Guaranty").

      The Schahin Entities were supposed to have paid in excess of half a billion dollars

to CIMC Raffles for the two vessels.  (Schulman Aff. Ex. A, Schahin Aff. ¶ 7.)   The Schahin

Entities only paid about half the contract price, but CIMC Raffles nonetheless delivered the

vessels upon Schahin signing acceptance documents, and countersigning and agreeing to the

final invoices.  (See Schulman Aff. Ex. C, June 19, 2012 Tr. 31-34, Fernando Schahin testified

that the two vessels were delivered; that Schahin signed the acceptance documents, admitting

that the vessels met specifications; and that Schahin countersigned the final invoices.)  After the

vessels were delivered, no further payments were made by Schahin Entities, notwithstanding the

fact they had countersigned the final invoices and had accepted the vessels.

### Procedural History: Multiple Proceedings in the SDNY and other Fora

      On or about January 2, 2013, CIMC Raffles commenced this action seeking entry

of a judgment on an arbitration award issued at the end of December 2012 (ICDR Case No 50

148 T 00348 12).  That NY arbitration was commenced by CIMC Raffles by filing, with the

American Arbitration Association's International Centre for Dispute Resolution, a Notice of

Arbitration and Statement of Claim dated May 3, 2012, pursuant to the parties' arbitration

agreement dated August 23, 2010 (the "NY Arbitration").

      The NY Arbitration took place in New York, with a hearing in New York on

November 8, 2012, pursuant to the provisions of the two ECAs, which each selected New York

law as governing law, and provided for arbitration in New York.  As the NY Arbitration Award

provides, those ECAs provided financing to Respondents in order to address their cash flow

problems, and to provide for completion of the two drilling vessels being constructed by CIMC Raffles for SDL and BDL pursuant to the two Shipbuilding Contracts.  Schahin Holding and Schahin Engenharia were guarantors and primary obligors under the ECAs.

       This Court issued an order on March 11, 2013, entered March 13, 2013 (Docket Entry 21) directing entry of final judgment for an amount exceeding US $70.8 million in favor of CIMC Raffles, and against Black Gold, BDL, and SDL.[3]  On March 19, 2013, the Clerk entered judgment No. 13,0558 (Docket 26)  in accordance with the Court's Order (the "Judgment").

       On March 15, 2013 (Certificates of Service to be found at Docket Entries 23, 24, & 25), CIMC Raffles served Schahin Holding, Schahin Engenharia, and Sea Biscuit with the Summons, Petition to Confirm Arbitration Award, and supporting papers. CIMC Raffles has now filed a motion before this Court for entry of a substantially similar final judgment against Schahin Holding, Schahin Engenharia, and Sea Biscuit, which motion is to be heard on April 16, 2013.  That judgment will also be in the amount of approximately $70.8 million, and will vary from the existing Judgment only in the pre-judgment interest that is to be awarded.

       In addition to the NY Arbitration, and as recited in the NY Arbitration Award, on December 22, 2011, CIMC Raffles commenced two arbitrations in London before the London

---

[3]  The Judgment is set forth at Docket 26, and was entered as follows: (1) in the amount of US $46,094,027.32 in favor of CIMC Raffles and against BDL and Black Gold, jointly and severally; (2) in the amount of US $23,376,750.09 in favor of CIMC Raffles and against SDL and Black Gold, jointly and severally; (3) for post-award, pre-judgment interest of US $784,229.89 for the amount described in paragraph 1, in favor of CIMC Raffles and against BDL and Black Gold, jointly and severally; (4) for post-award, pre-judgment interest of US $397,724.98 for the amount described in paragraph 2, in favor of CIMC Raffles and against SDL and Black Gold, jointly and severally; (5) in the amount of US $13,206.28 in favor of CIMC Raffles and against BLD , SDL, and Black Gold, jointly and severally; (6) granting CIMC Raffles the cost of this application in the amount of US $350.00 and against BDL, SDL and Black Gold, jointly and severally; (7) granting CIMC Raffles its attorneys' fees and costs in the amount of $69,582.68 and against BDL, SDL, and Black Gold, jointly and severally; and (8) granting CIMC Raffles post-judgment interest on all amounts owed from entry of judgment until payment in full.

Maritime Arbitrators Association, as against BDL and SDL, seeking payment of approximately US $208 million owing under the two Shipbuilding Contracts (the "London Arbitration"). The London Arbitration is proceeding, in due course, with hearings on the merits anticipated to take place in mid-2014.

In addition, on December 23, 2011, CIMC Raffles brought an action before the High Court in London as against Schahin Holding, which had guaranteed certain of the required payments under the two Shipbuilding Contracts (the "London High Court Action"). On May 21, 2012, the High Court issued a summary judgment award in favor of CIMC Raffles and against Schahin Holding in the amount of $57.6 million (the "London High Court Final Judgment"). That London High Court Final Judgment is final and enforceable in the UK. The parties have filed cross-appeals to the High Court from the London High Court Final Judgment; those appeals are fully argued and awaiting decision. A copy of the London High Court Final Judgment is annexed as Exhibit H to the Schulman Aff.

On December 5, 2012, CIMC Raffles commenced an action in Supreme Court, New York County by filing a summons and a motion for summary judgment in lieu of complaint seeking to domesticate and enforce the  London High Court Final Judgment (S.Ct. NY County, No. 158621/2012) (the "NY Domestication Action"). On April 3, 2013, Justice Ellen Coin heard argument on CIMC Raffles' motion for summary judgment; that motion is fully submitted and awaiting decision, as the court's docket (available through WebCivil) provides.  See https://iapps.courts.state.ny.us/webcivil/FCASeFiledDocsDetail?county_code=q3At4gf7dAcAZi aSfezpnw%3D%3D&txtIndexNo=R5bOgUCovsspQj70kaT8DA%3D%3D&showMenu=no&isP reRji=N

CIMC Raffles also commenced a special proceeding on June 19, 2012, in

Supreme Court, New York County, naming all Respondents, seeking provisional relief—an

attachment—in aid of the claims being asserted in the London Arbitration.  CIMC Raffles v.

Schahin Holding et al. (S.Ct. NY County, No. 650850/2012) (the "NY Attachment Proceeding").

The state court initially issued an attachment after argument, which attachment was continued,

with minor modifications, pursuant to several so-ordered stipulations, through November 13,

2012.

Fernando Schahin, in his capacity as Chief Financial Officer of all of the

Respondents, filed an affidavit in the NY Attachment Proceeding, sworn to April 18, 2012,

opposing the relief being sought.  (Schulman Aff. Ex. A.)  In that affidavit, Mr. Schahin

represented that **"If final judgments or awards are rendered against the Defendants, the**

**Defendants of course will satisfy them**.  As set forth below, the Defendants have substantial net

worth and assets that are more than sufficient to pay any judgments that might be rendered

against them, even if the Plaintiffs prevails on all of their claims and the Defendants succeed on

none of their counterclaims." (Schahin Aff. ¶ 14) (emph. added).[4]

---

[4]  Mr. Schahin also asserted that
- "Defendants' net worth far exceeds the total amount claimed by Plaintiffs" (Schahin Aff. ¶ 16);
- "Defendants also have a high current liquidity ratio, which demonstrates their ability to adequately service their short-term debt obligations as they become due (Id. ¶17);
- "Defendants also have a high general liquidity ratio, which shows their ability to satisfy their long-term debt obligations as they become due" (Id. ¶ 18);
- "With revenues for fiscal year 2011 exceeding over half a billion dollars, and with their high net worth and liquidity, the Schahin Group could readily satisfy the debt that Plaintiffs allege is owed to them, should Plaintiffs obtain final judgments or awards" (Id. ¶23);
- "The Defendants pay their undisputed debts as they fall due in the ordinary course of business" (Id. ¶24).

Mr. Schahin also testifies in his affidavit that Sea Biscuit is a holding company whose primary activity is to own Black Gold Drilling, and that Black Gold Drilling is also a holding company, whose primary activity is to own Defendants BDL and SDL. (Schahin Aff. ¶ 19; see also flowchart of Schahin Entities in evidence in the NY Attachment Proceeding, Schulman Aff. Ex. F; Schulman Aff. Ex. C June 19, 2012 testimony of Fernando Schahin at Tr. 96-97.)

Annexed to the Schulman Affidavit as Exhibit B is a copy of the transcript of proceedings in the NY Attachment Proceedings held on April 23, 2012.  That provides as follows, at page 24:

> MR. HESSLER [counsel for Respondents]:  "…our CFO submitted the affidavit which says if there are final awards issued in either arbitration or litigation, our client will pay them.  His testimony is uncontradicted.  They pay their debts when they come due."
> THE COURT:  Then let me ask you, why did you represent, if you did represent to me earlier that there were no assets in New York when in fact there were 42 company accounts in New York?  And why, when I issued a TRO, did your client violate it?  That is a concern."

(Schulman Aff. Ex. B,  Tr. 24.)

Similarly, at the same hearing, Mr. Hessler addresses Schahin Holding and Schahin Engenharia, and their purported net worth and ability to pay, and he specifically argues that the Schahin affidavit "clearly establishes them to be able to pay multiples of even the maximum judgment that could be paid." (Id. Tr. 41)

Annexed to the Schulman Affidavit as Exhibit C is a copy of the transcript of a hearing held in the NY Attachment Proceedings on June 19, 2012.  At transcript page 56 (lines 17-32), Mr. Schahin admits that, pursuant to the NY court's stipulation and order of attachment, at least $42 million was supposed to be maintained in Respondents' NY bank accounts at

Deutsche Bank, but that only $32 million was present in those bank accounts.  At Transcript 105 lines 20-24, Mr. Schahin testified that the banks would have accepted additional collateral, if paid to the banks to maintain the required $42 million on deposit.  At Transcript 59 line 14-16, and Transcript 90 lines 3-5, Mr. Schahin testified, on cross- and re-direct, that the only reason Schahin Entities signed the stipulation and order was so the waterfall payments would be made.

By order dated November 13, 2012, Justice Kapnick denied the attachment sought in the NY Attachment Proceeding, finding that the potential UK arbitration award would not be "rendered ineffectual", because Respondents were not insolvent and were likely to have assets in New York, based on the evidence presented by Schahin Entities.

Thereafter, the NY Attachment Proceeding was dismissed, other than two motions still pending in which CIMC Raffles moved to punish Respondents for civil and criminal contempt, by motions filed August 28, 2012, and September 28, 2012, respectively, for deliberately violating both the initial TRO and the subsequent stipulations that were so ordered by Justice Kapnick, which barred Respondents from removing funds from their multiple bank accounts at Deutsche Bank Americas, in New York (the "42 Bank Accounts"), and required Respondents to maintain at least $42 million in those 42 Bank Accounts.

In particular, the contempt motions argue that Respondents directly violated several Court orders, by removing tens of millions of dollars from the 42 Bank Accounts, and transferring those funds to Respondents' accounts located in Brazil; and that Respondents also violated a Court order by failing to "maintain" at least $42 million in the 42 NY bank accounts. (See generally Schulman Aff. Exs. F & G.)[5]

---

[5]  The two contempt motions filed in the NY Attachment Proceeding are fully submitted, and await decision.  These contempt motions are not mooted by dismissal of the requested attachment (which dismissal is being appealed).  See Dep't of Environmental Protection  of City

## Argument

### I.   THE COURT SHOULD ENTER A TURNOVER ORDER AGAINST BLACK GOLD, BDL, AND SDL

### The Court Has Authority to Issue a Turnover Order

CIMC Raffles seeks for this Court to enter an order pursuant to Fed. R. Civ. P.

69[6], and  CPLR 5225[7] directing Black Gold, BDL, and SDL:

(i)   to pay money sufficient to satisfy the Judgment, together with post-judgment interest,

such funds to be paid on or before April 15, 2013 or, in the alternative,

(ii)   for Black Gold to turnover its membership interests in BDL and SDL on or before April

15, 2013.

---

of New York v. Dep't of Environmental Protection of the State of New York, 70 N.Y.2d 233, 239, 519 N.Y.S.2d 539, 542 (1987) (once criminal contempt motion has been filed, even if the parties to the underlying action have settled and wish to withdraw the motion, they cannot do so, because "[a]llegations of willful disobedience of a proper judicial order strike at the core of the judicial process and implicate public and institutional concerns regarding the integrity of and respect for judicial orders.")

[6]  Rule 69 provides, in relevant part, "A money judgment is enforced by a writ of execution, unless the court directs otherwise.  The procedure on execution –and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1).

[7]  NY CPLR 5225(a) provides: "Payment or delivery of property of judgment debtor. (a) Property in the possession of judgment debtor.  Upon  motion  of  the  judgment creditor, upon notice to the judgment debtor, where it is show  that  the  judgment debtor is in possession or custody of money or other  personal property in which he has an interest,  the  court  shall  order that the  judgment  debtor  pay  the  money,  or  so  much  of it as is  sufficient to satisfy the judgment, to the judgment creditor and, if the  amount to be so paid is insufficient to satisfy the judgment, to deliver  any other personal property, or so much of it as is of sufficient  value  to satisfy  the judgment, to a designated sheriff. Notice of the motion shall be served on the judgment debtor in the same manner as  a  summon   or by registered or certified mail, return receipt requested."

See generally Koehler v. Bank of Bermuda Ltd., 577 F.3d 497 (2d Cir. 2009) (in a proceeding to enforce a default judgment, denial of petitioner's motion seeking an order and requiring respondent to deliver to petitioner certain stock certificates is vacated where the New York Court of Appeals has answered a certified question, and advised that a court sitting in New York may order a bank over which it has personal jurisdiction to deliver stock certificates owned by a judgment debtor or cash equal to their value to a judgment creditor, pursuant to NY CPLR Article 52, when those stock certificates are located outside New York), relying on Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 883 N.Y.S.2d 763, 911 N.E.2d 825 (N.Y. 2009).

Rule 69 provides that proceedings supplementary to and in aid of judgment or execution follow the procedures of the state where the court is located—here, New York State. Fed. R. Civ. P. 69. The relief being sought here is expressly permitted in New York.

The New York Court of Appeals, in two recent decisions, has emphasized that "a court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York." Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 312, 900 N.Y.S.2d 698, 704, 926 N.E.2d 1202, 1208 (2010), citing with approval Koehler v. Bank of Bermuda, 12 N.Y.3d 533, 539, 883 N.Y.S.2d 763, 911 N.E.2d 825 (2009) (answering a certified question from the Second Circuit, and holding that a New York court has authority to order a bank to turnover assets of judgment debtor located outside of New York).

There can be no doubt that this Court has personal jurisdiction over Respondents. This is an action to enter judgment on an arbitration award, and to enforce the resulting judgment. The Court has inherent jurisdiction to supervise post-judgment enforcement of its initial Judgment, which is in the approximate amount of $70.8 million, as against Black Gold,

BDL, and SDL.   See generally Rules 69-71, Fed. R. Civ. P. 69; cf. Peacock v. Thomas, 516 U.S. 349 (1996) (if federal courts were to lack jurisdiction to enforce their judgments, "the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution", quoting with approval Riggs v. Johnson County, 6 Wall. 166, 187 (1868)).

Equally, there can be no doubt that there is personal jurisdiction over defendants, precisely because they contractually agreed to arbitrate in New York, applying New York law, thereby agreeing to submit themselves to jurisdiction of the courts located in New York.   See 9 U.S.C. § 9 (application to confirm an award shall be made "in the United States court in and for the district within which such award was made.  Notice of the application shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding); cf. 9 U.S.C.§§ 201-204  (arbitration pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards shall be enforced in US courts; an action or proceeding arising under the Convention shall be deemed to arise under the laws of the United States, and the US district courts shall have original jurisdiction thereof; if the arbitration agreement designates the place of arbitration within the United States, venue is proper in the district court which embraces that place).

Precisely because the Court has personal jurisdiction, it has authority to enforce judgments as against any tangible or intangible property belonging to the judgment debtor, wherever located worldwide.  As the New York Court of Appeals has stated:

> Any debt or property against which a money judgment may be enforced as provided in section 5201 is subject to attachment.  The proper garnishee of any such property or debt is the person designated in section 5201; for the purpose of applying the provisions to attachment, references to a)judgment debtor' in section 5201 and in subdivision (i) of section 105 shall be construed to mean defendant.'"

Hotel 71 Mezz Lender, 14 N.Y.3d at 312, 900 N.Y.S.2d at 704, 926 N.E.2d at 1208.

The broad scope of enforcement available to a judgment creditor, to obtain

enforcement as against any present or future property belonging to judgment debtor, whether

tangible or intangible, and whether vested or unvested, is summarized in Professor Siegel's

Practice Commentaries to CPLR 5201(b), which the Court of Appeals quoted with approval in

Hotel 71 Mezz Lender:

> Under CPLR 5201 (b), '[a] money judgment may be enforced against any property which could be assigned or transferred, whether it consists of a present or future right or interest and whether or not it is vested." Subdivision (b) "authorizes a judgment creditor to reach for any property interest the judgment debtor may have, whether [real or personal,] tangible or intangible, which could be assigned or transferred' (Siegel, Practice Commentaries, McKinney's Cons Laws of NY, Book 7B, CPLR C5201:9, at 67).

Hotel 71 Mezz Lender, 14 N.Y.3d at 312-33, 900 N.Y.S.2d at 704, 926 N.E.2d at 1208, quoting

with approval, Siegel, Practice Commentaries to CPLR 5201.[8]

As the Court of Appeals further notes, again quoting from Professor Siegel, both

tangible interests, such as stock certificates, as well as "[i]ntangible interests, including money

belonging to or owed to the judgment debtor, are subject to levy and are infinite in their variety.

Some of these incorporeal interests have economic value so real and so direct that a judgment

---

[8] NY CPLR 5201(a) & (b) provides as follows:
"Debt or property subject to enforcement; proper garnishee.   (a) Debt against which a money judgment may be enforced. A money judgment  may be enforced against any debt, which is past due or which is  yet to become  due, certainly or upon demand of the judgment debtor, whether it was incurred within or without the state,  to  or  from  a  resident  or non-resident, unless  it is exempt from application to the satisfaction  of the judgment. A debt may consist of a cause of action which could be assigned or transferred accruing within or without the state.

   (b)  Property against which a money judgment may be enforced. A money  judgment may be enforced against any property which could be assigned or  transferred, whether it consists  of  a  present  or  future  right  or interest  and  whether  or  not  it  is vested, unless it is exempt from application to the  satisfaction  of  the  judgment.  A money  judgment entered upon  a  joint liability of two or more persons may be enforced against individual property of those persons summoned and joint property of such persons with any other persons  against whom  the  judgment is entered."

creditor would prefer them to any kind of tangible property. Others are more remote and take

greater effort to reduce to money. Others are so contingent that they may never amount to a thing

and hence not even be worth an effort" Siegel, NY Practice § 487 [4th ed] at 82, quoted with

approval in Hotel 71 Mezz Lenders, 14 N.Y.3d at 313, 900 N.Y.S.2d at 704, 926 N.E.2d at 1208-

1209.

**(i)        Judgment Debtors Should Be Directed to Pay the Judgment**

Black Gold, SDL, and BDL should each be directed to bring into New York, and

turnover to CIMC Raffles, money sufficient to satisfy the Judgment. CPLR 5225 provides that,

"Upon motion of the judgment creditor ... the court shall order that the judgment debtor pay the

money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor."   This

language in CPLR 5225 is mandatory, replacing prior language in the Civil Practice Act that was

discretionary.

There is ample precedent, including recent NY Court of Appeals authority,

directing issuance of a turnover order where a defendant has limited or no assets in New York,

but has assets out of state.  See Koehler v. Bank of Bermuda Ltd., 12 N.Y.3d 533, 540, 883

N.Y.S.2d 763, 768, 911 N.E.2d at 830 (2009) ("[A] turnover order merely directs a defendant,

over whom the New York court has jurisdiction, to bring its own property into New York…[a]

New York court has the authority to issue a turnover order pertaining to extraterritorial property,

if it has personal jurisdiction over a judgment debtor in possession of the property. As long as the

debtor is subject to the court's personal jurisdiction, a delivery order can be effective even when

the property sought is outside the state.") (citations and quotations omitted).  As the Court of

Appeals' decision concludes, "we hold that a New York court with personal jurisdiction over a

defendant may order him to turn over out-of-state property regardless of whether the defendant is

a judgment debtor or a garnishee." <u>Koehler</u>, 12 N.Y.S.3d at 541, 883 N.Y.S.2d at 769, 911

N.E.2d at 831.

    Further, while the Court need not consider anything else, it is certainly of interest

to note the equities.  In this regard, it certainly is not unfair to require Judgment Debtors to pay

the judgment – after all, they have expressly sworn under oath both that (i) they have ample

funds to pay more than $208 million that CIMC Raffles is seeking, let alone this $46.1 million

Judgment, and that they (ii) they will pay any final judgment or arbitration award. See Schulman

Aff. Ex. A (Affidavit of Fernando Schahin) at ¶ 14; <u>see also</u> <u>id.</u> ¶¶ 16, 17, 18, 23, 24.

    Finally, Schahin Entities obtained an order lifting the attachment, on the grounds

that it had "ample assets" to satisfy any final judgment, and that they would "satisfy" any final

judgment.  Those constitute admissions by party opponent pursuant to Fed. R. Evidence

802(d)(2).  Moreover, Schahin Entities are judicially estopped from denying these assertions:

Estoppel is appropriate here to protect the integrity of the judicial process, by prohibiting

Respondents from "deliberately changing positions according to the exigencies of the moment".

<u>See</u> <u>New Hampshire v. Maine</u>, 532 U.S.742, 749-750, 121 S.Ct. 1808, 149 L.Ed.3d 968 (2001)

(internal citations omitted).

    Should Respondents claim that they do not have the funds to pay the Judgment,

all factors for judicial estoppel would be present: (i) the position would be inconsistent with the

position Respondents took before Justice Kapnick; (ii) Justice Kapnick accepted Respondents'

earlier position; and (iii) Respondents would derive an unfair advantage if not estopped.  <u>See</u>

<u>Festinger v. Edrich</u>, 32 A.D.2d 412, 820 N.Y.S.2d 302 (2d Dep't 2006) (barring an action

seeking to impose constructive trust over property allegedly entrusted to sister by plaintiff,  in

light of plaintiff's assertions in prior federal proceeding, that he had no money or assets, and

therefore should not be required to make payments to various entities or individuals, both applying the doctrine of judicial estoppel and also holding that the prior assertions are irrebutable admissions); Simon v. Safelite Glass Corp., 128 F.3d 68 (2d Cir. 1997) (judicial estoppel prevents a party in a legal proceeding from taking a position contrary to a position the party has taken in an earlier proceeding, and exists to protect the integrity of the judicial process).

### (ii) The Court Should Direct Debtor Black Gold, 100% Owner of BDL and SDL, to Turnover, Execute, and Assign Its Membership Interests to CIMC Raffles

Pursuant to Fed. R. Civ. P 69 and CPLR 5225, to the extent that Black Gold, BDL, and SDL do NOT turnover sufficient funds to pay the entirety of the judgment, Black Gold, the 100% owner of SDL and BDL, should be ordered to turn over, and to execute and deliver any document necessary to effect delivery and transfer of, all ownership and membership interests in SDL and BDL, to CIMC Raffles.

Controlling case law confirms that a judgment debtor's interests or shares in a company is property that can be required to be turned over to satisfy a money judgment. In Hotel 71 Mezz Lender, the Court of Appeals upheld a trial court attachment issued on a nondomiciliary garnishee of a defendant's ownership/membership interests in limited liability companies.

Similarly, in multiple cases, the New York courts have affirmed seizure of stock or other ownership interests in companies.  See, e.g., Gallant v. Kanterman, 249 A.D.2d 59, 62, 671 N.Y.S.2d 50, 53 (1st Dep't 1998) (stock certificate is subject to enforcement of a money judgment and available to be levied upon); Rosen v. Wolpert, 244 A.D.2d 202, 664 N.Y.S.2d 910, 911 (1st Dep't 1997) ("IAS Court properly directed respondent to turn over a stock certificate reflecting whatever interest the judgment debtor had in the named corporation"); Samuels v. Samuels, 99 A.D.2d 986, 473 N.Y.S.2d 436, 437 (1st Dep't 1984) (holding that

where judgment debtor admitted ownership of shares in various corporations, such shares were required to be turned over to satisfy the judgment).

## II.      THE COURT SHOULD ENTER A RESTRAINING NOTICE AGAINST SCHAHIN HOLDING, SCHAHIN ENGENHARIA, AND SEA BISCUIT

CIMC Raffles seeks for this Court to enter an order pursuant to Fed. R. Civ. P. 69 and CPLR 5229 ordering Schahin Holding, Schahin Engenharia, and Sea Biscuit restrained, with the same effect as if a restraining notice had been served upon them after judgment, barring and restraining them from transferring or selling any of their property or assets, tangible or intangible, vested or unvested, pending entry of judgment, and that such restraint continue until they have paid the judgment in full.

CPLR 5229 provides that:

> In any court, before a judgment is entered, upon motion of the party in whose favor a verdict or decision has been rendered, the trial judgment may order examination of the adverse party and order him restrained with the same effect as if a restraining notice had been served upon him after judgment.

There are no specific statutory grounds articulated in CPLR 5229 as to when pre-judgment restraints are proper, "other than having received a favorable verdict or decision." Sequa Capital Corp. v. Nave, 921 F. Supp. 1072 (S.D.N.Y. 1996) (issuing a restraining notice pursuant to CPLR 5229 and Fed. R. Civ. P. 64—not Fed. R. Civ. P. 69—to "secure satisfaction of the judgment ultimately to be entered in the action").

Defendants Schahin Holding, Schahin Engenharia, and Sea Biscuit currently are in default for failing to appear.  See Fed. R. Civ. P. 55.  Their longtime counsel, Linklaters (which has appeared in all other court proceedings and arbitrations, in both the US and UK) has advised that it is not appearing to oppose entry of judgment.  And the strong presumption here is that an arbitration award issued pursuant to agreement of the parties will be entered as a

judgment, even putting aside the further point that the other Respondents did not oppose entry of judgment, and that this Court has already entered judgment once on that Arbitration Award. Thus, likelihood of success on the merits is assured.

Further, the limited time period (one week) before judgment will be entered; Respondents' failure in State Court to comply with stipulations that had been so-ordered by Justice Kapnick, attaching and restraining funds; and Respondents' failure to pay the NY Arbitration Award or the Judgment of this Court, despite their express sworn representations to the contrary, all constitute additional and sufficient bases to issue a restraining order pursuant to CPLR 5229.

Certainly, Respondents cannot claim any prejudice from issuance of such an restraining order, given the multiple and express representations contained in the sworn affidavit of Fernando Schahin, their Chief Financial Officer, and in his testimony in court, which was also argued by their counsel, that Schahin Holding and Schahin Engenharia have "ample" assets, and with "their high net worth and liquidity, the Schahin Group could readily satisfy the debt that Plaintiffs allege is owed to them, should Plaintiffs obtain final judgments or awards" (Schulman Aff. Ex. A, Schahin Aff. at ¶ 23).  Indeed, this Action solely concerns $70.8 million; Fernando Schahin expressly testified that Respondents had more than ample assets to pay off more than $208 million that CIMC Raffles is seeking as against Respondents.  See Schahin Aff. ¶ 14 "(Defendants have substantial net worth and assets that are more than sufficient to pay any judgments that might be rendered against them, even if the Plaintiffs prevails on all of their claims and the Defendants succeed on none of their counterclaims").

## Conclusion

For the foregoing reasons, CIMC Raffles respectfully requests that the Court (i) order Black Gold, BDL, and SDL, to pay the $70.8 million owed under the Judgment, on or before April 16, 2013, and (ii) order Black Gold to turnover and transfer all membership interest and other ownership interests it holds in BDL and SDL to CIMC Raffles, and to execute all necessary documents to effect such transfers, also on or before April 16, 2013, if the funds that they transfer do not satisfy the Judgment in full. CIMC Raffles further respectfully requests that the Court (iii) issue a restraining order as against Schahin Holding, Schahin Engenharia, and Sea Biscuit, barring and restraining them from transferring or selling any of their property or assets, tangible or intangible, vested or unvested, pending entry of judgment, and that such restraint continue until the judgment to be entered against them has been paid in full.

Dated:  New York, New York
        April 9, 2013

SCHULMAN BLACKWELL LLP

By: _____

        Dan J. Schulman
        Christopher A. Blackwell
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Limited*
*and Yantai CIMC Raffles Offshore Limited*
11 Broadway, Suite 615
New York, New York 10004
Tel:  (646) 688-5214
Fax:  (646) 304-1117
Email:  dschulman@schulmanblackwell.com

**DEBEVOISE & PLIMPTON**
David W. Rivkin
Nwamaka G. Ejebe
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Limited*
*and Yantai CIMC Raffles Offshore Limited*
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836
Email:  dwrivkin@debevoise.com