# Linklaters

Docket AS ↑ Letter Brief

Linklaters LLP
1345 Avenue of the Americas
New York, NY 10105
Telephone (+1) 212 903 9000
Facsimile (+1) 212 903 9100
Direct Line (+1) 212 903 9132
paul hessler@linklaters.com

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/2/13
```

Judge Jed S. Rakoff
United States Courthouse
500 Pearl Street
New York, NY 10007

By Email

April 26, 2013

## CIMC Raffles Offshore (Singapore) Limited, et al. v. Schahin Holding S.A., et al., 13 Civ. 0052 (JSR)

Dear Judge Rakoff:

Respondents Black Gold Drilling LLC ("Black Gold"), Baerfield Drilling LLC ("BDL"), and Soratu Drilling LLC ("SDL") (collectively, "Respondents"), who, for purposes of this motion only, are joined by Airosaru Drilling LLC, Dleif Drilling LLC, Turasoria S.A. LLC, Deep Black Drilling LLC, and Schahin Petróleo e Gás S.A. (the "Third Party Entities"),[1] respectfully submit this letter brief to request that the Court clarify the scope of a restraining notice issued to Deutsche Bank Trust Company Americas ("Deutsche Bank") by David W. Rivkin of Debevoise & Plimpton LLP. Mr. Rivkin and his clients ("CIMC"), despite being informed that Deutsche Bank is applying the restraining notice so as to encumber bank accounts that are not held by the Respondents, have refused to clarify that the restraining notices do not relate to projects and entities entirely separate from any in which the Respondents have an interest.

We learned on Tuesday of Deutsche Bank's overbroad application of the restraining notice, and were informed that day that Deutsche Bank is blocking all accounts held by any entity related to the Schahin Group, on the ground that Deutsche Bank does not want to risk incurring liability to CIMC should it apply the restraining notice too narrowly. Deutsche Bank's counsel informed us that Deutsche Bank would continue to block accounts of entities other than the Respondents unless and until it received either a clarification of the scope of the restraining notice from CIMC or else upon an order of the

---

[1] For purposes of this letter brief, Respondents are joined by the Third Party Entities, who appear on a limited basis solely for the purpose of defending their property pursuant to New York CPLR § 320(c)(1). *See Cargill, Inc. v. Sabine Trading & Shipping Co., Inc.*, 756 F.2d 224, 227-28 (2d Cir. 1985) ("Under New York CPLR § 320(c)(1), an 'appearance', which includes the filing of an answer, is not equivalent to personal service upon the defendant    if jurisdiction is based solely upon a levy on defendant's property within the state pursuant to an order of attachment"). *In re Gaming Lottery Sec. Litig. v. Galaxiworld com Ltd*, No. 96 Civ. 5567, 2000 WL 1801840, at *4 (S.D.N.Y. Dec. 7, 2000) (finding that non-resident defendant subject to a restraining order had not submitted to in personam jurisdiction pursuant to CPLR § 320(c)(1))

This communication is confidential and may be privileged or otherwise protected by work product immunity

Linklaters LLP is a multinational limited liability partnership registered in England and Wales with registered number OC326345 including solicitors of the Senior Courts of England and Wales, members of the New York and District of Columbia Bars and foreign legal consultants in New York. It is a law firm authorised and regulated by the Solicitors Regulation Authority. The term partner in relation to Linklaters LLP is used to refer to a member of Linklaters LLP or an employee or consultant of Linklaters LLP or any of its affiliated firms or entities with equivalent standing and qualifications. A list of the names of the members of Linklaters LLP together with a list of those non-members who are designated as partners and their professional qualifications is open to inspection at its registered office, One Silk Street, London EC2Y 8HQ, England or on www.linklaters.com

Please refer to www linklaters com/regulation for important information on our regulatory position

Linklaters

Court. In the hope that we would not have to involve the Court in this matter, we requested that CIMC's counsel confirm to Deutsche Bank that the restraining notice does not reach assets held by parties other than the Respondents. CIMC's counsel has refused to provide such clarification, and hence we respectfully submit this matter to the Court for resolution. We apologize to the Court for the emergency nature of this application, which is necessitated by the fact that Deutsche Bank's overbroad application of the restraining notice will prevent the processing of waterfall payments that must be made as soon as this Tuesday, April 30, in connection with drilling vessels and projects in which the Respondents do not have an interest, and which thereby threaten not just the operation of those vessels, but also the security interests of the lenders to those projects.

**Relevant Factual Background**

The restraining notice at issue (which we have attached as Exhibit A) was served on Deutsche Bank on or about April 3, 2013, as garnishee, and purports to restrain the "approximately forty bank accounts" that Respondents Black Gold, BDL and SDL hold there. The restraining notice states that Deutsche Bank is "hereby forbidden to make or suffer any sale, assignment, transfer of, or any interference with any property in which Black Gold, BDL or SDL have any interest" as well as "all property in which Black Gold, BDL or SDL has an interest hereafter coming into [Deutsche Bank's] possession or custody." It further warns that "disobedience of this Restraining Notice is punishable as contempt of court."

Respondents learned this week that Deutsche Bank, out of an abundance of caution, has restrained every account maintained at Deutsche Bank (as well as accounts at Deutsche Bank S.A. – Banco Alemao, in Brazil) held in the name of any Schahin Group entity, because in Deutsche Bank's view the language of the restraining notice was sufficiently vague that Deutsche Bank was unclear as to what assets the restraining notice was intended to restrain. *See* Declaration of Gustavo Shinohara in Support of Third Party Entities' Letter Brief ("Shinohara Decl.") ¶ 2.

As this Court is aware, Black Gold is a special entity created as part of a project financing structure. BDL and SDL are subsidiaries of Black Gold, and were each formed to acquire one vessel constructed by CIMC. BDL holds the S.S. Amazonia, and SDL holds the S.S. Pantanal, which are the two drillships at the center of the worldwide disputes between the parties. In addition to restraining these assets (which were the subject of last week's oral argument), Deutsche Bank has, out of an excess of caution, read the restraining notice to apply to accounts related to the project financing of entities and ships controlled by parties other than the Respondents, and in which the Respondents do not have an interest. Specifically, Deutsche Bank has also restrained accounts related to four projects unrelated to the Respondents: the drillship Lancer, which is held by Turasoria S.A. LLC; the drillship Vittoria, held by Deep Black Drilling LLP; the drillship Sertao, held by Dleif Drilling LLC; and the drillship Cerrado, held by Airosaru Drilling LLC. (*See* Shinohara Decl. ¶ 3-5). The accounts related to these projects are maintained by the above entities, and by the operator of the Cerrado and the Sertao, Schahin Petróleo e Gás S.A. ("Schahin Petroleo") *Id.* at ¶ 6-8. Crucially, the Respondents have no interest in any of these accounts. *Id.* at ¶ 8. The Respondents have no right to invade these accounts, and have no interest in the proceeds of these accounts. As demonstrated by an organizational chart submitted by CIMC as part of its motion for post-judgment enforcement (attached as Exhibit B), the Respondents have no direct relationship to any of the Third Party Entities, demonstrating that the Respondents cannot be presumed to have an interest in the accounts held in the name of these other Schahin

Linklaters

Group entities. The only accounts held at Deutsche Bank in which the Respondents have an interest are the "approximately forty bank accounts" that Respondents themselves maintain at Deutsche Bank. See Shinohara Decl. ¶ 8.

Believing that the excessive and unlawful restraints were a misunderstanding, on April 24, 2013 we asked Mr. Rivkin to clarify for Deutsche Bank the scope of the restraining notice (see Exhibit C). CIMC's response of April 25, 2013 (attached as Exhibit D) refused to provide the requested clarification and stated that CIMC could not question Deutsche Bank's overbroad interpretation because CIMC lacked information as to whether the Respondents have an interest in accounts maintained at Deutsche Bank by entities other than the Respondents.

A subsequent call was arranged in which Seward & Kissel LLP, counsel for Deutsche Bank, directly expressed its strong concern that the vagueness of the restraining notice, coupled with the lack of clarification by CIMC, was very likely leading to the restraint of assets in which the Respondents do not have an interest. Seward & Kissel told CIMC that Deutsche Bank's restraint of assets belonging to non-Respondents was *not* the result of any analysis by Deutsche Bank indicating that the Respondents in fact have any interest in those accounts, but rather a result of Deutsche Bank's uncertainty as to the scope of the restraining notice.

There is no doubt about the applicable legal principles here: a restraint on assets is proper only if the judgment debtor has an interest in those assets. Because there appears to be no dispute about that principle, we had hoped to resolve this issue consensually with CIMC, and we will continue these efforts over the weekend. However, in light of CIMC's refusal to clarify the scope of its restraining notice, we respectfully seek the Court's assistance to (i) clarify the proper scope of the restraining notice served on Deutsche Bank, and (ii) limit CIMC's ability in the future to restrain assets by requiring judicial approval prior to service of any future restraining notices, pursuant to CPLR 5240.

## Legal Analysis

Restraining notices issued pursuant to CPLR 5222(b) are effective only against assets in which the judgment debtor has an "interest," and may "only reach property and debts with such a connection to the judgment debtor." *AG Worldwide v. Red Cube Mgmt. Ag*, No. 01 Civ. 1228, 2002 WL 417251, at *8 (S.D.N.Y. Mar. 15, 2002). Where third parties, like the Third Party Entities here, "do not have property or debts in which the judgment debtors have an interest, the restraining notices are not effective." *Id.* The Respondents have no interest in any accounts at Deutsche Bank other than the approximately forty accounts held in their name, since these accounts are related to separate projects, are held by separate legal entities, and the Respondents have no ability to access these accounts. *See* Shinohara Decl. ¶ 2. That does not meet the high threshold that a party seeking to restrain assets must satisfy. As one court explained, "[t]he 'interest' of the judgment debtor, however, must be understood to mean a direct interest in the property itself and not merely [a] tenuous connection that exists." *Matter of H. J. O'Connell Assocs., Ltd. v. Ins. Pension & Welfare Fund of Roofers Local No. 241*, 86 Misc.2d 259, 260, 381 N.Y.S.2d 659, 660 (Sup. Ct. 1976).

For the avoidance of doubt, we do not question Deutsche Bank's conduct. Rather, it is the issuer of a restraining notice that has an obligation to ensure that it seeks to restrain only assets in which the judgment debtor has an interest. Indeed, the CPLR provides that the issuer of a restraining notice may be subject to personal liability in certain circumstances. N.Y. C.P.L.R. 5222(b) ("a judgment

Linklaters

creditor . . . which has specified personal property or debt in a restraining notice shall be liable to the owner of the property . . . , if other than the judgment debtor or obligor, for any damages sustained by reason of the restraint"); *see JSC Foreign Econ. Ass'n Technostroyexport v. Int'l Dev. & Trade Servs., Inc.*, 295 F. Supp. 2d 366, 392 (S.D.N.Y. 2003) ("Restraining notices will be vacated where they fail to allege with sufficient specificity the alleged interest that the judgment debtor has in the assets sought to be restrained."); *Universitas Educ., LLC v. Nova Grp., Inc.*, 11 CIV. 1590 LTS HBP, 2013 WL 57892 (S.D.N.Y. Jan. 4, 2013) (same). Moreover, New York courts have held that an attorney's power to issue restraining notices pursuant to CPLR 5222(b) is a unique privilege, and that because the "attorney acts as an officer of the court . . . he is duty bound to act with the same independence and impartiality presumed of, and in fact required of, a clerk, judge, referee or administrator." *Save Way Oil Co., Inc. v. 284 E. Parkway Corp.*, 115 Misc.2d 141, 144, 453 N.Y.S.2d 554, 557 (Civ. Ct. 1982). For that reason, CIMC's statement that it "lacks sufficient information" to determine whether or not the Respondents have an interest in the improperly restrained accounts turns the entire process of issuing restraining notices on its head. (Exhibit D, at 2).

Counsel for CIMC have not faithfully exercised that duty here. Rather than ensuring that their restraining notice captured only property in which the Respondents have an interest, they have sat by and refused to provide clarification while the garnishee applies their restraining notice in an overbroad fashion to accounts that CIMC knows to relate not to the Respondents, but to entirely unrelated vessels and projects. That failure imminently threatens significant harm not just to the Third Party Entities, but also to the secured lenders who financed those projects.

As CIMC and its counsel have been made aware, this Tuesday, April 30, 2013, the waterfall for the project financing structure that supports the drillship Cerrado is scheduled to run to reserve accounts for certain secured lenders' principal and interest, and to pay operating expenses to the operator, Schahin Petroleo. *See* Shinohara Decl. at ¶ 9. If that waterfall does not run, the operator will not be paid and the project could be declared to be in default under the applicable financing documents, giving the lenders to that project the right to foreclose on the Cerrado drill ship. Even if the lenders do not foreclose, Airosaru will face the risk of being charged an additional default rate of interest above the current loan interest rate. *Id.* at ¶ 12. If the restraining notices are not clarified, the waterfall that is scheduled to run in May with respect to the drillship Sertao will also default, causing the same untenable consequences for that company, project, and lenders. *Id.* at ¶ 9. The same holds true for the Lancer waterfall, set to disburse payments on the 10th of each month. *Id.* at ¶ 11. All of these consequences have the potential for further negative ripple effects. For example, if the Cerrado waterfall fails to run, Schahin Petroleo's operating expense accounts at Deutsche Bank will not be funded, which not only jeopardizes the continued operation of that vessel, but presents the prospect of cross-defaults since a default by Schahin Petroleo would also impact other projects it operates, including the Sertao vessel. *Id.* at ¶ 11.

By failing to provide Deutsche Bank, a third-party garnishee, with clarification that it should allow these accounts (which are obviously unrelated to the Respondents or judgment debtors) to operate, CIMC and its counsel have chosen to permit the wrongful restraint of third-party property. The Third Party Entities expressly reserve their right to seek any and all damages from CIMC and their counsel that results from the restraint. N.Y.C.P.L.R. 5222(b) (McKinney 2011) (providing that "a judgment creditor . . . which has specified personal property or debt in a restraining notice shall be liable to the owner of the property . . . , if other than the judgment debtor or obligor, for any damages sustained by reason of

Linklaters

the restraint"); *Walter v. Doe*, 93 Misc.2d 286, 290, 402 N.Y.S.2d 723, 726 (N.Y. Civ. Ct. 1978) (holding a judgment creditor and its attorney liable for an improperly served restraining notice that restrained the funds of one other than the judgment debtor).

### Conclusion

The right to issue a restraining notice "is the grant of a trust and a revocable privilege." *Save Way Oil Co., Inc. v. 284 E. Parkway Corp.*, 115 Misc.2d 141, 145, 453 N.Y.S.2d 554, 557 (Civ. Ct. 1982) (holding that an attorney that improperly sought to restrain unrelated third-party entities violated the grant of privilege provided by the CPLR and consequently the attorney could not serve further restraining notices without the court's permission).   CIMC has violated that trust and in so doing threatens to cause Third Party Entities grave and imminent harm.   The Respondents and the Third Party Entities respectfully request that the Court modify the restraining notices pursuant to CPLR 5240 to explicitly limit its restraints to only those accounts held in the name of Black Gold, BDL, or SDL at Deutsche Bank,[2] and that the Court order, pursuant to CPLR 5240, that CIMC's counsel may not issue further restraining notices without leave of this Court. *See id.*

Respectfully submitted,

Paul S. Hessler

---

[2]   For the avoidance of doubt, the Respondents preserve their arguments previously presented to the Court with respect to the restraint of the accounts held in the names of Black Gold, BDL and SDL.