

**Schulman|Blackwell**
11 Broadway Suite 615
New York New York 10004



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 5/2/13

**Dan J. Schulman**
*Voice*   646.688.5214
*Fax*   646.304.1117
*Email*   dschulman@schulmanblackwell.com

April 28, 2013

BY EMAIL amy_marshak@nysd.uscourts.gov

Judge Jed S. Rakoff
US Courthouse, 500 Pearl St.,
New York NY 10004

*Docket as a letter brief*

Re:   CIMC Raffles Offshore (Singapore) Pte. Limited, et al. v. Schahin
     Holding S.A., et al., Southern District of New York, Case No. 13 Civ. 0052 (JSR)

Dear Judge Rakoff:

We write on behalf of judgment creditors, CIMC Raffles, in response to the Schahin Entities and the Portigon letters, which were served on Friday and Saturday nights, at 8:30 p.m. and 8:56 p.m., respectively.

Because judgment debtors failed and refuse to pay (i) the US Arbitration Award, (ii) this Court's $70.8 million in Judgments; or (iii) the English High Court Judgment, for an additional $57.6 million, CIMC Raffles has been forced to commence post-judgment enforcement proceedings.

**Background**

CIMC Raffles, through counsel, served standard form restraining notices on: (i) judgment debtors, [Ex. A], (ii) three Deutsche Bank entities, [Ex. B], (iii) Portigon [Ex. C] and other banks. No objection has been voiced to the actual form of the restraining notices served, nor has any party claimed that the notices are not absolutely clear as to what property is restrained.

The notices set forth the judgment amount, the names of the judgment debtors, and quote CPLR 5222(b) in its entirety. As the notices provide, consistent with CPLR 5222(b), the banks are restrained from releasing property in which judgment debtors hold an interest. The notices do not seek to restrain property held by other entities. The Deutsche Bank notice even notes that "it appears that Black Gold, BDL and SDL hold approximately forty bank accounts in your bank."

In short, these restraining notices are no different in form or substance than the many hundreds of thousands of restraining notices that are served annually in New York. See, e.g., www.blumbergflegalforms.com/forms/412.pdf.

We respectfully suggest that there is no reason nor is there sufficient evidence before the Court to allow the Court to "clarify" the pellucid restraining notices. And there certainly is no basis

# Schulman|Blackwell

Judge Rakoff                            Page 2 of 5                            April 28, 2013

articulated to limit CIMC Raffles' rights to collect on its judgments. What is evident is that Schahin is trying to avoid paying its just debts, by raising false and misleading claims.

### Calls and Communications with Deutsche Bank

The restraining notices were served on Deutsche Bank and affiliates precisely because of the discovery and information that we had obtained, which was that Deutsche Bank held about 40 e accounts for judgment debtors. Mr. Tobias Stern, in-house counsel for Deutsche Bank A.G., contacted co-counsel, Debevoise, and asked whether we could provide the account numbers referenced in the restraining notice. In response, on April 4, 2013, I wrote to Toby Stern, and provided him --as requested—with the account numbers of which we were aware that related to the Black Gold project. This email also advised Deutsche Bank that we believed that Deutsche Bank was involved in other financing arrangements for other Schahin entities, and that there would be account numbers at Deutsche Bank "which may or may not involve the three entities as against whom CIMC Raffles currently holds a judgment, or the two entities against which we are seeking a judgment". [Ex. D annexes the email, redacting the confidential account numbers.]

In short, we sought to prevent Deutsche Bank from restraining accounts in which judgment debtors lacked an interest, and highlighted this issue for Deutsche Bank, as banker to multiple Schahin Entities.

On April 24, 2013, Patrick Ashby of Linklaters called counsel for CIMC Raffles. He advised that Deutsche Bank had restrained accounts not belonging to BDL, SDL, and Black Gold, including accounts in the names of entities that he said we "did not know", Schahin Petroleo e Gas, Turasoria, Airosaru, Dleif, and Deep Black. He asked that we call Deutsche Bank's outside counsel, Seward & Kissel, to advise them that the restraining notice solely runs to the three judgment debtors named in the restraining notice, BDL, SDL, and Black Gold.

Mr. Moodhe of Debevoise advised Mr. Ashby that judgment debtors and Deutsche Bank have knowledge about the accounts at Deutsche Bank, not CIMC Raffles. He also advised that we would be happy to advise counsel for Deutsche Bank that CIMC Raffles is not seeking to restrain accounts in which judgment debtors do not hold a property interest. Mr. Ashby appeared satisfied and set up a conference call so we could repeat this to Seward & Kissel, Deutsche Bank's counsel.

In that call, Mr. Moodhe repeated that Deutsche Bank must make the determination as to which accounts are properly restrained, but that if clarification was required, CIMC Raffles has simply restrained property in which judgment debtors held an interest, and not any other property belonging to other entities in which judgment debtors do not hold an interest. After counsel for Deutsche Bank asserted that this statement did not provide them with sufficient comfort, we advised that this subject is more properly the subject of discussions between Deutsche Bank and its clients, judgment debtors, since they have all information about the accounts.

# Schulman|Blackwell

Judge Rakoff                                   Page 3 of 5                                   April 28, 2013

### Schahin Entities' Motion and Letter

Various Schahin Entities (other than Schahin Holding, Schahin Engenharia, and Sea Biscuit), have filed an "emergency motion" seeking to bar CIMC Raffles from serving any additional restraining notices, and requesting that the Court clarify the scope of existing restraining notices.

The motion is legally and factually meritless. At base, Schahin Entities claim that, "In the hope that we would not have to involve the Court in this matter, we requested that CIMC's counsel confirm to Deutsche Bank that the restraining notice dos not reach assets held by parties other than the Respondents. CIMC s counsel has refused to provide such clarification...."

This is simply not true. We told Deutsche Bank's counsel that we are only seeking to restrain property (or accounts) in which judgment debtors, BDL, SDL, and Black Gold, hold an interest. That is what the restraining notices state. We don't know, and hence could not represent to Deutsche Bank that judgment debtors do not control or hold a property interest in accounts held in other entities' names. E.g., Bingham v. Zolt, 231 A.D.2d 479, 647 N.Y.S.2d 220 (1st Dep't 1996) (restraining notice proper where judgment debtor controlled another's bank account).

At basis, this is a dispute between Schahin and its bank, since they are the only ones who know what interests, if any, the various Schahin entities have in the various accounts. Yet, judgment debtors expressly state in their letter brief, "**For the avoidance of doubt, we do not question Deutsche Bank's conduct**." (Schahin Br. at 3) (emph. supplied.)

This would imply (1) judgment debtors either believe that the restraining notice (which only runs to BDL, SDL, and Black Gold) runs to other entities -- but the plain language of the restraining notices provide otherwise; or (2) judgment debtors concede that Deutsche Bank IS justified in restraining accounts in which judgment debtors are not accountholders, i.e., that judgment debtors hold some sort of property interest or right to control those accounts. Either way, this is nothing that was caused by CIMC Raffles.

We suggest that it might be possible that Deutsche Bank is restraining these accounts precisely because those other Schahin entities make regular payments to judgment debtor Schahin Engenharia. During the conversation with Patrick Ashby on April 24, he said that Deutsche Bank has restrained payments from accounts for entities that we probably do not even know the names of, including Schahin Oil and Gas Ltd. ("Schahin O&G"), Schahin Petroleo e Gas S.A. ("Schahin P&G"), Turasoria S.A. ("Turasoria"), Deep Black Drilling LLC ("Deep Black"), and Airosaru Drilling LLC ("Airosaru").

Consistently, in the declaration of Mr. Gustavo, who apparently works for Fernando Schahin, CFO, Mr. Gustavo narrowly defines Respondents as solely BDL, SDL and Black Gold (Gustavo Dec. ¶ 2 ); and claims that "Respondents" have no rights to accounts held by Schahin P&G, Turasoria, Airosaru, Dleif, or Deep Black (id., ¶ 8).

We suggest that Mr. Gustavo's declaration is predicated on his careful exclusion of Schahin Holding, Schahin Engenharia, and Sea Biscuit, from his definition of "Respondents."

# Schulman|Blackwell

Judge Rakoff                           Page 4 of 5                           April 28, 2013

As I specifically advised Mr. Ashby on the April 24 call, we are in fact entirely familiar with these other Schahin Entities, because they own or operate the Schahin Entities' fleet of vessels. Presumably, these entities routinely make payments for operation of those vessels to Schahin Engenharia, and Schahin P&G, a wholly-owned subsidiary of debtor Schahin Holding.

We so believe because of a report by Moody's. (Relevant portion annexed as Ex. E.) In short:

• Schahin Oil and Gas Ltd. is the parent company of judgment debtor Sea Biscuit, and is beneficially owned (50/50) by Salim Taufic Schahin and Milton Taufic Schahin;

• Turasoria S.A. owns the SC Lancer, which is operated by judgment debtor Schahin Engenharia;

• Deep Black Drilling LLC owns the Vitoria 10,000, which is operated by Schahin Engenharia;

• Airosaru Drilling LLC owns the Cerrado, which is operated by Schahin Petroleo e Gas S.A., a 100% owned subsidiary of judgment debtor Schahin Holding;

• Dleif Drilling owns the Sertao, which is also operated by Schahin Petroleo e Gas S.A.

In short, it appears that Deutsche Bank has restrained or placed an administrative hold on Schahin accounts either because these accounts are used to make payments to Schahin judgment debtors, or because judgment debtors hold some sort of interest in these accounts.

Finally, judgment debtors seek to limit CIMC Raffles' ability to restrain accounts. Precisely because we have simply served wholly appropriate restraining notices, and did not direct Deutsche Bank to place a hold on accounts in the names of other Schahin Entities, the relief being sought, and the claims of improper conduct, are entirely meritless.

### Portigon's Letter

Portigon's letter is more important for what it does not say, than what it does say. Portigon does not claim any misunderstanding as to scope of the notices. Nor does Portigon deny that it has the ability to direct Deutsche Bank to release funds to Schahin Entities that are not judgment debtors.

Rather, Portigon argues that the restraining notices are overbroad, because (i) CIMC Raffles has not conducted discovery before serving the notices, (ii) the notices purportedly "seek to restrain (immediately) assets around the world worth far more than the judgment at issue," and (iii) there is an unresolved legal question as to whether a restraint served on Deutsche Bank in New York could restrain the "onshore" accounts held at Deutsche Bank's Brazilian affiliate.

Portigon's argument that CIMC Raffles should conduct discovery before serving restraining notices, is a red herring. As a matter of law, a judgment creditor does not even need to know if a judgment debtor has an account at a bank, let alone the account number, before it may serve a legally effective restraining notice on that bank. See Digitrex, Inc. v. Johnson, 491 F. Supp. 66 (S.D.N.Y. 1980) (restraining notice effective even though it did not contain account number to be restrained).

# Schulman|Blackwell

More fundamentally, Portigon misapprehends the nature of post-judgment enforcement. CPLR 5222(b) specifically provides that "If a garnishee served with a restraining notice withholds the payment of money belonging or owed to the judgment debtor or obligor in an amount equal to twice the amount due on the judgment or order, the restraining notice is not effective as to other property or money." When Portigon (or Deutsche Bank) withhold funds in which judgment debtors hold an interest, that statutory provision will come into effect. But not until then.

Portigon's second argument, that CIMC Raffles is seeking to restrain assets worth more than the judgment, is notably lacking in any specificity as to which assets belonging to judgment debtors have been restrained, let alone analysis or proof that those assets exceed the value of CIMC Raffles' judgment. It is also inconsistent with Portigon's position that the "Black Gold" project is financially troubled, and fundamentally inconsistent with Portigon's claim that all funds belonging to judgment debtors are subject to Portigon's security interest in "all assets".

Finally, Portigon's jurisdictional argument is another red herring. Portigon is again inconsistent, this time contradicting its express position that it has standing because it has control over all offshore and onshore bank accounts belonging to judgment debtors.

Precisely because there is no dispute that this Court has personal jurisdiction over Portigon, Portigon can be restrained from releasing funds to judgment debtors, worldwide. See Koehler v. Bank of Bermuda, 12 N.Y.3d 533, 911 N.E.2d 825 (2009) (service of turnover order on Bank of Bermuda (New York) Ltd. as agent and subsidiary of Bank of Bermuda Limited held effective to require parent Bank of Bermuda Limited to turnover stock certificates held in Bermuda).

                                                      Respectfully submitted,

                                                      [signature]

                                                      Dan J. Schulman

cc (email): All Counsel of Record