# MILBANK, TWEED, HADLEY & McCLOY LLP

1 CHASE MANHATTAN PLAZA
NEW YORK, NY 10005

212-530-5000

FAX: 212-530-5219

LOS ANGELES
213-892-4000
FAX: 213-629-5063

WASHINGTON, D.C.
202-835-7500
FAX: 202-835-7586

LONDON
44-20-7615-3000
FAX: 44-20-7615-3100

FRANKFURT
49-(0)69-71914-3400
FAX: 49-(0)69-71914-3500

MUNICH
49-89-25559-3600
FAX: 49-89-25559-3700

BEIJING
8610-5969-2700
FAX: 8610-5969-2707

HONG KONG
852-2971-4888
FAX: 852-2840-0792

SINGAPORE
65-6428-2400
FAX: 65-6428-2500

TOKYO
813-5410-2801
FAX: 813-5410-2891

SÃO PAULO
55-11-3927-7700
FAX: 55-11-3927-7777

Daniel M. Perry
Partner
212-530-5083
E-MAIL: dperry@milbank.com

[Stamp: USDC SDNY / DOCUMENT / ELECTRONICALLY FILED / DOC #: _____ / DATE FILED: 5/2/13]

April 27, 2013

**BY ECF**

Judge Jed S. Rakoff
United States Courthouse
500 Pearl Street
New York, NY 10004

[Handwritten: Docket as a letter brief]

Re: CIMC Raffles Offshore (Singapore) Ltd. et al. v. Schahin Holding S.A., et al.
U.S. District Court, Southern District of New York; Case No. 13-CV-0052

Dear Judge Rakoff:

  We write on behalf of interested party, Portigon AG, New York Branch ("Portigon"), as Administrative Agent for the Senior Lenders,[1] in support of Respondents' letter, dated April 26, 2013. Since the last time we appeared before Your Honor, Petitioners served restraining notices on Portigon seeking to restrain all property of Black Gold, BDL, and SDL. Petitioners also served additional restraining notices on at least two individual Senior Lenders. Ex. A. Portigon acts as Collateral Agent and Administrative Agent on Schahin-entity projects unrelated to the project at issue in this litigation and is, therefore, interested in the resolution of the motion at issue. Relatedly, Portigon is concerned about the cumulative effect of the many restraining notices now served by counsel for the Plaintiff in this case. The restraining notices

---

[1] All capitalized terms used herein are defined in Portigon's Memorandum of Law in Support of Motion for Relief from Petitioners' Enforcement Actions and Limited Opposition to Petitioners' Motion for Post-Judgment Enforcement Pursuant to Fed. R. Civ. P. 69 ("Portigon's Motion") n.1 (Apr. 14, 2013) (Doc No. 38).

Milbank, Tweed, Hadley & McCloy LLP

Judge Jed S. Rakoff
April 27, 2013
Page 2

threaten irreparable harm to dozens of third-party lenders, insofar as they seek to restrain (immediately) assets around the world worth far more than the judgment at issue.

Under CPLR 5222(b), an attorney who serves a restraining notice on any entity other than a judgment debtor has an obligation to ensure that it properly restrains property of a judgment debtor, or he will be liable for any "damages sustained by reason of the restraint." CPLR 5222(b). While Petitioners claim they do not seek to restrain assets in which the Senior Lenders (or other secured lenders) have a security interest, the restraining notices could have precisely that effect—freezing encumbered assets in numerous accounts and in unrelated projects pending a judgment from this Court. It is the Petitioners' responsibility to narrow their enforcement efforts and to use less intrusive means wherever possible. *See Guardian Loan*, 47 N.Y.2d at 519. Here, Petitioners have the ability to take discovery and thereafter seek appropriately crafted restraints and levies.

The restraints at issue raise substantial legal issues. For example, the restraint served on Portigon seeks to freeze the Onshore Project Accounts (located in Brazil and controlled by Portigon). The question of whether a judgment creditor can restrain property that a party controls, but does not have actual possession or custody, is substantially similar to an issue that was recently certified by the Second Circuit to the New York Court of Appeals.[2] In addition, the question of whether this Court can restrain the Brazilian Project Accounts (exclusively foreign assets) held by a Brazilian bank is the subject of a split of authority within the Southern District of New York.[3] These are important legal issues that ought to be presented to the Court with a developed factual record and without the threat of imminent default. Petitioners will be compensated for any delay through the accrual of post-judgment interest.

Very truly yours,

*Daniel Perry* /BES

Daniel M. Perry

---

[2] *See Commonwealth of N. Mariana Islands v. Canadian Imperial Bank of Commerce*, 693 F.3d 274 (2d Cir. 2012) ("May a court issue a turnover order pursuant to N.Y. C.P.L.R. § 5225(b) to an entity that does not have actual possession or custody of a debtor's assets, but whose subsidiary might have possession or custody of such assets?"), *Commonwealth of the N. Mariana Islands v. Millard*, 287 F.R.D. 204, 214 (S.D.N.Y. 2012).

[3] *Compare JW Oilfield Equip., LLC v. Commerzbank AG*, 764 F. Supp. 2d 587 (S.D.N.Y. 2011), *with Shaheen Sports, Inc. v. Asia Ins. Co.*, Nos. 98-cv-5951, 11-cv-920, 2012 U.S. Dist. LEXIS 36720 (S.D.N.Y. Mar. 14, 2012) concerning the separate "branch" doctrine. We note that issue presented here is more difficult because the Brazilian Collateral Agent and the Collateral Agent are separate companies not separate branches.