IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD., and YANTAI CIMC RAFFLES OFFSHORE LIMITED, <br><br> Petitioners, <br><br> - against - <br><br> SCHAHIN HOLDING S.A., SCHAHIN ENGENHARIA S.A., SEA BISCUIT INTERNATIONAL INC., BLACK GOLD DRILLING LLC, BAERFIELD DRILLING LLC, and SORATU DRILLING LLC, <br><br> Respondents. | Civil Action No.: 1:13-cv-00052-JSR <br> ECF Case <br><br> Hon. Jed S. Rakoff <br><br><br> **ORAL ARGUMENT REQUESTED** |

**CIMC RAFFLES' MEMORANDUM OF LAW IN SUPPORT OF ITS
SECOND MOTION FOR POST-JUDGMENT ENFORCEMENT
AGAINST SCHAHIN HOLDING AND SCHAHIN ENGENHARIA**

| | |
|---|---|
| **SCHULMAN BLACKWELL LLP** <br> Dan J. Schulman <br> Christopher A. Blackwell <br> 11 Broadway, Suite 615 <br> New York, New York 10004 <br> Tel:  (646) 688-5214 <br> Fax:  (646) 304-1117 <br> Email:  dschulman@schulmanblackwell.com | **DEBEVOISE & PLIMPTON LLP** <br> David W. Rivkin <br> Joseph P. Moodhe <br> Nwamaka G. Ejebe <br> 919 Third Avenue <br> New York, New York 10022 <br> Tel:  (212) 909-6000 <br> Fax:  (212) 909-6836 <br> Email:  dwrivkin@debevoise.com |

*Co-counsel for Petitioners,
CIMC Raffles Offshore (Singapore) Pte. Ltd.
and Yantai CIMC Raffles Offshore Limited*

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................... 1

FACTS ............................................................................................................................................ 4

ARGUMENT .................................................................................................................................. 6

I. THE COURT SHOULD ENTER A TURNOVER ORDER PURSUANT TO CPLR 5225 AGAINST SCHAHIN HOLDING AND SCHAHIN ENGENHARIA ......... 6

    A. The Court Has Ample Authority and Should Issue a Turnover Order ................... 6

II. THE COURT SHOULD ISSUE INSTALLMENT PAYMENT ORDERS AGAINST SCHAHIN ENGENHARIA PURSUANT TO CPLR 5226, AND TURNOVER ORDERS AGAINST DEUTSCHE BANK AMERICAS PURSUANT TO CPLR 5227 ...................................................................................... 8

    A. It is Undisputed that the Court Should Issue Installment Payment Orders Against Schahin Engenharia and Turnover Orders Against Deutsche Bank Americas For the Offshore Operating Accounts Relating to the SS Amazonia and the SS Pantanal ................................................................... 8

    B. For the Same Reasons, this Court Also Should Issue Installment Payment Orders Against Schahin Engenharia and Turnover Orders Against Deutsche Bank Americas for Operating Expenses Paid to Offshore Operating Accounts Relating to the SC Lancer and the Vitoria 10,000 ............... 10

    C. The Court Should Issue an Installment Payment Order as Against Schahin Engenharia for Operating Expenses Paid to Schahin Engenharia via Onshore (Brazilian) Operating Accounts –and Direct Schahin Engenharia to Instruct Its Banks Accordingly ........................................................................ 12

CONCLUSION ............................................................................................................................. 12

## **TABLE OF AUTHORITIES**

**CASES**

Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 900 N.Y.S.2d 698, 926 N.E.2d 1202 (2010) ................................................................................................................. 7

Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533 (2009). ............................................................ 7

United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002) ............................................................. 7

United States v. Uccio, 940 F.2d 753 (2d Cir. 1991) .................................................................... 7

**STATUTES**

9 U.S.C. § 9 ................................................................................................................................... 7

N.Y. CPLR 5225 ........................................................................................................ 2, 3, 6, 7, 12

N.Y. CPLR 5226 ...................................................................................................... 2, 3, 8, 9, 10, 12

N.Y. CPLR 5227 .................................................................................................... 3, 8, 10, 12

**OTHER AUTHORITIES**

Fed. R. Civ. P. 69 ...................................................................................................................... 1, 6

Fed. R. Evid. 408(b) ...................................................................................................................... 5

Fed. R. Evid. 402 ........................................................................................................................... 5

Fed. R. Evid. 403 ........................................................................................................................... 5

Fed. R. Evid. 801 ........................................................................................................................... 5

**Preliminary Statement**

Petitioners CIMC Raffles Offshore (Singapore) Pte. Ltd. and Yantai CIMC Raffles Offshore Ltd. ("Petitioners" or "CIMC Raffles") respectfully submit this memorandum of law in support of CIMC Raffles' motion, pursuant to Fed. R. Civ. P. 69 (and Article 52 of the NY CPLR), to enforce the judgment rendered by this Court and filed on or about April 24, 2013 as against respondents Schahin Holding S.A. ("Schahin Holding") and Schahin Engenharia S.A. ("Schahin Engenharia") (the "Second Enforcement Motion").

Previously, on April 10, 2013, CIMC Raffles filed its first enforcement motion, as against Baerfield Drilling LLC ("BDL"), Soratu Drilling LLC ("SDL") and Black Gold Drilling LLC ("Black Gold") ("the First Enforcement Motion"). The Court ruled on the First Enforcement Motion in its April 30, 2013 Memorandum Order. That Order, among other things, "orders, Black Gold, SDL and BDL to bring into New York and turn over to CIMC funds sufficient to satisfy the judgment issued against them on March 13, 2013." (See Schulman Decl. Ex. A., Order at 3.) The April 30, 2013 Order also orders that "CIMC may restrain and execute on any payments made to Schahin Engenharia under the waterfalls as reimbursements for operating expenses." (Id. at 13.)

This Second Enforcement Motion essentially seeks substantially similar relief: (i) turnover of assets from Schahin Holding and Schahin Engenharia to CIMC Raffles to pay the April 24, 2013 judgments; and (ii) an installment payment order directing Schahin Engenharia to pay to CIMC Raffles all operating expense reimbursements that it receives for operating vessels or rigs.

**The Proposed Order Requested**

Specifically, CIMC Raffles seeks issuance of an Order:

(1) Directing and ordering Schahin Holding and Schahin Engenharia, pursuant to CPLR 5225, to bring into New York and turnover to CIMC Raffles funds equal to the judgments entered on April 24, 2013, namely, the sum of $71,386,801.91 plus post-judgment interest ($69,470,777.41 + $1,832,885.54 + $13,206.28 + $350 + $69,582.68 + post-judgment interest); with the limited exception that CIMC Raffles requests that the Court provide all judgment debtors with a grace period, until no later than May 28, 2013, or such date as the Court may designate, to make such payments;

(2) (On consent of counsel for the Schahin parties which have appeared, and without objection from other parties): Directing installment payments be made by Schahin Engenharia, to an account specified by CIMC Raffles, pursuant to CPLR 5225 and 5226, of all operating expenses (funds paid to Schahin Engenharia for Schahin Engenharia's operation, maintenance, and repairs, and other sums paid or payable or to be paid to Schahin Engenharia from U.S. banks) ("Operating Expenses") on account of or relating to Schahin Engenharia's operation of the SS Amazonia and the SS Pantanal, including all Operating Expenses paid through "Offshore Operating Accounts" located at Deutsche Bank Trust Company Americas ("Deutsche Bank Americas"); and directing Deutsche Bank Americas to turnover to CIMC Raffles all sums in its custody or possession paid, payable, or to be paid to Schahin Engenharia for Operating Expenses

      relating to the SS Amazonia and the SS Pantanal, including sums located in Offshore Operating Accounts, pursuant to CPLR 5227, until CIMC Raffles files a satisfaction of the April 24, 2013 judgment;

(3)    directing installment payments be made by Schahin Engenharia, to an account specified by CIMC Raffles, pursuant to CPLR 5225 and 5226, of all Operating Expenses paid or payable or to be paid to Schahin Engenharia on account of Schahin Engenharia's operation of the SC Lancer and the Vitoria 10,000, and any other vessels, rigs, or platforms, including all Operating Expenses paid through Offshore Operating Accounts located at Deutsche Bank Americas; and directing Deutsche Bank Americas to turnover to CIMC Raffles all sums in its custody or possession that are paid, payable, or to be paid to Schahin Engenharia, for Operating Expenses, relating to the SC Lancer, the Vitoria 10,000, and any other vessels or rigs operated by Schahin Engenharia, including sums located in Offshore Operating Accounts, pursuant to CPLR 5227, until CIMC Raffles files a satisfaction of the April 24, 2013 judgment;

(4)    directing installment payments be made by Schahin Engenharia, to an account specified by CIMC Raffles, pursuant to CPLR 5225 and 5226, of all Operating Expenses paid or payable or to be paid to Schahin Engenharia on account of Schahin Engenharia's operation of the SS Amazonia, SS Pantanal, SC Lancer, and Vitoria 10,000, and any other vessels or rigs paid through bank accounts in Brazil ("Onshore Operating Accounts"), including all Operating Expenses paid or reimbursed through

    Onshore Operating Accounts located at Deutsche Bank S.A.–Banco Alemao ("Deutsche Bank Brazil"); and

(5) directing Schahin Engenharia to issue instructions to all U.S. and non-U.S. banks in which it maintains funds, directing that all such banks turnover to CIMC Raffles all sums in its custody or possession that are paid, payable, or to be paid to Schahin Engenharia, unless such funds are subject to senior security interests, on or before May 28, 2013, and to provide CIMC Raffles and the Court with copies of all such instructions, on or before May 24, 2013.

## Facts

The facts relied on in support of CIMC Raffles' motion were already presented to the Court in CIMC Raffles' First Enforcement Motion, and are taken from the extensive evidence presented by judgment debtors in the NY Arbitration, the NY Attachment Proceeding, the London High Court Action, the London Arbitrations, and the NY Domestication Proceeding, as such terms were defined in CIMC Raffles' First Enforcement Motion.

In a nutshell, however, judgment debtors swore that they have "ample" assets to pay all of CIMC Raffles' claims as against Schahin Entities, then totaling more than $208 million. (See Schulman April 9 Aff. Ex. A (Schahin Affidavit) ¶ 14.) The amount is now in excess of $219 million, with interest. Further, Schahin Engenharia represents that it has assets of more than $500 million. (Schahin Aff. Ex. 16.) Fernando Schahin testified that just the SS Amazonia and the SS Pantanal are worth $1 billion each (less approximately $800 million in bank debt, that means BDL and SDL are worth net $1.4 billion) (see Schulman April 16, 2013 Reply Aff. Ex. 5, May 7, 2012 Hearing Tr. 144); and BDL, SDL, and Black Gold represented to

this Court that the membership certificates in BDL and SDL have an estimated value of $1.27 billion. (Schulman Decl. Ex. B April 30, 2013 Order at 12.)

Indeed, debtors' position here is entirely consistent with their past testimony. They expressly advised this Court that they have substantial and liquid assets required to satisfy the judgments, when they advised the Court that they are offering a substantial "balloon payment" in partial settlement (see April 18 Hearing Tr. 30:13-18.) Schahin entities having "opened the door" here to discussions of their settlement offer: the correspondence reflects that they are offering a $12 million upfront payment. (See Schulman Decl. Ex F at 2.) In short, the Schahin debtors' unquestionably have the financial wherewithal to make Court-ordered payments.[1]

While this offer is wholly inadequate, and was rejected immediately, it is of interest that, despite the clear dictates of this Court's April 30, 2013 Memorandum Order, debtors still have not paid one penny on this Court's Judgments. That is consistent with their conduct throughout: they did not pay one penny on the two vessels, despite countersigning the final invoices, once the vessels were delivered. They have not paid one penny on the—fully enforceable—London High Court Judgment against Schahin Holding. And they have not paid one penny on the NY Arbitration Award.

The facts are also law of the case: as the Court stated in its April 30 Memorandum Order, Schahin should be estopped from denying that it has ample funds to pay the Judgment, given that the Schahin Entities successfully argued to lift an attachment relying on Mr. Schahin's affidavit and testimony that there are "ample" funds available to pay any and all

---

[1] See Fed. R. Evid. 408(b) (evidence of a compromise offer is admissible for purposes other than to prove or disprove the amount of a disputed claim or to impeach a prior inconsistent statement); see generally 2011 Committee Notes (offer admissible if offered for other purposes, subject to Rules 402, 403, 801, etc.).

arbitration awards and court judgments. (See April 30, 2013 Memorandum Order at n.3.)[2] Of course, as the Court noted in the April 30, 2013 Memorandum Order, Mr. Schahin also swore in that affidavit that he would pay all final awards or judgments. If he had done so, Petitioners would not be seeking relief today.

## Argument

### I. THE COURT SHOULD ENTER A TURNOVER ORDER PURSUANT TO CPLR 5225 AGAINST SCHAHIN HOLDING AND SCHAHIN ENGENHARIA

#### A. The Court Has Ample Authority and Should Issue a Turnover Order

Just as this Court issued a turnover order directing BDL, SDL, and Black Gold to pay the judgments entered against them, CIMC Raffles seeks for this Court to enter an order pursuant to Fed. R. Civ. P. 69 and CPLR 5225 directing the other judgment debtors, Schahin Holding and Schahin Engenharia, to pay money sufficient to satisfy the Judgment, together with post-judgment interest.

CIMC Raffles also suggests that all judgment debtors be provided a slight grace period, until May 28, 2013, to turnover funds pursuant to the Court's existing and requested Orders.

There is no doubt that the Court has ample authority and should issue a turnover order. Indeed, this is also law of the case, in light of the Court's April 30, 2013 Memorandum

---

[2] The April 30, 2013 Memorandum Order provides, in relevant part:

"The Court also notes that respondents have represented in New York State Supreme Court that "[i]f final judgments or awards are rendered against the Defendants, the Defendants of course will satisfy them," and that they "have substantial net worth and assets that are more than sufficient to pay any judgments that might be rendered against them." Schulman Aff. Ex. A ¶ 14; see also CIMC Raffles v. Schahin Holding, No. 650850/2012 (N.Y. Sup. Ct.). To the extent that respondents induced that court's reliance on their representations, it would be inequitable to allow them to avoid a restraint on their assets now under the theory that they will not have enough funds to continue to operate."

- 6 -

Order.  E.g., United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991) ("when a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case"); United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (prior decision on an issue should generally be adhered to unless "cogent and compelling reasons militate otherwise") (citations omitted).

CPLR 5225, in mandatory language, provides in relevant part that, "[u]pon motion of the judgment creditor ... the court shall order that the judgment debtor pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor."

As the Court held in its April 30, 2013 Memorandum Order, "it is well established that 'a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property." Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533, 5411 (2009). (Schulman Decl. Ex. B, April 30, 2013 Order at 2.); see also Hotel 71 Mezz Lender LLC v. Falor, 14 N.Y.3d 303, 312, 900 N.Y.S.2d 698, 704, 926 N.E.2d 1202, 1208 (2010) (a "court with personal jurisdiction over a nondomiciliary present in New York has jurisdiction over that individual's tangible or intangible property, even if the situs of the property is outside New York") (affirming turnover order, and appointment of a post-judgment receiver to collect funds from sale of intangible out-of-state membership interests in limited liability companies, but not to run those companies).

It is also law of the case that "this Court has personal jurisdiction over respondents because they contractually agreed to arbitrate in New York, thereby agreeing to submit themselves to the jurisdiction of the New York courts." (Schulman Decl. Ex. B, April 30, 2013 Memorandum Order at 2-3, citing 9 U.S.C. § 9.)

- 7 -

For all of the reasons that the Court directed, in the April 30, 2013 Memorandum Order, that BDL, SDL, and Black Gold bring into New York funds to pay their judgments, the Court should issue an order directing Schahin Holding and Schahin Engenharia to bring into New York and turnover funds to pay the judgments entered April 24, 2013.

II. **THE COURT SHOULD ISSUE INSTALLMENT PAYMENT ORDERS AGAINST SCHAHIN ENGENHARIA PURSUANT TO CPLR 5226, AND TURNOVER ORDERS AGAINST DEUTSCHE BANK AMERICAS PURSUANT TO CPLR 5227**

A. **It is Undisputed that the Court Should Issue Installment Payment Orders Against Schahin Engenharia and Turnover Orders Against Deutsche Bank Americas For the Offshore Operating Accounts Relating to the SS Amazonia and the SS Pantanal**

The initial tranche of this relief—issuance of an installment payment order as against Schahin Engenharia, and turnover order as against Deutsche Bank Americas, on account of the Offshore Operating Accounts relating to the SS Amazonia and the SS Pantanal—is undisputed. Linklaters has expressly agreed that this should be done. (See Schulman Decl. Ex. F, Hessler May 6, 2013.)

The Court specifically held in the April 30, 2013 Memorandum Order that "CIMC may restrain and execute on any payments made to Schahin Engenharia under the waterfalls as reimbursement for operating expenses." (Schulman Decl. Ex. B, April 30, 2013 Memorandum Order at 13.)

As a courtesy, CIMC Raffles suggested that Schahin debtors would be better served if operating funds from the Offshore Operating Accounts at Deutsche Bank Americas are paid to CIMC Raffles via an installment payment order to debtors pursuant to CPLR 5226, and an order to Deutsche Bank Americas pursuant to CPLR 5227, rather than by serving a writ of execution through the U.S. Marshal's Office. The suggestion was made because a writ of

execution, unlike a turnover order, would require payment of fees ("poundage" in the New York vernacular) to the US Marshal's Office, and these fees provide no benefit to any party, as they do not reduce the principal and interest due from judgment debtors.

Linklaters consents; Deutsche Bank Americas and Portigon have tacitly agreed, and CIMC Raffles is confident that Deutsche Bank Americas will not oppose, and will comply with the proposed order.

For the sake of completeness, we summarize the relevant statutory provisions.

The governing law is pellucid: "Upon motion of the judgment creditor, upon notice to the judgment debtor, where it can be shown that a judgment debtor is receiving or will receive money from any source … the court shall order that the judgment debtor make specified installment payments to the judgment creditor." N.Y. CPLR 5226.

As Portigon set forth in its papers, and in open court, and as set forth in the Court's April 30, 2013 Memorandum Order, Schahin Engenharia receives funds from periodic "waterfall" payments.  Specifically, Schahin Engenharia is reimbursed for the costs of operating the SS Amazonia and the SS Pantanal (the vessels owned by BDL and SDL, respectively), and the secured lenders release funds and release their security interests in the operating expenses paid to Schahin Engenharia.  (See Schulman Decl. Ex. B, April 30, 2013 Memorandum Order at 8; see id. at 13.)

Under the waterfalls, operating expenses are paid periodically to Schahin Engenharia for operating the SS Amazonia and the SS Pantanal, as more fully set forth in the letter dated April 17, 2013 from Milbank, counsel for Portigon, annexed to the Schulman Declaration as Ex. C.  (That same letter was submitted to the Court at the hearing on April 18, 2013.)  In sum, $1-2 million per month in operating expenses payable to Schahin Engenharia

flows through the U.S. accounts at Deutsche Bank Americas while an additional $4-5 million a month flows through accounts at Deutsche Bank Brazil.

Pursuant to CPLR 5227, the Court may require a person who owes a debt to a judgment debtor to pay that amount to the judgment creditor. Counsel for Deutsche Bank Americas appeared in this action, and has been served this motion. Moreover, the Court has already ruled in the April 30, 2013 Memorandum Order that CIMC Raffles can restrain and execute on these Offshore Operating Expenses. Accordingly, the Court has authority and should issue an Order directing Deutsche Bank Americas to pay to CIMC Raffles the monthly operating expenses payable to Schahin Engenharia on account of its operation of the SS Amazonia and the SS Pantanal.

B.  **For the Same Reasons, this Court Also Should Issue Installment Payment Orders Against Schahin Engenharia and Turnover Orders Against Deutsche Bank Americas for Operating Expenses Paid to Offshore Operating Accounts Relating to the SC Lancer and the Vitoria 10,000**

Logically, and legally, there is no difference between operating expenses periodically paid to Schahin Engenharia from the Offshore Operating Accounts at Deutsche Bank Americas for the SS Amazonia and the SS Pantanal—and the Offshore Operating Accounts at Deutsche Bank Americas for the SC Lancer and the Vitoria 10,000 (or any other similarly situated vessel, rig, or platform). In each case, the Court can and should direct Schahin Engenharia to pay those waterfall payments to CIMC Raffles pursuant to CPLR 5226, and the Court can and should direct Deutsche Bank Americas to pay those debts to CIMC Raffles pursuant to CPLR 5227.

There is no dispute that Schahin Engenharia operates the SC Lancer and the Vitoria 10,000, or that these vessels generate periodic "waterfall" payments. The best schematic overview of the Schahin vessels was contained in a report written by Moody's (Ex. E to CIMC

Raffles' April 28, 2013 Letter), which summarizes the Black Gold and other project finance deals pursuant to which the Schahin Group own and operate drillships.

The picture is worth a thousand words.  But in words, Schahin Group owns the SS Amazonia, SS Pantanal, SC Lancer, North Star I, Sertao, Cerrado, and the Vitoria 10,000.  Schahin Engenharia operates the SS Amazonia, SS Pantanal, the SC Lancer, and the Vitoria 10,000.  These four vessels are owned, respectively, by BDL, SDL, Turasoria, S.A. and Deep Black Drilling LLP.  In addition, Schahin Petroleo e Gas S.a., a 100% owned subsidiary of debtor Schahin Holding S.A., operates the Sertao and the Cerrado drillships, which are owned by Dleif Drilling LLC and Airosaru Drilling LLC, respectively.

More information about the Schahin Group was provided at the April 28, 2013 argument, in the oral representations of counsel (including counsel for Deutsche Bank Americas), and in the Declaration of Gustavo Shinohara, dated April 26, 2013, submitted to the Court by Schahin judgment debtors in support of their motion to clarify and limit the restraining notices that CIMC Raffles had served.

Mr. Shinohara states that he is Project Finance Director for all of the Schahin Group, and that his declaration was made on personal knowledge.  Mr. Shinohara confirms all of the foregoing information about these vessels, and he also confirms that they are all operated and financed through substantially similar project finance arrangements, all of which involve the payment of monthly "waterfall" payments.  (Shinohara Decl. passim, and ¶¶ 9-10.)  In one instance, the SC Lancer, Mr. Shinohara advises that the drillship is financed via a bond.  However, Mr. Shinohara assures us that that bond also contains waterfall payments, with those waterfall payments made on the 10th of every month.  (See Shinahara Decl. ¶ 11.)  In short, insofar as Schahin Engenharia, a judgment debtor, is receiving a payment of operating expenses

from a waterfall or otherwise, regardless of the vessel or project, those amounts can be the subject of a turnover order.

    **C.**     **The Court Should Issue an Installment Payment Order as Against Schahin Engenharia for Operating Expenses Paid to Schahin Engenharia via Onshore (Brazilian) Operating Accounts –and Direct Schahin Engenharia to Instruct Its Banks Accordingly**

In addition to the request that the Court issue a general turnover order pursuant to CPLR 5225 as against, *inter alia*, Schahin Engenharia, to bring in funds to pay the April 24, 2013 judgments, CIMC Raffles requests the Court to issue a specific installment payment order pursuant to CPLR 5226 as against Schahin Engenharia, directing Schahin Engenharia to bring into New York and pay to CIMC Raffles the operating expenses that are paid or payable to Schahin Engenharia from Onshore (Brazilian) Operating Accounts, for the SS Amazonia, the SS Pantanal, the SC Lancer, and the Vitoria 10,000, and any other rigs or vessels. The authority for such an order resides, not on who currently possess or controls such Brazilian accounts, but rather on judgment debtor Schahin Engenharia's right to receive payments from those accounts. In this regard, we also request that the Court direct Schahin Engenharia to instruct Deutsche Bank Brazil, and any other non-US bank, to pay to CIMC Raffles the Onshore Operating Accounts, and file with the Court copies of those instructions, on or before May 24, 2013.

## Conclusion

For the foregoing reasons, CIMC Raffles respectfully requests that the Court (i) direct Schahin Holding and Schahin Engenharia, jointly and severally, to turn over on or before May 20, 2013, cash or cash equivalents, bank deposits, or other funds to pay the Judgment in the amount of $71,386,801.91 plus post-judgment interest, pursuant to CPLR 5225; (ii) direct Schahin Engenharia to make installment payments to CIMC Raffles of the operating expenses

reimbursed or paid to Schahin Engenharia from all accounts, onshore and offshore, for its operation of the SS Amazonia, SS Pantanal, SC Lancer, and Vitoria 10,000, pursuant to CPLR 5226 (and CPLR 5225), and instruct its banks to make payments to CIMC Raffles from Onshore accounts; and (iii) require Deutsche Bank Americas to pay CIMC Raffles the operating payments from Offshore accounts, pursuant to CPLR 5227.

Dated:  New York, New York
        May 8, 2013

SCHULMAN BLACKWELL LLP

By: _____
    Dan J. Schulman
    Christopher A. Blackwell
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Pte. Ltd.*
*and Yantai CIMC Raffles Offshore Limited*
11 Broadway, Suite 615
New York, New York 10004
Tel:  (646) 688-5214
Fax:  (646) 304-1117
Email:  dschulman@schulmanblackwell.com

DEBEVOISE & PLIMPTON
David W. Rivkin
Joseph P. Moodhe
Nwamaka G. Ejebe
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Pte. Ltd.*
*and Yantai CIMC Raffles Offshore Limited*
919 Third Avenue
New York, New York 10022
Tel:  (212) 909-6000
Fax:  (212) 909-6836
Email:  dwrivkin@debevoise.com