**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) LTD. and YANTAI CIMC RAFFLES OFFSHORE LIMITED, | |
| Petitioners, | Case No. 13 Civ. 0052 (JSR) |
| v. | **ECF CASE** **Electronically Filed** |
| SCHAHIN HOLDING S.A., SCHAHIN ENGENHARIA S.A., SEA BISCUIT INTERNATIONAL INC., BLACK GOLD DRILLING LLC, BAERFIELD DRILLING LLC AND SORATU DRILLING LLC, | |
| Respondent. | |

**INTERESTED PARTY PORTIGON AG'S LIMITED OPPOSITION TO CIMC RAFFLES' SECOND MOTION FOR POST-JUDGMENT ENFORCEMENT AGAINST SCHAHIN HOLDING AND SCHAHIN ENGENHARIA AND PARTIAL JOINDER TO RESPONDENTS' OPPOSITION**

Portigon AG, New York Branch ("Portigon"), in its capacity as

Administrative Agent for a group of Senior Lenders,[1] submits this limited opposition to

CIMC Raffles' Second Motion for Post-Judgment Enforcement Against Schahin Holding

and Schahin Engenharia (Docket No. 69) ("Second Enforcement Motion"). In the

Second Enforcement Motion, Petitioners seek five requests for relief, two of which

Portigon addresses here. Portigon also joins in Respondents' request for Portigon to pay

the Onshore and Offshore operating expenses directly to suppliers and labor, as set forth

---

[1] All capitalized terms not defined herein shall have the meaning ascribed to them in Portigon's Memorandum of Law in Support of its Motion for Relief from Petitioners' Enforcement Actions and Limited Opposition to Petitioners' Motion for Post-Judgment Enforcement Pursuant to Fed. R. Civ. P. 69, filed on April 14, 2013 (Docket No. 38) ("Portigon Mot.").

in Respondents' Memorandum of Law in Opposition to CIMC Raffles' Second Motion
for Post-Judgment Enforcement Against Schahin Holding and Schahin Engenharia
("Respondents' Opposition").

A. **Petitioners' Fifth Request for Relief Should Be Denied Because It is Not Authorized by CPLR 5226 and Is Inconsistent With the New York Court of Appeals' Decision in *Millard***

Petitioners' fifth request for relief, purporting to proceed under CPLR
5226, is for an order directing Respondent Schahin Engenharia S.A. ("Schahin
Engenharia") "to issue instructions to all U.S. **and non-U.S. banks** in which it maintains
funds, directing all such banks **to turnover** all sums in its possession or custody that are
paid, payable or to be paid to Schahin Engenharia," including all cash in the Onshore
Project Accounts held by the Brazilian Collateral Agent in Brazil.  (Second Enforcement
Motion at 4, 12 (emphasis added).)  Under CPLR 5226, a court may "order that the
judgment debtor make specified installment payments to the judgment creditor."
N.Y.C.P.L.R. 5226.  Here, however, Petitioners are not seeking payments from the
judgment debtor, but instructions to foreign banks to "turnover" assets held in foreign
bank accounts.  There is nothing in the text of CPLR 5226 that authorizes a Court to grant
such relief.

Moreover, Petitioners' application to force a foreign entity to provide
turnover "instructions" to foreign banks is an attempt to circumvent the carefully
calibrated New York regime concerning enforcement of judgments with respect to
property in the "possession or custody" of a third party.  CPLR 5225(b) requires that a

turnover order be directed at a person in "possession or custody" of the funds.[2]   In

substance, Petitioners here are attempting to force a turnover of cash in the possession of

foreign banks.[3]   But under the CPLR, if a judgment creditor seeks turnover of funds from

a bank, the judgment creditor must proceed under CPLR 5225(b).  It is in this way that

the CPLR places appropriate jurisdictional limitations upon the enforcement activity that

may be conducted by a New York court.[4]   A court cannot require turnover of assets from

a third-party that is outside of the jurisdiction of the court.[5]

    Here, CPLR 5225(b) is not available to Petitioners because they do not

have and have not sought to assert jurisdiction over the Brazilian Collateral Agent.  In

*Millard*, judgment creditor CNMI brought a turnover action under CPLR 5225(b) seeking

to have garnishee Canadian Imperial Bank of Commerce ("CIBC") direct its Cayman

Islands subsidiary to turnover money in its possession.  *Northern Mariana Islands v.*

---

[2] CPLR 5225(b) states that, "[u]pon a special proceeding commenced by the judgment creditor, against a person **in possession or custody** of money or other personal property in which the debtor has an interest . . . where it is shown that the judgment debtor is entitled to the possession of such property . . ., the court shall require such person to pay the money, or so much of it as is sufficient to satisfy the judgment, to the judgment creditor . . . ."  N.Y. C.P.L.R. 5225(b) (emphasis added).

[3] Indeed, in Petitioner's Notice of Motion (Docket No. 68), Petitioners describe their fifth request for relief as an order that "Schahin Engenharia issue instructions to . . . Deutsche Bank Brazil, directing that all Operating Funds owing, paid, to be paid, or payable to Schahin Engenharia, **be re-directed and paid to Petitioners at such as account as Petitioners may designate, and to pay or wire to Petitioners all other available funds not subject to secured interests of banks**. . . ."  (Notice of Mot. at 3 (emphasis added).)

[4] *Koehler v. Bank of Bermuda, Ltd.*, 12 N.Y.3d 533, 541 (2009) ("The reason" that CPLR 5225(b) requires a special proceeding "is that the garnishee, not being a party to the main action, has to be independently subjected to the court's jurisdiction.").

[5] *Northern Mariana Islands v. Millard*, 2013 N.Y. Slip Op. 03018, 2013 WL 1798585, at *6-7 (Apr. 30, 2013) ("[P]ersonal jurisdiction is the linchpin of authority under section 5225(b)."). Petitioners' application thus is also flawed insofar as it seeks to evade the requirement that the Court have personal jurisdiction over garnishees by inserting Schahin Engenharia between the Court and the Brazilian Collateral Agent.

*Millard*, 287 F.R.D. 204, 205 (S.D.N.Y. 2012).  The district court, relying on the text of

CPLR 5225, rejected the turnover request because CIBC only had *control*, but not

possession or custody, over the assets at issue.  *Id.* at 211.  The New York Court of

Appeals affirmed this reasoning after the question was certified to it by the Second

Circuit, concluding that "possession or custody" in CPLR 5225(b) "requires actual

possession."  *Millard*, 2013 WL 1798585, at *6-7.

   The only entity with actual possession of the Onshore Project Accounts is

the Brazilian Collateral Agent.[6]  Indeed, Petitioners implicitly concede this fact by failing

to move under CPLR 5225(b) against the Brazilian Collateral Agent.  Accordingly, the

Senior Lenders request that the Court deny Petitioners' fifth request to direct Schahin

---

[6] The Collateral Agreement is clear that the Brazilian Collateral Agent has sole "custody," and thus actual possession, of the Onshore Project Accounts.  (Declaration of Jared Brenner in Support of Portigon's Motion for Relief from Petitioners' Enforcement Actions and Limited Opposition to Petitioners' Motion for Post-Judgment Enforcement Pursuant to Fed. R. Civ. P. 69. ¶¶ 8, 21, Apr. 14, 2013 (Docket No. 37) ("<u>Brenner Decl.</u>").)  Petitioners have indicated that they believe there is a factual question as to which entity has possession or custody of the Onshore Project Accounts.  But it is well established that "actual possession" means "physical occupancy or control over property."  Black's Law Dictionary 1282 (9th ed. 2009).  For banks, this means the branch where the accounts are located.  *See Millard*, 2013 WL 1798585, at *3 (New York parent bank did not have actual possession of bank accounts that judgment debtors "maintained" at the bank's Cayman Islands subsidiary).  Further, under New York's separate entity rule, a court must "obtain jurisdiction over the specific bank branch holding the asset before it may order any turnover, notwithstanding its general jurisdiction over the banking entity by virtue of its New York branch."  *See Shaheen Sports, Inc. v. Asia Ins. Co., Ltd.*, No. 98-CV-5951, 2012 WL 919664 at *3 (S.D.N.Y. Mar. 14, 2012), *appeal dismissed by Hamid v. Habib Bank Ltd.*, No. 12-1481, 2012 WL 4017281, at *5 (2d Cir. Aug. 14, 2012) (denying turnover of judgment debtors' assets held by Pakistani banks where action commenced only against New York branches of those banks based, in part, on "the 'intolerable burden' that would otherwise be placed on banking and commerce if mere service of a writ to a New York branch could subject foreign bank branches to competing claims").  Thus, even if Petitioners could show that the Brazilian Collateral Agent is a branch or subsidiary of one of the Deutsche Bank entities served with a restraining notice, that fact would be irrelevant to whether the Court could direct the Brazilian Collateral Agent (either directly or indirectly) to turnover assets in its possession or custody.

Engenharia to instruct the Brazilian Collateral Agent to turnover Brazilian Reais in its possession that would otherwise be paid in Brazil to Brazilian entities from Brazilian bank accounts for the operation and maintenance of oil rigs located in Brazilian waters. Petitioners' request for relief should be denied because it is not authorized by CPLR 5226 and is inconsistent with *Millard*.

      B.      **The Court Should Use Its Discretion to Deny Petitioners' Fourth and Fifth Requests for Relief Because They Jeopardize Schahin Engenharia's Income-Generating Assets**

Granting Petitioners' request for turnover of all operating expense reimbursements received by Schahin Engenharia would threaten the operation of the Project to a far greater extent than simply restraining the payments of $1-2 million in operating expenses from the Offshore Project Accounts. For this additional reason, the Senior Lenders oppose both the fifth request for relief by Petitioners and the fourth request, which seeks turnover or installment payments from Schahin Engenharia of all operating expenses related to its operation of the Vessels, as well as Vittoria 10,000 and SC Lancer, paid through any Brazilian bank account.

In its Memorandum Order, dated April 30, 2013 (the "April 30 Order"), the Court was not persuaded that the Project would be threatened if the relatively small amount of expenses from the Offshore Project Accounts were restrained. (April 30 Order at 9.) Here, on the other hand, Petitioners request the turnover of money from the *Onshore* Project Accounts used to operate the Vessels. Based on Vessel drilling operation uptimes experienced during the first quarter of 2013, those operating expenses were approximately $4-5 million per month (*see* Schulman Declaration dated May 8, 2013, Ex. C (Docket No. 70)), but it should be noted that operating expenses could

substantially exceed that amount should operations improve and the Vessels experience improved operation uptime in the future.  The impact of such a loss in monthly operating expenditure reimbursements is significantly greater than the loss of $1-2 million from the Offshore Project Accounts.  The potential for irreparable harm is compounded by Petitioners' request to force the turnover of operating expense reimbursements from other vessels (*i.e.*, Vitoria 1000 and Lancer) unaffiliated with the Project.  (Second Enforcement Mot. at 11-12.)  These requests collectively seek to impair the operation of income-generating assets that provide the judgment debtors with a means to pay their debts.  (*See* Portigon Mot. at 18-20.)  As set forth in Portigon's original motion, the Court retains the discretion to vary the relief sought in precisely these circumstances.  (*See* Portigon Mot. at 2-3, 12-13.)

Petitioners' request should be denied because they have at their disposal at least three less intrusive means to satisfy their judgments.  *See Guardian Loan Co. v. Early*, 47 N.Y.2d 515, 519 (1979).  *First*, Petitioners could seek turnover in Brazilian courts and allow the jurisdiction with the greatest interest in the assets of the judgment debtors to determine its disposition.  In this manner, the Brazilian courts could fashion a remedy that does not threaten an uncontrolled default concerning high risk assets in their territorial waters.  Moreover, the Petitioners could seek to execute against assets that are outside of the Project at issue and not subject to the liens of the Senior Lenders.  As a Brazilian entity, a vast majority of Schahin Engenharia's assets and property unrelated to the Project likely are located in Brazil and thus subject to Brazilian jurisdiction.  *Second*, Petitioners could seek relief (including pre-hearing security) in the proceeding currently pending in the United Kingdom where certain of the Respondents here have asserted

counterclaims in excess of $200 million.  (*See* Portigon Mot. at 20 n.23.)  *Third*,

Petitioners could seek a contingent residual interest in the BDL and SDL Stock

Certificates.  In the April 30 Order, the Court declined to grant such relief only because

"CIMC was unable to make any representation as to how that interest should be valued."

(April 30 Order at 12-13.)  Petitioners need only establish the value of this residual

interest in order to obtain relief entitling them to some or all of the funds generated once

the Senior Lenders' loan is paid off.  Because the Senior Lenders' loan matures on the

BDL Vessel in December 2015, the entire Project would likely need to be refinanced at

that time.  If Petitioners are granted a residual interest in the Stock Certificates behind the

existing liens, any such refinancing involving those Stock Certificates would require

payment of Petitioners' judgment debt.  Thus, Petitioners would receive payment within

two and a half years (and be compensated by the accrual of post-judgment interest in the

interim).

        All of these alternatives would allow the continued operation of the

Vessels to preserve value both for the benefit of the Senior Lenders *and* Petitioners.  The

Senior Lenders, therefore, request that the Court deny Petitioners' fourth and fifth

requests for relief.  (*See* Second Enforcement Mot. at 3-4.)

    C.    **Portigon Joins Respondents' Opposition Insofar as It Requests
Payment of Onshore and Offshore Operating Expenses to Be Made to
Labor and Suppliers**

        Portigon joins Respondents' Opposition to the extent it seeks an order

from this Court permitting Portigon to pay *third-party* (*i.e.*, unaffiliated with the

judgment debtors) suppliers and labor for the operation of the Vessels from either the

Offshore or Onshore Project Accounts.  The Collateral Agreement expressly

contemplates and permits such payments directly to third-party service providers.  (*See*

Brenner Decl. Ex. A, Collateral Agreement §§ 4.08-4.09(b).)


Dated:  New York, New York                MILBANK, TWEED, HADLEY & MᶜCLOY LLP
        May 15, 2013

                                          By:   /s/ Daniel M. Perry
                                                Daniel M. Perry
                                                Rachel Penski Fissell
                                                1 Chase Manhattan Plaza
                                                New York, New York  10005
                                                (212) 530-5000
                                                *Attorneys for Portigon AG, New York Branch,*
                                                *Administrative Agent for the Senior Secured*
                                                *Lenders*

8