IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) PTE LTD., and YANTAI CIMC RAFFLES OFFSHORE LIMITED,<br><br>                    Petitioners,<br><br>- against -<br><br>SCHAHIN HOLDING S.A., SCHAHIN ENGENHARIA S.A., SEA BISCUIT INTERNATIONAL INC., BLACK GOLD DRILLING LLC, BAERFIELD DRILLING LLC, and SORATU DRILLING LLC,<br><br>                    Respondents. | Civil Action No.: 1:13-cv-00052-JSR<br>ECF Case<br><br>Hon. Jed S. Rakoff<br><br><br><u>**Oral Argument Requested**</u> |

## CIMC RAFFLES' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF ITS SECOND ENFORCEMENT MOTION, SEEKNG RELIEF SOLELY AGAINST SCHAHIN HOLDING S.A. AND SCHAHIN ENGENHARIA S.A.

**SCHULMAN BLACKWELL LLP**
Dan J. Schulman
Christopher A. Blackwell
11 Broadway, Suite 615
New York, New York 10004
Tel: (646) 688-5214
Fax: (646) 304-1117
Email: dschulman@schulmanblackwell.com

**DEBEVOISE & PLIMPTON LLP**
David W. Rivkin
Joseph P. Moodhe
Nwamaka G. Ejebe
919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
Email: dwrivkin@debevoise.com

*Co-counsel for Petitioners,
CIMC Raffles Offshore (Singapore) Pte. Ltd.
and Yantai CIMC Raffles Offshore Limited*

**TABLE OF CONTENTS**

Page

1. Neither Schahin Holding Nor Schahin Engenharia Opposes the Second Enforcement Motion; All Evidence Provides that Debtors Have Ample Assets to Pay the Judgments ................................................................................................ 1

2. Portigon's Limited Opposition Is Baseless and Contradictory .............................. 4

3. Schahin Entities and Portigon Seek to Violate the Court's April 30 Order, and to Commit a Fraudulent Conveyance in Violation of NY Debtor & Creditor Law § 276 ....................................................................................................................... 6

4. Portigon's Frivolous Arguments About Where CIMC Should Enforce Its Judgments .............................................................................................................. 7

5. Schahin's Remaining Arguments Are Meritless .................................................... 8

## **TABLE OF AUTHORITIES**

**CASES**

ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 928 N.Y.S.2d 647 (N.Y. 2011) .............7

Bonded Financial Services Inc. v. European American Bank, 838 F.2d 890 (7th Cir. 1989)..................................................................................................................................10

Broad v. DKP Corp., No. 97 Civ. 2029 (LAP), 1998 WL 516113 (S.D.N.Y. Aug. 19, 1998), aff'd, 182 F.3d 898 (2d Cir.1999) ...............................................................................2

FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125 (2d Cir. 1992).....................................10

Flushing Saving Bank v. Parr, 81 A.D.2d 655, 438 N.Y.S.2d 374 (2d Dep't 1981) ........................7

In Matter of Arbitration Between Karaha Bodas Co. LLP v. Bank of Indonesia, 2006 WL 565694, slip op (2d Cir. March 9, 2006), cert. denied, 549 U.S. 820 (2006)...........................10

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70 (2d Cir. 2002) ......................................................................................................6, 9, 10

Northpark Associates v. Westcon, Inc., 34 A.D.3d 773, 826 N.Y.S.2d 121 (2d Dep't 2006)....................................................................................................................................7

Rosenblatt v. City of New York, No. 05 Civ. 5521 (GEL), 2007 WL 2197835 (S.D.N.Y. July 31, 2007) .......................................................................................................................2

Tokio Marine & Fire Ins. Col. v. Rosner, No. 03 Civ. 5065 (RJD), 2007 WL 4373240 (E.D.N.Y. Dec. 10, 2007) ...................................................................................................3, 4

**STATUTES**

11 U.S.C. § 550(a)....................................................................................................................10

N.Y. CPLR 5225..................................................................................................................5, 6

N.Y. CPLR 5226.........................................................................................................................5

N.Y. CPLR 5227.....................................................................................................................5,6

N.Y. CPLR 5228.........................................................................................................................7

N.Y. Debtor & Creditor Law § 276..............................................................................................7

Petitioners CIMC Raffles Offshore (Singapore) Pte. Ltd. and Yantai CIMC Raffles Offshore Ltd. ("Petitioners" or "CIMC Raffles") respectfully submit this memorandum of law in further support of CIMC Raffles' motion to enforce the judgments rendered by this Court against Schahin Holding S.A. ("Schahin Holding") and Schahin Engenharia S.A. ("Schahin Engenharia") (the "Second Enforcement Motion"), and in reply to the Limited Opposition submitted by Portigon AG (joined by MS Drillship I S.A.), and the Opposition submitted by Schahin judgment debtors, other than Schahin Holding and Schahin Engenharia.

1. **Neither Schahin Holding Nor Schahin Engenharia Opposes the Second Enforcement Motion; All Evidence Provides that Debtors Have Ample Assets to Pay the Judgments**

Crucially, the Second Enforcement Motion is <u>unopposed</u> in its entirety by the only two parties against whom enforcement is sought: Schahin Holding and Schahin Engenharia.

Nowhere is there **any** claim that Schahin Holding lacks the ability to pay the SDNY Judgment, or to comply with the Second Enforcement Motion. There is a lot of speculation and argument about Schahin Engenharia, but all evidence demonstrates both that Schahin Engenharia has ample assets to pay the SDNY judgment, and that operating the vessels is but one part of Schahin Engenharia's substantial business.

In the moving papers, we noted that (i) Schahin has offered to make an immediate $12 million payment, and evidently has at least that amount of money readily available to pay; (ii) Fernando Schahin, CFO for all of the Schahin debtors, expressly testified that the Schahin entities have "ample" assets to pay the judgments and would pay them immediately;[1] and (iii) the

---

[1] The April 30, 2013 Memorandum Order in footnote three provides, in relevant part:
"The Court also notes that respondents have represented in New York State Supreme Court that '[i]f final judgments or awards are rendered against the Defendants, the Defendants of course will satisfy them,' and that they 'have substantial net worth and assets that are more than sufficient to pay any judgments that might be rendered against them.' Schulman Aff. Ex. A ¶ 14; see also CIMC Raffles v. Schahin Holding, No. 650850/2012 (N.Y. Sup. Ct.). To the extent that respondents induced that court's reliance on their representations, it would be inequitable to

audited financials for Schahin Engenharia demonstrate that it is a diversified $500 million company, with operations ranging from construction to oil and gas. (Schulman April 16, 2013 Decl. Ex. 4 at 6,14.)

Neither the banks nor the Schahin entities contest Mr. Schahin's testimony, or the audited financials for Schahin Engenharia. Nor do the banks or the Schahin entities provide updated audited financials -- or any financials at all that refute this evidence.[2]

Rather, the Schahin entities submit conclusory arguments by an employee who evidently works for Fernando Schahin: Mr. Gustavo Shinohara, Project Finance Director for Grupo Schahin. By also failing to contradict the record evidence, Mr. Shinohara tacitly admits that Schahin Engenharia and Schahin Holding have ample assets to pay the judgments off in full. Further, neither Mr. Shinohara nor any Schahin debtor ever says that Schahin Engenharia would stop operating the vessels if the operating expenses are paid to CIMC Raffles. See Rosenblatt v. City of New York, No. 05 Civ. 5521 (GEL), 2007 WL 2197835, at *7 (S.D.N.Y. July 31, 2007) ("[p]laintiff effectively concedes defendants' other arguments ... by her failure to respond to them"); Broad v. DKP Corp., No. 97 Civ. 2029 (LAP), 1998 WL 516113, at *3 (S.D.N.Y. Aug. 19, 1998) (explaining that plaintiff's "silence" or failure to respond to defendant's argument is a "tacit admission" thereof), aff'd, 182 F.3d 898 (2d Cir.1999).

Mr. Shinohara does complain that paying the operating expenses to CIMC Raffles "would cause extreme economic hardship" to Schahin Engenharia and "seriously threaten its ability to continue operating the vessels." (Shinohara Decl. at ¶ 9.) Paying your debts does tend to cause hardship when that is not your usual custom. All that this means, however, is that

---

allow them to avoid a restraint on their assets now under the theory that they will not have enough funds to continue to operate."

[2] The Credit Agreement obligates Black Gold to provide Portigon with updated financial information on a quarterly basis. (See Brenner Decl. Ex. B., Credit Agreement § 8.01.)

Schahin Engenharia wants to use the funds for other projects. Notably, Mr. Shinohara does not say Schahin Engenharia would STOP operating the vessels, or that it LACKS the assets to operate the vessels. (Id.) Mr. Shinohara simply asserts that operations may be threatened, without providing any specificity. These vague and groundless assertions should be rejected. Portigon's limited opposition is even less persuasive. It wholly fails to provide any evidence as to Schahin Engenharia's financial condition, and merely provides the same speculation that the Court previously rejected in its April 30 Order. (April 30, 2013 Order at 9-11.)

Certain Schahin entities (not joined by Schahin Engenharia) also argue that the Court should exercise its discretion not to order turnover of funds payable to Schahin Engenharia, relying on a magistrate's report and recommendation adopted by Judge Dearie, in which enforcement was denied because "enforcement of the judgment would divest a judgment creditor of a **sole source of income and means of repaying the judgment**." Tokio Marine & Fire Ins. Col. v. Rosner, No. 03 civ. 5065 (RJD), 2007 WL 4373240 at *4-5 (E.D.N.Y. Dec. 10, 2007) (emphasis supplied) (cited with approval in Schahin Memo at 9). The holding in Tokio Marine is wholly inapposite. First, the operating expenses that Schahin Engenharia, a $500 million company, earns are NOT its sole source of income and are NOT its sole means of repaying the judgment. To the contrary, they amount to a limited part of its business, as evidenced by Schahin Engenharia's audited financials. (Schulman April 16, 2013 Decl. Ex. 4, passim 6, 14, 22-46.) Similarly, Schahin's own website, as well as publicly available information, confirms that Schahin Engenharia is a very large and diversified company:

> Schahin Engenharia S.A. engages in engineering, real estate development, oil and gas, telecommunications, and energy businesses in Brazil. It offers engineering, procurement, and construction services for shopping malls, hospitals, business centers, educational centers, industrial buildings, housing developments, and civil and infrastructure projects; and engages in the implementation of power generation, transmission, and substation projects. The company also provides

concessions for power transmission systems; implements and manages wireline and wireless telephone systems, and transmission systems, including optical and radio links; and provides land and submarine optical network maintenance services in Brazil and abroad. In addition, it offers deep-water oil and gas well drilling and workover services; fleet monitoring services; and banking, brokerage, and financing services.[3]

As much as Schahin tries to squeeze this case into the facts of the Tokio Marine case, it does not fit. In Tokio Marine, the judgment creditor was attempting "to secure at most $400 … [by] completely shut[ting] down defendant's practice … which earns her approximately $200,000 per year." No such considerations exist here: CIMC Raffles has a $71 million judgment; CIMC Raffles is seeking to seize unencumbered cash; and CIMC Raffles neither has the intent nor the ability to put Schahin Engenharia out of business.

In short, all evidence establishes that Schahin Engenharia has ample funds to pay this Court's judgments. Since Schahin Holding and Schahin Engenharia do not contest the Second Enforcement Motion, the sought-after relief should be granted.

## 2. Portigon's Limited Opposition Is Baseless and Contradictory

Portigon's Limited Opposition does not oppose the first three (of the five) requests for relief in the Second Enforcement Motion:

- Request No.1, that Schahin Holding and Schahin Engenharia both be <u>generally</u> required to bring in money into New York to pay the SDNY Judgments against them, pursuant to CPLR 5225; and

- Requests Nos. 2 and 3, that Schahin Engenharia be <u>specifically</u> required, pursuant to CPLR 5225 and CPLR 5226, to direct that all installment payments for Offshore operating expenses for operating (a) the SS Amazonia and SS Pantanal and (b) the Vitoria 10,000 and the SC Lancer, be made to CIMC Raffles, pursuant to CPLR 5225

---

[3] Blooomberg Businessweek, http://investing.businessweek.com/research/stocks/private/snapshot.asp?privcapId=5638298; See also http://www.schahin.com.br/en/fields-of-activity/engenharia-2/assista-ao-video-engenharia-2 (Schahin Engenharia builds commercial office buildings, hospitals, power stations, housing developments, infrastructure, power, logistics, is involved in a major development of Amazon, built the Petrobras research center in Rio de Janeiro, is building a 5 mile long gas pipeline, and also operates vessels).

and 5226, and that Deutsche Bank Americas turn over those funds directly to CIMC Raffles, pursuant to CPLR 5227.

Inconsistently, however, Portigon opposes:

- Request No. 4, that Schahin Engenharia be <u>specifically</u> required, pursuant to CPLR 5225 and CPLR 5226, to direct that all installment payments for Onshore operating expenses for operating the four vessels be made to CIMC Raffles; and

- Request No. 5, that Schahin Engenharia be <u>specifically</u> required, pursuant to CPLR 5225 and CPLR 5226, to direct banks to pay all funds to CIMC Raffles that are not subject to a senior security interest of lenders.

The Court has already ruled that it has uncontested authority pursuant to CPLR 5225(b) to issue a general directive to a judgment debtor (over which it has personal jurisdiction) to bring funds into New York.  Portigon does not oppose this relief (Request No. 1).  Since it is uncontested that the Court has the right to issue a general directive to Schahin Engenharia to bring funds into New York; <u>a</u> <u>fortiori</u>, the Court can issue a specific directive to Schahin Engenharia as to which funds should be brought into New York.

Indeed, Portigon does not oppose the specific relief sought in Requests Nos. 2 and 3, directing Schahin Engenharia to tell its banks to pay CIMC Raffles funds allocated in the Offshore Accounts for operating expenses.  Yet Portigon argues that Request No. 4 is improper because the Court cannot issue a directive to a bank in Brazil.

This is of course a "straw man" argument: Portigon opposes relief that CIMC Raffles has never sought.  Petitioners are seeking an Order to be issued to Schahin Engenharia for it to instruct its banks, <u>not</u> for the Court to issue a turnover order to a Brazilian bank, as Portigon claims.  (Portigon Memo at 3.)  Indeed, the Second Circuit case relied on by Schahin, <u>Karaha</u>, specifically provides that a money judgment may be enforced against property which could be assigned or transferred by the judgment debtor.  (<u>See</u> Schahin Memo at 12, citing

Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara, 313 F.3d 70, 93 (2d Cir. 2002).)

Portigon next argues that CIMC Raffles "fail[ed] to move under CPLR 5225(b) against the Brazilian Collateral Agent." (Portigon Memo at 4; see also Schahin Memo at fn 4.) That at least is true: CIMC Raffles did not move (and has no obligation to move) pursuant to CPLR 5225(b) against Deutsche Bank Brazil. CIMC Raffles chose to move pursuant to CPLR 5225(a) against judgment debtors directly, precisely because it is not disputed and the Court already ruled that the Court has personal jurisdiction over the debtors. Article 52 of the CPLR includes 53 numbered sections, and multiple subsections, any and all of which can be used by a judgment creditor seeking to be paid. A judgment creditor has discretion to select which remedies it chooses to pursue; a judgment creditor is not required to move under all provisions of the CPLR simultaneously.

Thus far, CIMC Raffles has elected to use portions of only three CPLR sections (CPLR 5225-5227); in the future, if judgment debtors continue to fail to comply with this Court's Orders, CIMC Raffles may seek relief under other sections, such as CPLR 5228[4] or the Court's contempt powers. Just as CIMC Raffles has not sought a receiver (or a contempt motion) as of yet, CIMC Raffles has not sought relief against Deutsche Bank Brazil.

3. **Schahin Entities and Portigon Seek to Violate the Court's April 30 Order, and to Commit a Fraudulent Conveyance in Violation of NY Debtor & Creditor Law § 276**

Schahin debtors, joined by Portigon, suggest that Portigon could pay third-parties directly the operating expenses using the funds in accounts it administers, which have always been paid to Schahin Engenharia. (Schahin Memo at 9-10; Portigon Memo at 7-8; cf. Schulman

---

[4] CPLR 5228 allows for appointment of a post-judgment receiver "to administer, collect … or sell any real or personal property in which the judgment debtor has an interest or to do any other acts designed to satisfy the judgment."

- 6 -

Reply Decl., Exs. A & B.)  The suggestion is in direct violation of the Court's April 30 Order, which specifically provides that CIMC Raffles is entitled to restrain and execute on the Offshore operating expense accounts. (See April 30, 2013 Order at 8.)  The suggestion is also in direct and flagrant violation of the Uniform Fraudulent Transfer Act, which provides, in relevant part, that "Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors."  NY Debtor & Creditor Law § 276; see Flushing Saving Bank v. Parr, 81 A.D.2d 655, 438 N.Y.S.2d 374 (2d Dep't 1981) (conveyance of property to make it difficult for creditors to reach, comes within meaning of "hinder" and "delay," and is illegal as a fraudulent conveyance); Northpark Associates v. Westcon, Inc., 34 A.D.3d 773, 826 N.Y.S.2d 121 (2d Dep't 2006) (fraudulent intent inferable from circumstances of the transfer); ABN AMRO Bank, N.V. v. MBIA Inc., 17 N.Y.3d 208, 928 N.Y.S.2d 647 (N.Y. 2011) (cause of action stated based on allegations in pleadings that transactions were intended to prevent creditors from recovering on their claims).  The project finance agreements require that revenues from the charter of the Amazonia and Pantanal be deposited with Portigon and used, among other things, to reimburse Schahin Engenharia its operating expenses.

4. **Portigon's Frivolous Arguments About Where CIMC Should Enforce Its Judgments**

Portigon's suggestions as to how CIMC Raffles should proceed are frivolous:

• Portigon suggests that CIMC Raffles should seek turnover in Brazil -- even though the arbitration award and the judgments were issued in New York, under agreements controlled by New York law.  The Court already rejected this argument.  (See April 30, 2013 Order at 11-12.)

• Portigon suggests that CIMC Raffles seek "pre-hearing security" in the UK.  CIMC Raffles is looking to be paid, not to get security.  And any such security presumably would only

be for prospective UK judgments, which are separate and additional to the approximately $71 million owed in New York. (CIMC Raffles is owed $219 million plus interest by Schahin.)

- Portigon suggests that CIMC Raffles "could seek to execute assets that are outside the Project at issue and not subject to the liens of the Senior Lenders."[5] (Portigon Memo at 6.)  This is just silly.  As Portigon (and every banking lawyer) well knows, a judgment creditor has every right to seize judgment debtors' assets, whether or not the assets have anything to do with the particular debt, so long as the funds being seized are not subject to a senior lien.  CIMC Raffles is seeking to seize the operating expenses precisely because, as the Court as already ruled, they are not subject to the lenders' security interests.  (April 30 Order at 8, citing to Brenner Decl. Ex. A, Collateral Agreement at § 3.07.)

## 5. Schahin's Remaining Arguments Are Meritless

The remainder of the Opposition papers filed by the appearing Schahin debtors contains other transparent attempts to delay and avoid paying their debts. Schahin argues that the other two vessels have different mechanisms for payment of operating expenses. (Schahin Memo at 10.)  Tellingly, however, the lenders on these other projects have not appeared, and there is no claim that they have a security interest in those operating expenses.  Moreover, Schahin wholly fails to advise the Court how those operating expenses are paid to Schahin Engenharia, and fails to annex the financing documents. (Schahin Memo at 10-12; cf. Shinohara Declaration.)  These thoroughly unsupported assertions should be ignored.

Schahin's final argument is that Schahin Engenharia purportedly "does not have an interest in the operating expenses because it receives them as a conduit and immediately

---

[5] Similarly, the Schahin memorandum argues that "[b]y seeking the turnover of operating expenses, CIMC is seeking to interfere with the prior perfected security interests of senior lenders, even for projects that have no connection to the underlying dispute between the parties." (Schahin Memo at 3.)

disburses the funds to pay salaries, wages, insurance costs, electricity, and equipment suppliers." (Schahin Memo at 8, see id. at 12.)  That Schahin Engenharia uses income to pay its expenses does not excuse it from paying its judgment debt.  Schahin's argument is predicated on a citation to Karaha.  Karaha involved a dispute as to whether the Indonesian government, or the judgment debtor Pertamina, owned funds that were in certain New York bank accounts held in the name of Pertamina.  See Karaha, 313 F.3d at 75.  Initially, it appeared that the Indonesian government might actually be the owner of 95% of those funds.  The Second Circuit held that, if funds were held at a bank in the name of an entity, the presumption is that the named accountholder was the owner, which might be rebutted by evidence that the funds were being held "in the manner of a trustee."  Karaha, 313 F.3d at 86.

In subsequent proceedings in Karaha, the courts found that the presumption had NOT been rebutted, and the bank was ordered to pay the judgment creditor from Pertamina's bank accounts.  See In Matter of Arbitration Between Karaha Bodas Co. LLP v. Bank of Indonesia, 2006 WL 565694, slip op (2d Cir. March 9, 2006), cert. denied, 549 U.S. 820 (2006).  Schahin is not a "trustee," and wholly fails to address what it means by "conduit." [6]  Karaha thus provides no support for Schahin's position.

---

[6]There is a judicially-crafted "conduit theory" that may be a defense to a bankruptcy claim of fraudulent transfers under 11 U.S.C. § 550(a).  E.g., FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125, 131 (2d Cir. 1992).  The courts consistently have held, however, that a party cannot claim to be a "mere conduit" if the party has "dominion" or "control" over the funds.  Put another way, money is fungible.  Schahin Engenharia can use the operating funds or any other funds, to pay its employees and to pay suppliers.  If it chooses, Schahin Engenharia could, in the inimitable phrase of the Seventh Circuit, use the operating funds to purchase "lottery tickets or uranium stock."  Bonded Financial Services Inc. v. European American Bank, 838 F.2d 890, 893 (7th Cir. 1989).  A mere contractual obligation does not divest Schahin Engenharia of dominion and control over the funds.  Indeed, if it did, we would not be here today: under the Shipbuilding Contracts, Schahin promised to pay its debts to CIMC Raffles from the vessels' operating expenses.  It never did.

**Conclusion**

In conclusion, the Court should grant all of the relief sought in the Second Enforcement Motion, all of which is sought solely as against Schahin Engenharia and Schahin Holding, and neither of those two entities offer any objection to the relief sought.

Dated: New York, New York
      May 21, 2013

                **SCHULMAN BLACKWELL LLP**

By: _____
    Dan J. Schulman
    Christopher A. Blackwell
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Pte. Ltd.*
*and Yantai CIMC Raffles Offshore Limited*
11 Broadway, Suite 615
New York, New York 10004
Tel: (646) 688-5214
Fax: (646) 304-1117
Email: dschulman@schulmanblackwell.com

**DEBEVOISE & PLIMPTON LLP**
David W. Rivkin
Joseph P. Moodhe
Nwamaka G. Ejebe
*Co-counsel for Petitioners*
*CIMC Raffles Offshore (Singapore) Pte. Ltd.*
*and Yantai CIMC Raffles Offshore Limited*
 919 Third Avenue
New York, New York 10022
Tel: (212) 909-6000
Fax: (212) 909-6836
Email: dwrivkin@debevoise.com