D4TTCMCA - CORRECTED

1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    --------------------------------x

3    CIMC RAFFLES OFFSHORE (SINGAPORE)
     LIMITED and YANTAI CIMC RAFFLES
4    OFFSHORE LIMITED,

5                    Petitioners,

6           v.                                13 CV 52 (JSR)

7    SCHAHIN HOLDING S.A., SCHAHIN
     ENGENHARIA S.A., SEA BISCUIT
8    INTERNATIONAL INC., BLACK GOLD
     DRILLING LLC, BAERFIELD
9    DRILLING LLC, and SORATU
     DRILLING LLC,
10
                     Respondents.
11
     --------------------------------x
12                                           April 29, 2013
                                             4:00 p.m.
13
     Before:
14
                         HON. JED S. RAKOFF,
15
                                             District Judge
16

17                       APPEARANCES

18   DEBEVOISE & PLIMPTON
          Attorneys for Petitioner
19   BY:  JOSEPH P. MOODHE
          NWAMAKA G. EJEBE
20
     SCHULMAN BLACKWELL
21        Attorneys for Petitioner
     BY:  DAN J. SCHULMAN
22
     MILBANK TWEED HADLEY & MCCLOY, LLP
23        Attorneys for Portigon, AG, New York Branch
     BY:  RACHEL PENSKI FISSELL
24

25

D4TTCMCA – CORRECTED

1                                APPEARANCES

2  SHEARMAN & STERLING, LLP
        Attorneys for Interested party MS Drillship I, S.A.
3  BY:  WILLIAM J.F. ROLL, III

4  LINKLATERS
        Attorneys for Respondents Black Gold Drilling, Baerfield
5        Drilling and Soratu Drilling
   BY:  PATRICK ASHBY
6
   SEWARD & KISSEL
7        Attorneys for Deutsche Bank Trust Company America
   BY:  DALE C. CHRISTENSEN, JR.
8        ROSS HOOPER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

D4TTCMCA - CORRECTED

1          (In open court, case called)

2          MR. SCHULMAN:  Dan Schulman, Schulman Blackwell for

3     petitioners CIMC RAffles.  Together on my right are Joe Moodhe

4     and Nwamaka Ejebe of Debevoise.

5          MR. ASHBY:  Good afternoon, your Honor, Patrick Ashby

6     with Linklaters on behalf of respondents Black Gold, Baerfield

7     Drilling, LLC and Soratu Drilling LLC, in addition on behalf of

8     interested third parties Airosauru Drilling, LLC, Dleif

9     Drilling, LLC, Turasoria, SA, LLC, Deep Black Drilling, LLC,

10    and Schahin Petroleum & Gas, SA.

11         THE COURT:  Glad you have something to read that list

12    from.

13         MS. PENSKI FISSELL:  Rachel Penski Fissell from

14    Milbank on behalf of interested party Portigon AG, New York

15    Branch as administrative agent for the senior secured lenders.

16         MR. ROLL:  Good afternoon, your Honor, William Roll of

17    Shearman & Sterling for MS Drillship I, SA, which is a

18    subordinated secured lender.

19         MR. CHRISTENSEN:  Dale Christensen, Seward & Kissel,

20    counsel for Deutsche Bank Trust Company.

21         THE COURT:  Thank you for being here.

22         So on April 18 this Court heard argument regarding the

23    various relief sought by petitioners and various objections

24    from interested third parties.  And because petitioner's

25    counsel had indicated some frustration with the amount of time

D4TTCMCA – CORRECTED

1    that petitioners have sought to make good on their judgments,

2    the Court indicated that it would decide this dispute by the

3    end of the month, namely tomorrow.

4            But that apparently wasn't good enough for

5    Mr. Schulman, who went ahead last Thursday and filed a bunch of

6    new restraining orders and, according at least to his

7    adversary, refused to advise Deutsche Bank as to the scope of

8    those restraining orders, forcing them, as a protective

9    measure, to take a broad view of them, thus placing --

10   according to the objectors, placing in jeopardy certain

11   Waterfall payments that are due to take place tomorrow.

12           I am sure Mr. Schulman has an explanation for this,

13   because on its face it looks very unfortunate.

14           MR. SCHULMAN:  Your Honor --

15           THE COURT:  Yes.

16           MR. SCHULMAN:  On April 4th, not April 18th

17   restraining notices were served on Deutsche Bank.  That

18   restraining notice is annexed to the CMIC's papers and annexed

19   to our papers.  It's our Exhibit B, I believe, and it's an

20   exhibit to Schahin's papers.  This restraining notice, signed

21   by co-counsel, the other restraining notice was signed by me,

22   simply restrains assets in which judgment debtors hold an

23   interest.

24           THE COURT:  Well, Linklaters, for example, in their

25   letter of April 26 says that Deutsche Bank's counsel informed

D4TTCMCA - CORRECTED

```
1   us that Deutsche Bank would continue to block accounts of

2   entities other than the respondents unless and until it

3   received either a clarification of the scope of the restraining

4   notice from your client, CIMC, or else upon an order of the

5   Court.  So did you give them that clarification?

6           MR. SCHULMAN:  Absolutely, your Honor.

7           THE COURT:  When?

8           MR. SCHULMAN:  We had a discussion with Mr. --

9           THE COURT:  When?

10          MR. SCHULMAN:  The very next day, it was Thursday and

11  then Friday, the 24th and 25th.  So we --

12          THE COURT:  This is dated April 26, this letter to me.

13          MR. SCHULMAN:  Correct, it was April 26th that we

14  spoke with them.

15          On April 25th we got a call and we got a letter saying

16  that this restraining notice, which is Exhibit A to Schahin's

17  papers, this April 4th restraining notice, Deutsche Bank claims

18  that this -- they think it's vague.

19          Your Honor, the restraining notice is very clear, it

20  quotes the exact language of CPLR 5222(b), it says you are

21  forbidden any sale or interference with any property in which

22  Black Gold, BDL or SDL has an interest.  It doesn't talk about

23  any other entity.

24          We got a call from Mr. Ashby.  Mr. Moodhe, to my

25  right, said to Mr. Ashby this restraining notice is solely as
```

D4TTCMCA - CORRECTED

1    to those three entities.  We don't know if these three entities

2    control any other accounts at Deutsche Bank.  However, Deutsche

3    Bank asked us in our restraining notice -- it references 40

4    bank accounts, we were asked by Deutsche Bank what are the 40

5    bank accounts that you know about, approximately 40.  And we

6    wrote back, annexed to our papers, here's the list of the 40

7    bank account numbers that we know about.  These were BDL, Black

8    Gold and SDL account numbers.  Mr. Ashby said to us, you are

9    clearly not trying to restraining anything else.  And our

10   response is unless Black Gold, BDL or SDL control those

11   accounts --

12            THE COURT:  How would Deutsche Bank know?

13            MR. SCHULMAN:  Because they're their banker and they

14   are the banker not only for this transaction --

15            THE COURT:  Do you know which those are?

16            MR. SCHULMAN:  We have no idea.

17            THE COURT:  So you're saying your restraining order

18   imposed on them some sort of investigative requirement?

19            MR. SCHULMAN:  Your Honor, as I understand, CPLR

20   5222(b), if they know or have reason to believe that judgment

21   debtors own or control these accounts, and they can know that

22   they might control it either because they have issued

23   instructions about it or they received funds from it or what

24   have you that, that constitutes a restraint.  We would have no

25   idea whether that was the case.

D4TTCMCA - CORRECTED

1          So Mr. Moodhe said to Mr. Ashby we're happy to tell

2     Deutsche Bank's counsel that, as far as we're concerned, this

3     relates to the three judgment debtors, and if there are other

4     accounts in which they have control, we don't know anything

5     about it.  We don't know of any other accounts of which these

6     judgment debtors have control.  That's what we say in our

7     letter.

8          Mr. Ashby said fine, let's call Deutsche Bank's

9     counsel.  We called Mr. Deutsche Bank's counsel,

10    Mr. Christensen, who was not satisfied with that.

11         Our response is we have not taken discovery, we don't

12    know what control, if any, BDL, SDL, and Black Gold have over

13    these other accounts.  We don't know they restrained them.

14    This is a motion seeking clarification of an April 4th

15    restraining notice.  It's not April 18th, it was an April 4th

16    restraining notice.  We have no idea why Deutsche Bank

17    restrained these other accounts.

18         Now we have speculation.  Our speculation is either

19    Deutsche Bank has information that these accounts have been

20    controlled by Black Gold, BDL and SDL, or maybe Deutsche Bank

21    has chosen, since they know of these other judgments, that

22    they're restraining these accounts because these other entities

23    make payments to Schahin Engenharia, several of them do, but we

24    don't know why it was done.

25         So your Honor --

D4TTCMCA - CORRECTED

1          THE COURT:  I hear what you're saying.  Let me hear

2     from counsel for Deutsche Bank.

3          MR. CHRISTENSEN:  Your Honor, is this an appropriate

4     place for me to speak from?

5          THE COURT:  That's fine.

6          MR. CHRISTENSEN:  When we were confronted with the

7     notice restraining these accounts of the judgment debtor, we

8     were concerned, and I have to say concerned about what we

9     thought was the scope and the possible reach of those.  And we

10    indicated to both counsel for the judgment debtors and counsel

11    for creditors that we were going to err on the side of caution

12    in terms of restraining these accounts.

13         We urged them, frankly, to see if they could help us

14    make some definitions as to what would be appropriate in terms

15    of enforcement of the judgment, and --

16         THE COURT:  Well, they're saying that they told you

17    that there were certain specified entities and that's all they

18    were seeking to restrain except there were accounts controlled

19    by those entities, and they wouldn't know that but you would,

20    as I understand petitioner's counsel to say.

21         MR. CHRISTENSEN:  We certainly know what accounts are

22    denominated in the names of the judgment debtors.  And I may

23    not have the exact correct amount, I think there's about 18

24    million in those accounts.

25         In terms of the interrelationship of these judgment

D4TTCMCA - CORRECTED

1   debtors with any of the other entities that Mr. Schahin may be

2   involved in, and there's many, many of these, that from our

3   perspective, as laid out in Mr. Ashby's papers, have no direct

4   relationship to the project financing here, but we don't know

5   what the relationship may be in terms of any interest in these

6   accounts, which is what I think the reference to the CPLR

7   5222(b) causes some pause.

8          So we asked to see some clarification of this,

9   frankly, the submission of papers on this.  We understood also,

10   as your Honor indicated at the outset, that your Honor was

11   prepared to rule by the end of the month on this.  We thought

12   that would give some clarity to the situation.  But frankly, we

13   were not able to get any kind of movement from the judgment

14   creditors on allowing any assets that may be related to

15   Mr. Schahin but may or may not be related to these judgment

16   debtors to be released or dispensed with.  So that was our

17   predicament.

18          We are trying to educate ourselves as time goes on,

19   including by the submissions that the parties have made, both

20   of whom, particularly the judgment debtors, know a lot more

21   about these transactions than we do.  And that's about all I

22   could say.  We erred on the side of caution.  We did not want

23   to get involved in some kind of dispute between these parties,

24   but we obviously are here and are now involved.

25          So that's about all I could say.

D4TTCMCA – CORRECTED

1          THE COURT:  Well, it's a pleasure to have you here.

2          Let me hear from counsel for the third parties and

3     then we'll come back to petitioner's counsel.

4          MR. ASHBY:  Good afternoon, your Honor.  I think I

5     could be relatively brief because the issues have pretty much

6     been tee'd up already.

7          I guess the one thing I might add is I take a bit of

8     umbrage with the suggestion from Mr. Schulman that he is

9     somehow an innocent party standing by and we should be taking

10    this up with our bank.  In particular I learned for the first

11    time from their submission, which is attached to it as

12    Exhibit D, private correspondence that Mr. Schulman was having

13    with in-house counsel at Deutsche Bank.  It seems from the

14    email that was exerpted here that Deutsche Bank was seeking

15    clarification as to what exactly these approximately 40

16    accounts were.  Mr. Schulman responded, it appears, with the

17    account numbers for the entities, Black Gold, BDL and SDL.

18         But then Mr. Schulman goes further, and you will see

19    that he adds in here, and I quote, that these are other things

20    that Deutsche Bank should know about, quote, unquote, and as

21    lead bank for three facility agreements involving Casablanca

22    International, also two credit agreements involving Black Gold

23    Drilling, agent bank for project finance transactions for Deep

24    Black Drilling.  I think what this email shows, your Honor, is

25    that Mr. Schulman actually injects into the conversation with

D4TTCMCA - CORRECTED

Deutsche Bank entities that he had no good faith basis to

believe that were related to BDL or SDL, namely Casablanca and

Deep Black Drilling.

So I think this is part and parcel of what has been

happening on CIMC's side to overall muddy the waters, make

Deutsche Bank feel uncomfortable, and therefore encumber far

more assets than it should be encumbering.  And that's why we

have came before your Honor today to seek clarification.

THE COURT:  Well, of course you will get my ruling

tomorrow.  What strikes me about this little subset of a

dispute is precisely what has bothered me about this matter

from day one.  On the one hand, the petitioners seem intent on

attaching everything in sight without much basis beyond

speculation in certain instances.  On the other hand, your

client and the clients in the other third parties keep waving

the argument of the world is going to come to an end because

the ships won't sail at all like that, an argument that seems

to be raised at every opportunity, such as the proverbial

bloody shirt was waved after the civil war.  I don't find, to

be candid, either side's argument particularly persuasive, but

let me hear from Mr. Schulman.

MR. SCHULMAN:  Your Honor, there's $70.7 million

judgment from your Honor.  As far as I can tell, we haven't

seized anything yet.

THE COURT:  Well, your adversary says -- counsel for

D4TTCMCA – CORRECTED

1   Deutsche Bank says you've got at a minimum 18 million.

2         MR. SCHULMAN:  I believe that 18 million is all

3   money -- and I'm sure defense counsel is going to say that that

4   is all money that goes to the senior lender.  I don't know, but

5   it seems a fair -- assuming they did their job right, that

6   would normally be the conclusion.

7         We don't have a single penny.  All we have is the

8   possibility of seizing funds that expressly go outside the

9   security agreement.  The security agreements, the collateral

10  agreement says I think 3.07, that if monies are paid to

11  somebody other than an obligor, that would be Schahin

12  Engenharia or Schahin Holding, that those funds no longer have

13  any security interest.

14        In terms of this, we served on its face, I can read

15  it, it's one paragraph, on April 4th, the restraining notice,

16  for BDL, SDL, Black Gold, saying these are the three entities.

17  Now that Exhibit 4 -- Exhibit D has the same reference.

18        THE COURT:  So the difficulty is this, in as near as I

19  can tell, from the little bit before this Court, Mr. Schahin

20  has one of these very complicated set of companies in which he

21  is, to one extent or another, involved.

22        Indeed, a cynic might draw the inference by the sheer

23  proliferation of identities involved that he was trying to

24  create a situation where he could evade judgment creditors.

25  But on the other hand, that may be very unfair, it may be more

D4TTCMCA - CORRECTED

1   a function of the way his business operates in its various

2   manifestations.

3          But while you're not in a position to know at this

4   stage whether the particular entities against which you hold

5   judgments are controlled or simply you have some relationship

6   to other entities or no relationship at all, is not clear to me

7   that Deutsche Bank is in a position to know that either.

8          MR. SCHULMAN:  Your Honor, I didn't mean to interrupt.

9          THE COURT:  Go ahead.

10          MR. SCHULMAN:  Deutsche Bank apparently is the banker

11   on the Deep Black project finance deals which involves the

12   Turasoria 10,000.  The Turasoria 10,000, by the way, is

13   operated by Schahin Engenharia and is paid operating expenses,

14   we presume.  It's the depository bank or otherwise has some

15   involvement with Dleif Drilling, we're told another Schahin

16   entity.  They're the banker there.  They're the banker relating

17   to Black Salt Drilling.  They're the bank for all of these

18   various Schahin entities in some capacity or another, we don't

19   know what capacity.

20          So when we were asked -- on December 4th Debevoise

21   served Deutsche Bank with a restraining notice, got back the

22   letter from Shelby Stern at Deutsche Bank -- a call actually,

23   too, saying:  Can you tell us what the account numbers are.

24   Because you mentioned in there BDL, SDL and Black Gold and

25   there's about 40 account numbers.  We said there's

D4TTCMCA - CORRECTED

1    approximately 40 account numbers that we're aware of.

2            So we wrote back, and the email is very clear, I

3    happened to write it, and I said here's the account numbers we

4    know about.  And the reason I wrote is because I wasn't allowed

5    to give it to Debevoise because it was attorneys' eyes only and

6    I didn't want attorneys in the state court to see it.

7            I was very careful.  I didn't want accounts that

8    Deutsche Bank knew were controlled by these other entities and

9    how would they know that?  Because they get directions:  Pay

10   money from this account to Black Gold, pay money to BDL.  I

11   don't know if that's happening or not.  Deutsche Bank knows for

12   sure.  They're that bank.

13           Your Honor, let me step back for a second literally

14   and figuratively.  There's a million and a half cases filed in

15   the state court in New York, civil cases, four and a half

16   million total cases every year.  About 50,000 go to judgment.

17   And there's probably who knows, 300, 700,000 restraining

18   notices served every year.  Isn't it curious that counsel here

19   couldn't find cases in which it's absolutely clear, restraining

20   notice which said to these three entities.  There's almost no

21   cases on it?  Why?  Banks know how to look at these things.

22   They look at the accounts.  Whose name is there, first thing.

23   And I will confess I spent eight years at the Bank of New York,

24   so I actually had some responsibilities in that regard.  Whose

25   name is it in?  Two, big enough, they might want to look at the

D4TTCMCA — CORRECTED

1    accounts a little more carefully.  Does anyone have control?

2    Is BDL saying pay me every month from that account?  How do we

3    know that?  Not hard to figure out, especially when all the

4    money is in New York at least, can be wired to Brazil.

5            So control.  Are you using the accounts?  Do you

6    control the accounts?  Really easy to do that as a bank.  They

7    have lots of computers and do this for a living.  Banks never

8    complained to have a problem.  Not once, not once in all that

9    muck that is being thrown at us saying we did something wrong

10   is there a single word in this restraining notice that is said

11   to be incorrect, invalid, improper or unclear.  It's basically

12   four lines long.  We think you have property, we know you have

13   about 40 bank accounts.  Any property that these three entities

14   own are restrained, and we quoted -- co-counsel quoted 5222(b).

15           It seems to me that is this is really kind of the

16   chutzpah.  You have an entity which owes the money, says we

17   have the money, lift the $40 million restraint on these

18   accounts because we're going to pay it, and then they go ahead

19   and say oh, you shouldn't have served a restraining notice.

20   Your Honor, why can't you serve a restraining notice on

21   April 4th, as it happened, dated April 3, and that's what is

22   annexed to their papers, and where in this restraining notice

23   is it anywhere unclear?  How would we know?  We don't have

24   discovery.  This case is all over the place.  No, you don't

25   have it put the account number, that's not your requirement as

D4TTCMCA - CORRECTED

1      the judgment creditor.  Who would know?  Judgment debtor has a

2      relationship with this bank.  That's not our problem.

3                THE COURT:  Excuse me.

4                MR. SCHULMAN:  Sorry, your Honor.

5                THE COURT:  I understand your point, although I think

6      this is probably the first time in history that Deutsche Bank

7      has been accused of chutzpah.

8                In any event, let me hear from counsel from Deutsche

9      Bank again.

10               MR. CHRISTENSEN:  Your Honor, I just want to put some

11     clarity on one point that's been suggested by counsel for the

12     judgment creditors here, and that is speaking of Deutsche Bank

13     as a single entity.

14               The entity that was served with the restraining notice

15     that is at issue is Deutsche Bank Trust Company of America,

16     which is located here.  They have banks that are separate

17     throughout the world.  There is a separate Deutsche Bank entity

18     in Brazil that is involved with this.  We have tried to reach

19     out to err, as I said, on the side of caution at the outset of

20     this while we're trying to learn what the situation is both

21     internally and also from the benefit of the exchange of

22     submissions by the different parties as to what the legal

23     rights of the different parties are with respect to these

24     accounts.  That's all that we have done.

25               We have been criticized for erring too broadly on this

D4TTCMCA - CORRECTED

```
 1    and putting some problems with some of the project finance

 2    deals that do not relate to the judgment debtors, but we are

 3    not currently in the position to know with any kind of

 4    certainty that these are accounts that don't have any

 5    possession or custody interest of any of the Schahin entities

 6    that are judgment debtors here.  It's just not something that

 7    we can do at this point in time.  So we erred on the side of

 8    caution, and that's all I could say.  But I do want to make the

 9    point that when we speak loosely of Deutsche Bank, it's a major

10    corporation with a lot of different separate corporate

11    entities, and some of those entities are applicable here.

12              THE COURT:  Does any other counsel want to be heard?

13              MS. PENSKI FISSELL:  Very briefly.

14         So I just want it clarify that the $18 million that

15    was referenced in the accounts that are restrained, those are

16    accounts that my clients have a superior security interest in,

17    and so --

18              THE COURT:  So you should be delighted they're being

19    tied up.  They're doing your job for them.

20              MS. PENSKI FISSELL:  Well, I think it goes to the

21    letter we sent on Saturday night that these restraining notices

22    are -- now since we were before you on April 18, they have now

23    served not only the administrative agent but also started

24    serving the senior lenders.  We're aware of at least four

25    restraining letters on senior lenders individually.  And
```

D4TTCMCA - CORRECTED

there's a lot of complex legal and factual questions that arise

from these restraining notices, including whether the issue of

control alone of an account is sufficient to make a restraining

notice effective.  And we just think all of these restraining

notices piling on, it's best to just vacate them and proceed

more slowly with discovery and a more orderly process to

prevent all the chaos.

          THE COURT:  Well, of course none of these entities

whose accounts are being restrained has chosen to appear and

object.  You're objecting because you have got a third party

interest, and I appreciate that.  You certainly have standing,

no one questions that, but it is notable that the people who

would have the most knowledge and the most direct interest

have, throughout this litigation, chosen not to appear, at

least for any meaningful purpose.  So default judgments have

been entered and so forth, I don't mean to overstate, there has

been some modest appearance, but the normal way, if someone was

wrongly restrained, the normal person would come in and say

stop it.  This is a person whose account was restrained.

They're not doing that.

          I see, and I am glad that Mr. Schulman clarified for

me, the fact that these were actually -- these notices were

served, as I understand, on April 4th, and I had been under a

misconception that they were served much more recently.  But

here it is now April 29th and they haven't appeared and said

D4TTCMCA - CORRECTED

1   please, we have nothing to do with the entities against whom

2   the judgments have been imposed, please lift the restraint.

3          And you're not in a position to know better either.

4   You're hypothesizing, just as plaintiff's counsel is, but in

5   the opposite direction.  You're hypothesizing that there's no

6   connection.  He's saying in effect well, there might be, so we

7   leave it to the bank to figure it out.  No one here has

8   knowledge.  Conceivably Deutsche Bank has some knowledge, but

9   the persons who have knowledge for sure are the entities who

10  have chosen not to appear.

11         MS. PENSKI FISSELL:  My only point is third parties

12  are getting harmed.  Currently accounts that are used to pay

13  principal and interest payments to our clients are being tied

14  up and frozen right now.  And potentially, depending on the

15  outcome of this, additional projects with other third party

16  secured lenders, their principal and interest payments will be

17  tied up.

18         THE COURT:  Unless I have misunderstood, the extent --

19  no one is making a claim that any of this money that's being

20  tied up that is your money should be paid to anyone but you.

21  Your fear has been that the net result of all this will be that

22  the underlying operations will cease and there will be no more

23  waterfalls.  And I have to say I'm a little skeptical of that.

24  It hasn't happened yet.  It is a nice -- I mean the judgment

25  debtors must be licking their chops, so to speak, because they

D4TTCMCA - CORRECTED

1    have gotten two different groups of creditors to fight among

2    themselves, all because of the fear that oh, my gosh, the whole

3    thing may come to a grinding halt.  But it hasn't come to a

4    grinding halt, and I'm not sure that I have seen any real

5    evidence to suggest it will come to a grinding halt other than

6    speculation.

7          MS. PENSKI FISSELL:  That was the subject of our

8    motion.  If you want me to retread --

9          THE COURT:  No, you're going to get an order tomorrow.

10         But let me hear from other counsel.

11         MR. SCHULMAN:  Your Honor, for clarification, the

12   restraining notice that they're complaining about was dated

13   April 3rd and issued April 4th.  There were some subsequent

14   restraining notices that were issued, but the one that's of

15   issue of moment is the April 3 served April 4.

16         THE COURT:  In an excess of caution, can I get your

17   assurance that no more restraining orders will be served

18   between now and when I issue my order tomorrow?

19         MR. SCHULMAN:  Absolutely, your Honor.

20         THE COURT:  Thank you.

21         MR. ROLL:  Thank you, your Honor.  William Roll for

22   interested party MS Drillship I, SA, which, as your Honor knows

23   from the last time, is the subordinated secured lender here.

24   And the dialogue that your Honor just had with Mr. Schulman is

25   a good segue to what I wanted to get into, because I want to

D4TTCMCA – CORRECTED

1    talk about some restraining notices served not on April 4th but

2    on April 25th and April 26th, last Thursday and last Friday,

3    well after our appearance here in front of your Honor on

4    April 18.

5            And they were not served on Deutsche Bank, they were

6    not served on any other bank of these judgment debtors, they

7    were not served on MS Drillship I, the subordinated secured

8    lender, they were attempted to be served on Mitsubishi

9    Corporation, the Japanese parent.  And they were --

10   Mr. Schulman sought to serve those first Thursday through

11   Mitsubishi Corporation America, a totally unrelated subsidiary,

12   unrelated to this deal and unrelated to this financing.  He was

13   told by that entity that that service was improper.

14           The next day, Friday, he attempted to serve those

15   through Shearman & Sterling because we have appeared here on

16   behalf of MS Drillship I.  He was told at that time, I told

17   Mr. Schulman in writing, that that service was improper.  I

18   don't mean to give him a hard time about the service, I suspect

19   he could find a way to serve the entity in Japan eventually,

20   but my point is, to the point you heard from counsel, the

21   proliferation of these restraining notices has to stop,

22   especially since we have been here in front of your Honor

23   attempting to sort this out.

24           In our case -- I shouldn't say our case, in the case

25   of the Mitsubishi Corporation, it's not even a party here, it's

D4TTCMCA – CORRECTED

1   not a lender here, it's not even in the United States.  It is

2   clear and should be clear that we do not hold property and

3   assets of these judgment debtors.  And it seems to us, and this

4   is my speculation, I will offer it for what it's worth, it

5   seems that that kind of effort, an effort to serve that

6   particular entity with this kind of restraining notice in the

7   face of all that has gone on here is simply an effort to get us

8   to pressure -- to get our client the pressure these judgment

9   debtors to pay the judgment.  I think that's inappropriate.

10           THE COURT:  All right.  Let me hear just on that point

11   from Mr. Schulman and then I will hear from other counsel.

12           MR. SCHULMAN:  Your Honor, counsel and co-counsel did

13   serve additional restraining notices on any entities that we

14   believe might have banking relationships with the judgment

15   debtors.  We don't know which entities do.  And this is typical

16   practice, you serve the banks.  In fact, typically they serve

17   20 banks or 30 banks.

18           THE COURT:  It bothers me that when there was a major

19   dispute brought before me that comes down to whether the

20   actions you were taking were warranted or not, and I, largely

21   to accommodate you, had indicated the Court would resolve what

22   involves some interesting and difficult legal issues on an

23   expedited basis, namely by tomorrow, that you would go ahead

24   and, instead of waiting for that order, continue to file these

25   restraining orders.  That's what I said at the outset this

D4TTCMCA – CORRECTED

afternoon, then I thought I had to restrain myself because of

what you were saying, but now I hear there is something on both

sides of that coin.

MR. SCHULMAN:  I think there are probably 15 or 20

restraining notices that counsel and co-counsel served on

various entities, and why they weren't all done at once is

frankly just administrative lethargy.

THE COURT:  So how do you justify this restraint on

Mitsubishi?

MR. SCHULMAN:  Your Honor, if Mitsubishi doesn't have

any assets and no accounts, and they wrote back saying there's

no accounts, and then it's not a restraint.  Quite simply, we

thought there was.

THE COURT:  What was your basis for thinking they did?

MR. SCHULMAN:  Basically, we reviewed Moody's reports,

Fitz ratings reports, every report could find that is publicly

available that –– Schahin Engenharia's financials filed,

anything that listed entities with which they had financial

dealings, the Schahin entities' financial dealings.  And that's

where you get a list of 20 entities.  We didn't do it to every

single bank in New York, we did it to entities that we believed

had financial dealing.  Evidently Mitsubishi was the wrong

Mitsubishi.  We apologize to them.  I thought it was served on

the Bank of Tokyo Mitsubishi, apparently it was served on

Mitsubishi Corporation.  That was an error that wasn't

D4TTCMCA - CORRECTED

 1    intended.

 2           I would like to make one point then I will sit down.

 3           THE COURT:  Go ahead.

 4           MR. SCHULMAN:  I would like to quote one sentence from

 5    the Schahin brief, "For the avoidance of doubt, we do not

 6    question Deutsche Bank's conduct."  It seems to me either

 7    Deutsche Bank had a basis to believe that the accounts were

 8    related to BDL, SDL or Black Gold or they don't.  If they

 9    don't, they should be questioning their conduct.  If they do,

10    what they did was entirely appropriate.  All we're getting is

11    claims.  The only entities that know anything about this are

12    Deutsche Bank --

13           THE COURT:  It's not so clear to me it's an either/or

14    situation, and many times there are relationships that don't

15    amount to control.

16           But I understand what you're saying.  Let me hear from

17    remaining counsel and then we'll see where we stand.

18           MR. SCHULMAN:  My suggestion, your Honor, is neither

19    you nor I have any evidence before us that could clarify this

20    restraining notice of April 4th.  We have no evidence before

21    us.  We don't know what kind of control there is before us or

22    not.  So seeking clarification from the Court when they say

23    Deutsche Bank did nothing wrong, how can you clarify something

24    that is absolutely clear on its face?  We restrained property

25    interest of BDL, SDL and Black Gold.

D4TTCMCA - CORRECTED

1          THE COURT:  All right.

2          MR. SCHULMAN:  Thank you, your Honor.

3          THE COURT:  Thank you.

4          MR. ASHBY:  Your Honor, I would like to address a few

5     points that were raised.  First, I apologize if this is my

6     fault for not being clear, but there was a suggestion made that

7     the parties that are being improperly restrained are somehow

8     not here today.  I don't believe that's the case, your Honor.

9     When I went through my litany of people I was standing up for

10    today, included amongst them were Airosauru Drilling, LLC,

11    Dleif Drilling, LLC, Turasoria Drilling, SA, LLC, Deep Black

12    Drilling, LLC, and Schahin Petroleum & Gas, SA.  Each one of

13    these entities has accounts at Deutsche Bank that now is being

14    restrained, and that is improper.  That's why they have

15    appeared today.  As we set forth in our briefing, the drillship

16    Lancer is held by Turasoria, LLC, the drillship Victoria is

17    held by Deep Black, LLP, the drillship --

18         THE COURT:  Are these the entirety of all the accounts

19    that are being restrained by Deutsche Bank at present other

20    than direct accounts of the judgment debtors?

21         MR. ASHBY:  To the best of my knowledge, yes, your

22    Honor.

23         THE COURT:  Then the fault is mine, I misunderstood.

24    I didn't realize that was the entirety, because there were

25    larger numbers thrown around, 40 accounts or whatever.  So

D4TTCMCA - CORRECTED

 1    you're in a position, then, to show that these are not

 2    controlled in any way by any of the judgment debtors.  True?

 3              MR. ASHBY:  That is correct, your Honor.

 4              THE COURT:  How would you propose to show that?

 5              MR. ASHBY:  I think that the affidavit that we put

 6    forward in support of our brief from Gustavo Shinohara, he's

 7    the director of project finance, and he put forward an

 8    affidavit setting forth these entities and saying that BDL, SDL

 9    and Black Gold do not have an interest in these accounts.

10              THE COURT:  So when you showed that to Deutsche Bank,

11    what was their response?

12              MR. ASHBY:  Deutsche Bank just saw our affidavit on

13    this -- I guess on Friday evening.  It appears from their

14    presence today and their comments to your Honor today their

15    position still has not changed that they need either further

16    clarification from CIMC or clarification from your Honor.

17              I would suggest --

18              THE COURT:  No, I don't understand that.  My

19    understanding from Deutsche Bank, and we'll hear from their

20    counsel in a minute, was that there were relationships of some

21    sort between these various accounts and the judgment debtors

22    that prompted them in an excess of caution to restrain all

23    these accounts.  They did not suggest, and I would be very

24    surprised if they were suggesting that we restrained other

25    accounts even though we had no reason whatsoever to believe

D4TTCMCA - CORRECTED

1    that there was any connection whatsoever between them and the

2    judgment debtor.  And if they were doing that, presumably you

3    would be busy suing them.

4        What I understood them to be saying was that based on

5    the knowledge that they did have, there was something, some

6    sort of connection that led them in a quote, excess of caution,

7    closed quote, to restrain these accounts.  So it would need,

8    before I could rule, to extent that I were going to make a

9    determination of whether to lift these restraints or not, I

10   would need to know from Deutsche Bank what those relationships

11   are.  But if you have presented to Deutsche Bank the same

12   affidavit you presented to me, and they have said that's not

13   enough, it must be because there's something else that they

14   know of that shows some interrelationship.  Yes?

15       MR. ASHBY:  That is not the case, as I understand the

16   facts today, your Honor.  We have told Deutsche Bank previous

17   to the filing of our affidavit that these entities and these

18   specific accounts that we know are being restrained do not have

19   any relationship to Black Gold, BDL or SDL.  The concern that

20   we were told by Deutsche Bank is that because these were also

21   Schahin group entities that they were concerned that CIMC might

22   be attempting to restrain these accounts as well.

23       So far today I haven't heard anybody step forward with

24   evidence suggesting that these accounts held by these third

25   parties have any relationship to BDL, SDL or Black Gold,

D4TTCMCA - CORRECTED

1  because no one can suggest that.  They have different project

2  entities.  That's why we're asking for clarification.

3        THE COURT:  I get your point.  Let me hear from

4  Deutsche Bank's counsel again and we'll come back to you on

5  that.

6        So given what you just heard, and given what you

7  apparently were shown on Friday, what's the basis for

8  restraining these accounts?

9        MR. CHRISTENSEN:  Well, first of all, your Honor, when

10  we heard last Friday, we then waited until Sunday to see Sunday

11  evening what Mr. Schulman's response was.  I think it's fair to

12  say that Mr. Schulman's response has not contradicted the sworn

13  affidavit that Mr. Ashby put in.

14        We were also -- frankly, your Honor, we did not

15  realize this would hit a road bump as early as it did.  We were

16  aware from reports of the various counsel that when you heard

17  argument before the parties on I believe it was April 17 that

18  you were going to rule by the end of this month, we thought

19  that ruling would give greater clarity, too.  So we were

20  proceeding, as I said earlier, to learn from the exchanges of

21  the parties to glean what information we could.

22        We obviously have some information, but as I said,

23  Deutsche Bank Trust Company America is not the same as Deutsche

24  Bank Brazil.  We're muddling through this as best we can in the

25  short time frame, and frankly, have learned a lot from the

D4TTCMCA - CORRECTED

1    exchange of the parties.  And I think Mr. Ashby has made an

2    important point in terms of the affidavit that was submitted on

3    Friday, as to my knowledge, not yet contradicted.  I didn't

4    know whether Mr. Schulman would be submitting a submission on

5    Sunday evening, because as your law clerk said he was given

6    until today to argue it.  So we're gleaning from that -- we

7    also frankly wanted to wait until your Honor, and we thought

8    the parties would wait until your Honor clarified the situation

9    ruling you promised by April 30, and that obviously hasn't

10   happened.

11             THE COURT:  So here's where I come out.  First of all,

12   this has been helpful to the Court to clarify some of my own

13   thinking on this subject, but not so far -- not as relates to

14   my ruling of tomorrow, just really as it explains what's been

15   going on.

16             I'm not going to either order Deutsche Bank lift the

17   restraints on any given entity, nor am I going to prevent them

18   from lifting the restraints if they choose to do so.  I think

19   Mr. Schulman correctly points out that I don't have that

20   knowledge.  But I will issue my order tomorrow, and then it

21   seems to me that the parties ought to be able, among

22   themselves, to determine reasonably what should be restrained

23   and what should not be restrained.  But if you can't, then you

24   can so notify me on Wednesday, Thursday or Friday, and we will

25   have another hearing on Monday at 10:00 a.m.  I can't imagine

D4TTCMCA - CORRECTED

1   what would be more fun for the Court than having you all back

2   here, so that door is open, but perhaps it will not prove

3   necessary.

4          So I am going to leave it at this point to reiterate

5   as still a matter for Deutsche Bank to determine on its own.

6   I'm not going to require it to lift the restraints, I'm not

7   going to prevent it from lifting the restraints.  I'm talking

8   about the restraints, obviously, other than the judgment debtor

9   accounts themselves.  But I appreciate that in theory this may

10  impact tomorrow's Waterfall.  I keep trying to visualize all

11  the magnificent waterfalls in Brazil, but on the other hand

12  this is essentially a maritime case, not in legal terms, but in

13  terms of underlying operations, so "waterfall" seems a very

14  unlikely analogy.

15         But in any event, I'm not convinced that the world

16  will come to an end in terms of the underlying operations if

17  Deutsche Bank does continue the restraints past tomorrow, but

18  I'm not convinced that they don't have a basis in their own

19  analysis to take a different position if they so choose.  I

20  can't rule on that one way or the other on the basis of this

21  record.  So the nice thing about Deutsche Bank's position is

22  that it's on the hot seat and it can't get off it, at least not

23  without help from this Court, and I'm not giving you any, so

24  there you are.

25         All right.  So I'll issue my order tomorrow.  If

D4TTCMCA – CORRECTED

1    anyone feels there are still disputes regarding any aspect of

2    this, just call my chambers any day through Friday, and I will

3    hear you on Monday at 10:00 a.m.

4         Thanks very much.

5                              o0o

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25