UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------- x
CIMC RAFFLES OFFSHORE (SINGAPORE)      :
PTE. LTD., and YANTAI CIMC RAFFLES     :
OFFSHORE LTD.,                          :
                                        :
                 Petitioners,           :
                                        :            13 Civ. 52 (JSR)
          -v-                           :
                                        :            MEMORANDUM ORDER
SCHAHIN HOLDING S.A., SCHAHIN          :
ENGENHARIA S.A., SEA BISCUIT           :
INTERNATIONAL INC., BLACK GOLD         :
DRILLING LLC, BAERFIELD DRILLING LLC,  :
and SORATU DRILLING LLC,               :
                                        :
                 Respondents.           :
---------------------------------------- x

JED S. RAKOFF, U.S.D.J.

        Petitioners CIMC Raffles Offshore (Singapore) Pte. Ltd. and

Yantai CIMC Raffles Offshore Ltd. (collectively, "CIMC"), two offshore

oil rig construction yards, constructed two semi-submersible drilling

vessels for respondents Baerfield Drilling LLC ("BDL") and Soratu

Drilling LLC ("SDL"). See Supp. Decl. of Nwamaka G. Ejebe filed Feb.

15, 2013, Ex. 1 (Final Award of Arbitrators). During the course of

construction and pursuant to two "Advance and Equity Conversion

Agreements," CIMC loaned $66,125,587 to the six respondents named in

this action, which failed to repay the loans. Id. The terms of the

Agreements provide for mandatory arbitration in New York City, and on

December 26, 2012, an arbitral tribunal awarded $69,470,777.41 to CIMC

for repayment of the loans and pre-award interest, as well as

$13,206.28 in arbitration costs. Id. at 21-22.

On January 2, 2013, CIMC filed in this Court a petition seeking confirmation of the arbitration award, interest, costs, and fees.  On March 13, 2013, the Court granted judgment against three of the respondents, BDL, SDL, and Black Gold Drilling LLC ("Black Gold"), see Order, 13 Civ. 52, ECF No. 21 (filed Mar. 13, 2013), and on April 21, 2013, the Court granted judgment against the remaining three respondents, Schahin Holding S.A., Schahin Engenharia S.A., and Sea Biscuit International Inc., see Order, 13 Civ. 52, ECF No. 53 (S.D.N.Y. filed Apr. 22, 2013).[1]

In response to a prior motion filed by CIMC, the Court on April 30, 2013 issued an order (1) directing Black Gold, SDL, and BDL to bring into New York and turn over to CIMC funds sufficient to satisfy the judgment issued against them and (2) allowing CIMC to attach and execute upon payments made to Schahin Engenharia as reimbursement for operating expenses in relation to the operations of the SS Amazonia and SS Pantanal, the two vessels owned by Black Gold, SDL, and BDL. See CIMC Raffles Offshore (Singapore) Ltd. v. Schahin Holding S.A. ("CIMC I"), No. 13 Civ. 52, 2013 WL 1800107 (S.D.N.Y. Apr. 30, 2013).

CIMC now moves to enforce the judgment against respondents Schahin Engenharia and Schahin Holding, seeking various forms of

---

[1] Respondents SDL and BDL are wholly owned by Black Gold, and Black Gold is owned in turn by Sea Biscuit. See Schulman Aff. Ex. C at 96:14-97:4. Sea Biscuit is owned by holding companies that are ultimately owned by Milton Taufic Shahin and Salim Taufic Schahin. Schulman Aff. Ex. D. The Schahins also own other holding companies, which in turn own Schahin Holding, which owns Schahin Engenharia. Id.

relief under Rule 69 of the Federal Rules of Civil Procedure, which incorporates New York's post-judgment enforcement provisions. See Fed. R. Civ. P. 69(a)(1) ("The procedure on execution - and in proceedings supplementary to and in aid of judgment or execution - must accord with the procedure of the state where the court is located . . . .").

First, CIMC asks that the Court, as it did against BDL, SDL, and Black Gold, direct Schahin Holding and Schahin Engenharia, jointly and severally, to turn over to CIMC funds in the amount of the judgment, together with post-judgment interest. Under N.Y. C.P.L.R. § 5225(a), it is well established that "a New York court with personal jurisdiction over a defendant may order him to turn over out-of-state property." Koehler v. Bank of Bermuda, Ltd., 12 N.Y.3d 533, 541 (2009). As the Court found with respect to BDL, SDL, and Black Gold, this Court has personal jurisdiction over all six respondents because they contractually agreed to arbitrate in New York, thereby agreeing to submit themselves to the jurisdiction of New York courts. See 9 U.S.C. § 9 ("Notice of the application [for confirmation of an arbitration award] shall be served upon the adverse party, and thereupon the court shall have jurisdiction of such party as though he had appeared generally in the proceeding."). Therefore, the Court hereby orders Schahin Engenharia and Schahin Holding to bring into New York and turn over to CIMC funds sufficient to satisfy the judgment issued against them on April 22, 2013. For the avoidance of doubt, the Court requires that each of the debtors so ordered in this and the

Court's April 30 Order - i.e., Schahin Engenharia, Schahin Holding, BDL, SDL, and Black Gold - turn over such funds by August 20, 2013.

CIMC's remaining requests require some background with respect to the nature of the operation of the various vessels involved in this motion. As explained in the Court's April 30 Order, BDL and SDL, although the owners of the Amazonia and the Pantanal, do not operate the vessels; rather, Petróleo Brasileiro S.A. ("Petrobras"), a third-party Brazilian petroleum company, charters the vessels, and Schahin Engenharia runs their operations. To finance the purchase of the Amazonia and the Pantanal, Black Gold, BDL, and SDL borrowed substantial sums from a group of nineteen lenders (the "senior lenders"), to whom they currently owe approximately $600 million. Under the terms of the relevant collateral agreements, Deutsche Bank Trust Company Americas ("Deutsche Bank Americas"), the collateral agent for the senior lenders, has established a network of segregated bank accounts (the "offshore project accounts") held in the names of the respondents, although these accounts are controlled solely by Portigon AG, New York Branch, the administrative agent for the senior lenders, and Deutsche Bank. Respondents have no authority to vary payments from those laid out in the underlying contractual agreements.

Payments by Petrobras are the sole source of revenue flowing into the offshore project accounts, and the funds in these accounts are distributed according to the contractual "waterfall," through which all revenue is disbursed into various sub-accounts for distribution or

4

reservation as set forth in the underlying agreements. In effect, the contractual waterfall ensures that payments of interest and principal are first made to the senior lenders, following which payments of operating expenses and capital expenses may be made to Schahin Engenharia. The waterfall provides for a total of eleven steps, although no revenue has thus far been allocated beyond operating and capital expenses because the vessels have not produced sufficient revenue to support such payments.

As security for the loans, BDL, SDL, and Black Gold made broad pledges of collateral to the senior lenders, including a lien on all interests in the offshore project accounts and all funds at any time on deposit in those accounts. The senior lenders have perfected their security interest in the various forms of collateral.[2]

Based on these facts and as relevant to the instant motion, the Court determined in its April 30 Order that it was "clear that CIMC cannot restrain the entirety of the funds in the offshore project

---

[2] Non-party MS Drillship I S.A., a wholly owned subsidiary of Mitsubishi Corporation ("Mitsubishi"), is a secured lender to Black Gold on a $146 million loan. As security for the loan, Mitsubishi has a second-priority security interest in the project accounts and in all other collateral in which the senior lenders have a security interest, as well as a first-priority security interest in other project accounts subject to the petitioners' restraining notice. Payment to Mitsubishi occurs at the last level of the contractual payment waterfall discussed above and the first five levels of a separate, subordinated debt waterfall. Mitsubishi, as a lender with an interest inferior to that of the senior lenders but superior to that of CIMC as an unsecured judgment creditor, joins in Portigon's opposition to CIMC's motion. See Joinder of Interested Party MS Drillship I S.A., No. 13 Civ. 52, ECF No. 77 (S.D.N.Y. filed May 16, 2013).

accounts; that is, CIMC may not restrain or levy on the payments of principal and interest owed to the senior lenders under the terms of the contractual waterfall." Id. at *3.  However, "[o]nce the funds are paid to Schahin Engenharia, the senior lenders' lien is released, and the funds are no longer subject to the superior claims of the senior lenders." Id. at *4. Thus, at this point, the operating expense payments could be turned over to CIMC, which the Court so ordered.

Returning to the instant motion, CIMC asks that the Court direct Schahin Engenharia to make installment payments to CIMC Raffles of the operating expenses paid for its operation of the Amazonia and the Pantanal from the offshore project accounts and order Deutsche Bank Americas to turn over to CIMC funds to be paid to Schahin Engenharia as operating expenses. See N.Y. C.P.L.R. § 5226 (providing for installment payments by a judgment debtor); id. § 5227 (providing for turnover orders with respect to third parties in possession of property of the debtor). CIMC represents that such relief would merely effectuate the Court's April 30 Order while allowing the parties to avoid fees for executing on the debtors' assets.

Although they do not directly address CIMC's request for installment payments and a turnover order, respondents Black Gold, BDL, and SDL as well as Portigon, as an interested non-party (joined by Mitsubishi), in effect propose a modification of the Court's April 30 Order. Specifically, respondents and Portigon propose that, rather than allowing CIMC to attach the operating expenses paid to Schahin

Enginharia, the Court should permit Portigon to bypass Schahin Engenharia and pay operating expenses directly to employees and third-party providers of services and resources for the vessels. Portigon represents that a redirection of payments would be permissible under the collateral agreements, and it claims that such relief would protect the interests of the senior secured lenders without benefiting Schahin Engenharia. Furthermore, respondents claim that Schahin Engenharia effectively has no interest in the operating expense payments it receives, but rather acts as a mere conduit for funds to be paid to others, making attachment improper since, they claim, Schahin Engenharia has no authority to do anything other than pay to its suppliers the funds it receives as operating expenses. See Decl. of Gustavo Shinohara ¶ 9.

In some sense, what Portigon and the respondents seek here is a "second bite at the apple" with respect to the Court's April 30 Order. Despite extensive briefing and argument leading up to the Court's April 30 Order, no one at that time claimed that Schahin Engenharia lacks the authority to freely assign the payments it receives for its expenses in operating the Amazonia and the Pantanal. Nor could they, as it is axiomatic that money is fungible, and it is irrelevant whether Schahin Engenharia pays its suppliers and its employees with designated "operating expense" payments or funds it derives from some other source. Furthermore, in its April 30 Order, the Court rejected the notion that the interests of the senior lenders require such

protection that the attachment of Schahin Engenharia's operating expenses would cause the two vessels to shut down, see CIMC I, 2013 WL 1800107, at *4, and reframing that argument in support of the proposed modification of the prior Order does not change the Court's view. Nor does the Court accept the notion that Schahin Engenharia will not benefit from the direct payment of its debts to its suppliers and employees; the proposed re-routing of the funds would effectively allow Schahin Engenharia to continue to pay its day-to-day expenses without paying the judgment it owes to CIMC, which is contrary to the intention of the Court's April 30 Order. Thus, the Court rejects the respondents' and Portigon's request that operating expense payments made to Schahin Engenharia from the offshore operating accounts be re-routed to third parties. The Court also grants CIMC's motion for installment payments and for a turnover order directed to Deutsche Bank Americas, requiring that Deutsche Bank turn over to CIMC funds to be paid to Schahin Engenharia as operating expenses, once they have been withdrawn from the secured offshore project accounts.

In a related dispute, the parties informed the Court by letter that, in the time since the Court's April 30 Order was issued, Schahin Engenharia has declined to ask for any amount of operating expenses in the monthly certifications it submits to Portigon; thus, no operating expenses have been paid from the offshore project accounts, and CIMC has been unable to attach or execute upon those payments. Rather, those amounts remain in the offshore project accounts, where they are

subject to the senior lenders' superior lien. Based on these actions, CIMC requests that the Court either (1) direct Schahin Engenharia, Portigon, and Deutsche Bank Americas to transfer those funds or (2) appoint a post-judgment receiver to accomplish this task.

Based on the parties' submissions, the Court is satisfied that the underlying contracts do not require Schahin Engenharia to set forth its request for operating expenses in any given month. See Decl. of Jared Brenner dated Apr. 14, 2013 ¶¶ 19-20. Therefore, the Court will not order that such payments be made, nor will it authorize CIMC to execute upon those assets while they remain subject to the senior lenders' liens. See CIMC I, 2013 WL 1800107, at *4. Because respondents represent that the reason that no operating expense payments have been made is that they intended to maintain the status quo while their request to make such payments directly to third-parties was sub judice, the Court will take no further action at this point. Schahin Engenharia is left with two choices: request payments, which will be paid to CIMC, or do not request any payments, and likewise receive no operating expense payments; in neither case will Schahin Engenharia be able to benefit from funds that should otherwise pass through its hands and therefore be attachable by CIMC.[3]

_____

[3] To make explicit the Court's decision, the Court hereby also denies CIMC's request for the appointment of a post-judgment receiver, as CIMC has made no attempt to demonstrate that appointment of a receiver is justified. See Galen Tech. Solutions, Inc. v. VectorMAX Corp., 967 N.Y.S.2d 327 (N.Y. App. Div. 2013) (requiring a "special reason" to justify the appointment of a receiver, such as a "showing that defendant acted fraudulently").

Turning to CIMC's next request, CIMC seeks an analogous turnover order against Deutsche Bank Americas and an installment payment order against Schahin Engenharia with respect to operating expense payments received for its work on the SC Lancer and the Vitoria 10,000 through offshore operating accounts located at Deutsche Bank Americas.[4] The SC Lancer and the Vitoria 10,000 are leased by non-debtor Schahin entities Turasoria, S.A., and Deep Black Drilling, LLP, respectively, and operated by Schahin Engenharia. The contractual waterfalls for the Lancer and the Vitoria 10,000 provide for a similar structure of "offshore operating accounts" at Deutsche Bank Americas, similar to the Amazonia and the Pantanal. And, again, as with the Amazonia and Pantanal, operating expenses of approximately $1-2 million per month flow through these New York-based accounts. See Decl. of Gustavo Shinohara ¶ 8.

There is no meaningful difference with respect to the payment of operating expenses to Schahin Engenharia on these vessels as opposed to those made in relation to the Amazonia and Pantanal. Although the Amazonia and Pantanal are owned by SDL, BDL, and Black Gold, who are co-judgment debtors with Schahin Engenharia, this additional connection is irrelevant. CIMC may attach any assets belonging to a judgment debtor, including any unencumbered payments made to Schahin

---

[4] Although CIMC uses the language "and other vessels" in its request, the Court is limiting its consideration of CIMC's motion at this time to the Vitoria 10,000 and the SC Lancer, as they are the only vessels addressed in the substance of CIMC's briefing of this issue.

Engenharia, regardless of the vessel to which those payments relate.

Respondents oppose CIMC's request on the ground that a turnover order in connection with these unrelated vessels would cause disproportionate harm to the senior lenders, the parties who provide goods and services to those projects, and Turasoria and Deep Black, the lessees of the SC Lancer and the Vitoria 10,000, none of which is a debtor in this case. While acknowledging that the Court previously rejected the notion that attaching the $1-2 million per month that Schahin Engenharia receives in operating expenses for the Pantanal and the Amazonia would cause disproportionate harm to the senior lenders, see CIMC I, 2013 WL 1800107, at *4, respondents and Portigon assert that adding the burden of attachment of the Lancer's and Vitoria's operating expenses would make Schahin Engenharia's operations unsustainable.  Thus, respondents ask that the Court use its discretion to deny CIMC's instant request because such an order would create a substantial risk that the operations of those vessels would be shut down. See N.Y. C.P.L.R. § 5240 ("The court may at any time, on its own initiative or the motion of any interested person, and upon such notice as it may require, make an order denying, limiting, conditioning, regulating, extending or modifying the use of any enforcement procedure.").

However, respondents continue to fail to persuade the Court that there is a real risk that Schahin Engenharia would shut down the operation of the vessels if it were not reimbursed for the offshore

portion of its operating expenses.  As the Court noted in its prior opinion, "respondents have represented in New York State Supreme Court that '[i]f final judgments or awards are rendered against the Defendants, the Defendants of course will satisfy them,' and that they 'have substantial net worth and assets that are more than sufficient to pay any judgments that might be rendered against them.' To the extent that respondents induced that court's reliance on their representations, it would be inequitable to allow them to avoid a restraint on their assets now under the theory that they will not have enough funds to continue to operate." CIMC I, 2013 WL 1800107, at *4 n.3 (citations omitted).  Additionally, CIMC brought to the Court's attention the fact that Schahin Engenharia presents itself as a large and diversified company that engages in various industries in Brazil, suggesting that this is not a situation in which the amounts paid as operating expenses with respect to these vessels are the debtor's sole source of income.  Therefore, because "only the gravest circumstances warrant CPLR 5240 equitable modification in the face of a valid judgment," the Court rejects respondents' arguments for equitable modification. See Midlantic Nat. Bank/N. v. Reif, 732 F. Supp. 354, 357 (E.D.N.Y. 1990).

Alternatively, respondents also claim that the contractual provisions creating the payment waterfalls are materially different from those underlying the operating expense payments for the Amazonia and the Pantanal and therefore a turnover order with respect to

payments to Schahin Engenharia under those agreements would be
improper. However, respondents provided the Court with only a brief,
vaguely worded declaration making such claims and did not append the
relevant contractual documents to support their claims. See generally
Decl. of Gustavo Shinohara. The Court cannot conclude based only on
such a meager and ambiguous showing that there is any legal difference
in the status of the payments to Schahin Engenharia with respect to
the Vitoria and the Lancer as opposed to those for the Pantanal and
Amazonia, and so the Court disregards this assertion.  Therefore, the
Court grants CIMC's motion for a turnover and installment payments
with respect to operating expense payments made to Schahin Engenharia
from the offshore operating accounts located at Deutsche Bank Americas
as they relate to the Lancer and the Vitoria 10,000.[5]

Finally, CIMC seeks an order directing Schahin Engenharia to make
installment payments of all operating expenses paid for its operation
of the SS Amazonia, SS Pantanal, SC Lancer, Vitoria 10,000, and any
other vessels through the "onshore operating accounts" located at

---

[5] As to respondents' claim that this is not the proper forum for CIMC
to seek a turnover order because the affected entities and operations
are located in Brazil, the Court previously rejected a similar
argument in its April 30 Order and does so here as well. See CIMC I,
2013 WL 1800107, at *5 ("[T]o the extent that Portigon argues that
CIMC should pursue the 'less intrusive' path of seeking to collect on
its judgment in Brazil against the respondents' unencumbered assets
available there, the Court notes only that such a suggestion is
contrary to usual practice under the C.P.L.R., which allows a judgment
creditor to seize monies garnishees owe to judgment debtors wherever
those garnishees are found, and would only engender more delay in
collecting on a judgment from what are, by all appearances,
recalcitrant debtors.").

Deutsche Bank Brazil. CIMC also seeks an order directing Schahin
Engenharia to issue instructions to all U.S. and foreign banks in
which it maintains funds, commanding the banks to turn over to CIMC
all sums in their custody or possession that are payable to Schahin
Engenharia, unless such funds are subject to senior security
interests.

As respondents argue in opposing this relief, CIMC's request for
a turnover order against Schahin Engenharia plus an order directing
Schahin Engenharia to instruct its U.S. and foreign banks to pay to
CIMC amounts owed to Schahin Engenharia is an end-run around the
Court's inability to assert jurisdiction over Deutsche Bank Brazil to
issue such a turnover order against it directly. Under N.Y. C.P.L.R. §
5225, a turnover order may only be issued against a person or entity
"in possession or custody" of the judgment debtor's property. Under
the governing agreements, only Deutsche Bank Brazil has possession and
custody of the onshore waterfall accounts, so only Deutsche Bank
Brazil can be asked to turn over the funds in those accounts under §
5225.  However, Deutsche Bank Brazil, an entirely separate legal
entity from Deutsche Bank Americas, has not been served in this
proceeding, nor is it clear that it could be subject to personal
jurisdiction in any case. See Commonwealth of N. Mariana Islands v.
Canadian Imperial Bank of Commerce, 21 N.Y.3d 55 (2013) ("[P]ersonal
jurisdiction is the linchpin of authority under section 5225(b).").
The Court cannot countenance this attempt to skirt the limitations on

14

its authority and therefore denies CIMC's motion for a turnover order and installment payments in relation to the accounts located at Deutsche Bank Brazil.

In sum, the Court grants in part and denies in part the various motions at issue here. The Court hereby directs Schahin Holding and Schahin Engenharia, jointly and severally, to turn over to CIMC by August 20, 2013, funds in the amount of the judgment plus post-judgment interest; the Court likewise directs BDL, SDL, and Black Gold, against which a turnover order had already issued, to turn over such funds by August 20, 2013. Additionally, the Court directs Schahin Engenharia to make installment payments to CIMC of the operating expenses paid for its operation of the SS Amazonia, SS Pantanal, SC Lancer, and the Vitoria 10,000 through the offshore operating accounts located at Deutsche Bank Trust Company Americas; the Court also directs Deutsche Bank Americas to turn over to CIMC funds to be paid to Schahin Engenharia as operating expenses once they have been withdrawn from the secured offshore operating accounts. Finally, the Court denies CIMC's motion seeking an order directing Schahin Engenharia to issue instructions to its U.S. and foreign banks and to make installment payments from funds paid out of the onshore operating accounts located at Deutsche Bank Brazil. The Clerk of the Court is directed to close item number 68 on the docket of this case.

SO ORDERED.

Dated: New York, New York
       August 6, 2013

_____
JED S. RAKOFF, U.S.D.J.

15