UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| CIMC RAFFLES OFFSHORE (SINGAPORE) PTE. LTD. AND YANTAI CIMC RAFFLES OFFSHORE LIMITED,<br><br>　　　　　　　　　　　Petitioners,<br><br>　　v.<br><br>SCHAHIN HOLDING S.A., SCHAHIN ENGENHARIA S.A., SEA BISCUIT INTERNATIONAL INC., BLACK GOLD DRILLING LLC, BAERFIELD DRILLING LLC AND SORATU DRILLING LLC,<br><br>　　　　　　　　　　　Respondents. | 13 Civ. 0052 (JSR)<br>ECF Case |

**MEMORANDUM OF LAW IN SUPPORT OF CIMC RAFFLES'
MOTION TO HOLD RESPONDENTS (OTHER THAN SEA BISCUIT
INTERNATIONAL INC.) IN CONTEMPT OF COURT**

DEBEVOISE & PLIMPTON LLP
Joseph P. Moodhe
jpmoodhe@debevoise.com
919 Third Avenue
New York, NY 10022
(212) 909-6000

SCHULMAN BLACKWELL LLP
Dan J. Schulman
dschulman@schulmanblackwell.com
Deric Gerlach
dgerlach@schulmanblackwell.com
11 Broadway, Suite 615
New York, New York 10004
(646) 225-6600

*Co-Counsel for Petitioners, CIMC Raffles.*

Dated: New York, New York
　　　　August 27, 2013

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

STATEMENT OF FACTS ......................................................................................................... 2

ARGUMENT .............................................................................................................................. 3

    I.     The Standard for Civil Contempt ................................................................................ 3

    II.    Schahin Should Be Held In Contempt and Sanctioned Accordingly. .................................. 5

    III.   Schahin Should Pay CIMC Raffles' Costs and Reasonable Attorney's Fees In Bringing This Motion. ............................................................................................... 8

CONCLUSION .......................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**CASES**

Armstrong v. Guccione, 470 F.3d 89 (2d Cir. 2006) .................................................................. 3

Donovan v. Sovereign Security Ltd., 726 F.2d 55 (2d Cir. 1984) ............................................ 4, 5

GMA Accessories Inc. v. Eminent Inc., No. 07 Civ. 3219, 2008 WL 2355826 (S.D.N.Y. May 29, 2008) ......................................................................................................................... 8

Huber v. Marine Midland Bank, 51 F.3d 5 (2d Cir. 1995) ........................................................... 4

Manhattan Indus. Inc. v. Sweater Bee by Banff Ltd., 885 F.2d 1 (2d Cir. 1989) ......................... 4

N.Y. State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033 (S.D.N.Y. 1997) ......................... 8

Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Tech., 369 F.3d 645 (2d Cir. 2004) ........................................................................................................................... 4

Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53 (2d Cir. 1982) .......................................... 4

S.E.C. v. Credit Bancorp. Ltd., No. 99 Civ. 11395, 2000 WL 968010 (S.D.N.Y. July 3, 2000) ......................................................................................................................................... 4

Shillitani v. United States, 384 U.S. 364 (1966) .......................................................................... 3

Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594 (S.D.N.Y. 2008) ................. 4

United States v. Ohle, No. S3 08 Cr. 1109, 2012 WL 2861347 (S.D.N.Y. July 6, 2012) ............ 4

United States v. Quintieri, 306 F.3d 1217 (2d Cir. 2002) ............................................................ 7

United States v. Uccio, 940 F.2d 753 (2d Cir. 1991) ................................................................... 6

Weitzman v. Stein, 98 F.3d 717 (2d Cir. 1996) ............................................................................ 8

Petitioners CIMC Raffles Offshore (Singapore) Pte. Limited and Yantai CIMC Raffles Offshore Limited (collectively, "CIMC Raffles") respectfully submit this memorandum of law in support of their Motion for Contempt against Respondents Schahin Holding SA ("Schahin Holding"), Schahin Engenharia SA ("Schahin Engenharia"), Black Gold Drilling LLC ("Black Gold"), Baerfield Drilling LLC ("BDL"), and Soratu Drilling LLC ("SDL," and together with Schahin Holding, Schahin Engenharia, Black Gold, BDL, and SDL, "Schahin" or "Schahin Entities").[1]

**PRELIMINARY STATEMENT**

Despite having submitted a sworn statement in New York State Supreme Court that they have ample resources and that they will pay any final judgment and any final award entered against them, the Schahin Entities failed and refused to pay the final arbitration awards entered in December 2012 by the New York arbitrators; failed and refused to pay the final judgments entered by this Court based on those final arbitration awards; and contemptuously fail and refuse to obey the clear, direct and unequivocal Orders of this Court that expressly directed them and required them to bring funds into New York, and turn over these funds to satisfy the final judgments entered against them and in favor of CIMC Raffles.

The Court should hold all of the Schahin Entities (other than Sea Biscuit) in contempt of Court, and order them to pay a daily fine, starting at $500,000 (less than 1% of the outstanding $71 million judgment), and doubling each calendar day, until they comply with the Court's two clear and unequivocal Orders, dated April 30, 2013, and August 6, 2013. The Court should

---

[1] Also submitted in support of CIMC Raffles' motion is the August 27, 2013 Declaration of Joseph Moodhe ("Moodhe Decl."). CIMC Raffles is not moving to have Respondent Sea Biscuit International Inc. ("Sea Biscuit") held in contempt, because CIMC Raffles did not previously seek or obtain an order directing Sea Biscuit to bring funds into New York to pay the judgments.

further order the Schahin Entities to pay the costs and reasonable attorney's fees incurred by CIMC Raffles in bringing this motion.

## STATEMENT OF FACTS

The background facts underlying this motion are well known to the Court, and are set forth in the Court's two prior Enforcement Orders, dated April 30, 2013, and August 6, 2013, and therefore need be summarized only briefly:

- -- CIMC Raffles commenced this proceeding on January 2, 2013, by petitioning the Court to confirm the final arbitration awards that had been issued in New York State as against all Respondents. This award was issued pursuant to two "equity conversion agreements" ("ECA") between CIMC Raffles and Respondents. (Docket No. 1.)

- -- By order dated March 11, 2013, the Court directed the Clerk of the Court to enter final judgment on the award in the total principal amount of $69,483,983.69 in favor of CIMC Raffles and against BDL, SDL, and Black Gold, together with post-award, pre-judgment interest, costs, and attorney's fees. (Docket No. 21.) Judgment was entered by the Clerk of the Court on or about March 19, 2013 ("March 19 Judgment"). (Docket No. 26.) Writs of execution were issued on or about April 3, 2013, as to Black Gold, BDL, and SDL with respect to the March 19 Judgment. (Docket entry, April 3, 2013.)

- -- By order dated April 21, 2013, the Court directed the Clerk to enter a similar judgment against Schahin Holding, Schahin Engenharia, and Sea Biscuit. (Docket No. 53.) The Clerk entered judgment on the Court's April 21 Order on or about April 24 ("April 24 Judgment") (Docket No. 54), and a corresponding writ of execution was issued on or about June 12, 2013, as to Schahin Holding, Schahin Engenharia, and Sea Biscuit (Docket entry, June 12, 2013).

- -- On April 10, 2013, Petitioners moved the Court for, among other things, an order directing BDL, SDL, and Black Gold to bring funds into New York, and to turn over cash or cash equivalents sufficient to pay the March 19 Judgment. (Docket No. 33.) By memorandum order dated April 30, 2013 ("First Enforcement Order"), the Court granted CIMC Raffles' motion in part, directing Black Gold, BDL, and SDL to "immediate[ly] turnover to CIMC . . . funds sufficient to pay the judgment entered against them." (Docket No. 56, Mem. Order at 13.)

- -- Black Gold, BDL, and SDL failed to obey the Court's unambiguous First Enforcement Order.

- -- On May 8, 2013, CIMC Raffles filed a second enforcement motion seeking, among other things, an order directing Schahin Holding and Schahin Engenharia

2

      to bring into New York and turn over funds sufficient to pay the April 24 Judgment ("Second Enforcement Motion"). (Docket No. 68.) By memorandum order dated August 6, 2013 ("the Second Enforcement Order"), the Court granted Petitioners' motion, directing "Schahin Holding and Schahin Engenharia, jointly and severally, to turn over to CIMC by August 20, 2013, funds in the amount of the judgment plus post-judgment interest . . . ." (Docket No. 87, Mem. Order at 15.) The Court also ordered BDL, SDL, and Black Gold to turn over such funds by the same date. (Id.)

--    Thereafter, CIMC Raffles agreed to the Schahin Entities' request for an extension of time, until August 23, 2013, to comply with the Court's Second Enforcement Order, and the Court entered a short-form Order to this effect on August 20, 2013. (Docket No. 89.)

As of today, no funds have been paid to Petitioners. (Moodhe Decl. ¶ 2.) But in a clear ploy to deflect the coming contempt motion, late Friday afternoon during a call with the Court to schedule the briefing of this motion, counsel for the Schahin Entities announced that an unspecified amount would be paid to Petitioners. (Id. ¶ 3) Yesterday, CIMC Raffles was informed that Respondents had delivered certificates that would enable approximately $7.8 million to be paid to CIMC Raffles on September 5 from the restrained offshore operating accounts held at Deutsche Bank (notwithstanding that Petitioners have been told a total of roughly $15 million was being restrained at Deutsche Bank). (Id.) This belated and half-hearted attempt to soften Respondents' non-compliance with the Court's Orders demonstrates only one thing: full compliance will not occur unless and until the full contempt power of the Court is brought to bear on Respondents.

## ARGUMENT

### I.   The Standard for Civil Contempt.

Courts have the inherent power to enforce compliance with their lawful orders through the imposition of civil contempt sanctions. Shillitani v. United States, 384 U.S. 364, 370 (1966); see also Armstrong v. Guccione, 470 F.3d 89, 100 (2d Cir. 2006) (noting Court's inherent power

3

to enforce compliance through contempt, and upholding civil confinement of contemnor for failure to comply with order to turn over corporate property). A sanction for civil contempt serves two purposes: to secure compliance with what was ordered to have been done and to compensate the movant for damages suffered as a result of the contempt. See Manhattan Indus. Inc. v. Sweater Bee by Banff Ltd., 885 F.2d 1, 5 (2d Cir. 1989), cert. denied, 494 U.S. 1029 (1990); see also Perfect Fit Indus. v. Acme Quilting Co., 673 F.2d 53, 56-57 (2d Cir. 1982), cert. denied, 459 U.S. 832 (1982); S.E.C. v. Credit Bancorp. Ltd., No. 99 Civ. 11395, 2000 WL 968010, at *17 (S.D.N.Y. July 3, 2000) (imposing a $100 per day fine, that was doubled and cumulated daily until contemnor purged contempt by, among other things, transferring control over accounts containing approximately $20 million in assets); Telenor Mobile Commc'ns AS v. Storm LLC, 587 F. Supp. 2d 594 (S.D.N.Y. 2008) (imposing contempt sanctions of $100,000 per day, the daily amount doubling every 30 days until compliance); United States v. Ohle, No. S3 08 Cr. 1109, 2012 WL 2861347 (S.D.N.Y. July 6, 2012) (holding respondent in civil contempt for violation of order to turn over $45,373.82 and holding it liable for sanctions in an amount of $1,000 per day, doubling each calendar day until contempt was purged).

A party may be held in contempt when (1) the order the party failed to comply with is clear and unambiguous, (2) the proof of non-compliance is clear and convincing, and (3) the party has not diligently attempted in a reasonable manner to comply with the order. Paramedics Electromedicina Comercial Ltda. v. GE Med. Sys. Info. Tech., 369 F.3d 645, 655 (2d Cir. 2004). It need not be established that the violation was willful. Id. By introducing clear and convincing proof of non-compliance, a party makes out a prima facie case for civil contempt. Donovan v. Sovereign Security Ltd., 726 F.2d 55, 59 (2d Cir. 1984). The contemnor may avoid a finding of contempt only by demonstrating its inability to comply with the Court's order. Huber v. Marine

4

Midland Bank, 51 F.3d 5, 10 (2d Cir. 1995) (contemnor must show "clearly, plainly and unmistakably that compliance is impossible"); see also Donovan, 726 F.2d at 59-60 ("Once the proper showing to warrant civil contempt was made and the heavy burden of demonstrating inability to comply was not met, the judge should have entered an order holding defendants in contempt . . . .")

## II. Schahin Should Be Held In Contempt and Sanctioned Accordingly.

Here, a finding of contempt is clearly warranted.

First, there can be no dispute that the First and Second Enforcement Orders are clear and unambiguous:

> **The Court orders the immediate turnover to CIMC by Black Gold, BDL, and SDL of funds sufficient to pay the judgment entered against them . . . .**

(Docket No. 56, Mem. Order at 13 (emphasis added).)

> **The Court hereby directs Schahin Holding and Schahin Engenharia, jointly and severally, to turn over to CIMC by August 20, 2013, funds in the amount of the judgment plus post-judgment interest; the Court likewise directs BDL, SDL, and Black Gold, against which a turnover order had already issued, to turn over such funds by August 20, 2013.**

(Docket No. 87, Mem. Order at 15 (emphasis added) (later extended to August 23).)

The language is simple, straightforward, and unmistakable. The absence of ambiguity is also evident in the fact that none of the Schahin Entities (via counsel or otherwise) has ever sought clarification of either of the two Enforcement Orders, or claimed that either of the two Enforcement Orders was in any regard unclear, despite ample opportunity to do so.[2]

---

[2] In fact, Linklaters, counsel for certain of the Schahin Entities, sent a letter to Debevoise on May 6, 2013, in which counsel argued, among other things, that Black Gold, BDL, and SDL had complied with the First Enforcement Order because they allegedly had no money. (The letter
*(footnote continued)*

5

Second, it is also entirely evident and undisputed that the Schahin Entities have not complied with the two Orders, having failed to turn over to CIMC Raffles by August 23, 2013, funds in the amount of the judgment plus post-judgment interest. (See Moodhe Decl. ¶ 2.)

Third, the Schahin Entities have not made diligent efforts to comply with the Orders, notwithstanding their belated delivery of the withdrawal certificates. Those certificates could have been delivered at any time prior to Friday; to do so in the teeth of this pending motion only proves Respondents' lack of effort to comply with this Court's Orders. Moreover, there appears to be an almost equal amount of funds still held at Deutsche Bank that could likewise be released to pay the judgments, but as to which the Schahin Entities have taken no action. (Moodhe Decl. ¶ 4.) In short, the record bespeaks of Respondents doing as little as possible, as slowly as possible, to feign compliance in the hope of avoiding sanctions. The requirement of diligence leaves no room for Respondents' minimalist approach.

The Court has already considered and rejected -- twice -- the contention by BDL and SDL that they lack the ability to comply with the Orders. In the First Enforcement Order, the Court held that BDL and SDL were judicially estopped from claiming lack of funds, based on their prior representation in New York State Supreme Court that "[i]f final judgments or awards are rendered against Defendants, the Defendants of course will satisfy them," and that they "have substantial net worth and assets that are more than sufficient to pay any judgments that might be rendered against them." (Docket No. 56, Mem. Order at 10 n.3 (internal quotation marks and citation omitted); see also Docket No. 87, Mem. Order at 11-12.) The Court's finding on that

---

*(footnote continued)*
was previously submitted as an exhibit in support of the Second Enforcement Motion. (Docket No. 70-6.)) Nowhere in the letter did Schahin's counsel express uncertainty as to the meaning of the First Enforcement Order.

subject is now law of the case. E.g., United States v. Uccio, 940 F.2d 753, 758 (2d Cir. 1991) ("[W]hen a court has ruled on an issue, that decision should generally be adhered to by that court in subsequent stages in the same case."); United States v. Quintieri, 306 F.3d 1217, 1225 (2d Cir. 2002) (prior decision on an issue should generally be adhered to unless "cogent and compelling reasons militate otherwise") (citations omitted). And, of course, the Court re-affirmed its ruling in the Second Enforcement Order, on August 6, 2013, which again directed payment by BDL and SDL.[3]

Nor is there any dispute that Schahin Respondents have substantial assets they could sell -- and that Schahin could pay substantial sums on the judgments, even without liquidating assets. On Friday, August 24, 2013, Respondents produced the 2012 audited financial statement for Schahin Engenharia. This statement reveals that, as of December 31, 2012, Schahin Engenharia

REDACTED

Despite having substantial resources available to them today to pay the Judgments, Respondents refuse to touch them. The fact that certain restrained funds at Deutsche Bank or Petrobras might someday be applied to reduce the Judgment debt does not insulate Respondents' other assets, nor immunize them from the contempt power of this Court.

---

[3] More recently, BDL and SDL have argued in related arbitration proceedings in London that they should not be required to post security for costs on the basis that (1) they have substantial equity value in the SS Amazonia and the SS Pantanal and (2) they are able to borrow funds from related entities (including Schahin Engenharia) to satisfy any order for costs. It is only before this Court that Schahin Respondents cry that they are poor, a claim that is belied by their own sworn testimony.(Moodhe Decl. ¶7.)

7

For all the foregoing reasons, the Court should hold the Schahin Entities in contempt and sanction them by assessing a fine against them, jointly and severally, in the initial amount of $500,000, which is well under 1% of the principal amount of the outstanding judgments, and order that this fine is to double daily until the Judgments are paid in full.[4]

### III. Schahin Should Pay CIMC Raffles' Costs and Reasonable Attorney's Fees In Bringing This Motion.

CIMC Raffles further requests that it be awarded its costs and reasonable attorney's fees in connection with this contempt proceeding. An award of attorney's fees is appropriate if the contemptuous party's actions were willful. Courts in the Second Circuit have held that "if the Court does find that the . . . violation was willful, it should then award attorneys' fees and costs unless there are persuasive grounds to deny them." GMA Accessories Inc. v. Eminent Inc., No. 07 Civ. 3219, 2008 WL 2355826, at *10 (S.D.N.Y. May 29, 2008) (internal quotation marks and citations omitted); see also Weitzman v. Stein, 98 F.3d 717, 719 (2d Cir. 1996) (district court finding willful contempt "would need to articulate persuasive grounds for any denial of compensation for the reasonable legal costs of the victim of contempt").

On a contempt motion, willfulness is found where the contemptuous party "had actual notice of the court's order, was able to comply with it, did not seek to have it modified, and did not make a good faith effort to comply." N.Y. State Nat'l Org. for Women v. Terry, 952 F. Supp. 1033, 1044 (S.D.N.Y. 1997) (internal quotation marks and citation omitted), aff'd, 159 F.3d 86

---

[4] For the avoidance of doubt, the Schahin Entities will owe $500,000 on the first day after entry of an order on this motion, an additional $1 million on the second day, an additional $2 million on the third day, with additional sanctions to cease after the Schahin Entities comply with the Court's Enforcement Orders and bring funds into New York to pay the Judgments.

(2d Cir. 1998). Here, the Schahin Entities unquestionably received notice of the Orders and could have complied with them, but made no effort whatsoever to do so.

      For the reasons stated above, a finding of willfulness is warranted, as is an award of costs and attorney's fees. The circumstances here demonstrate that the Schahin Entities deliberately flouted the Orders. Therefore, strong remedies are necessary to encourage their future compliance. (CIMC Raffles will provide an accounting of its attorney's fees in connection with this motion upon a finding by the Court that the Schahin Entities are in contempt.)

## CONCLUSION

For the foregoing reasons, CIMC Raffles respectfully request that this Court find Respondents in contempt and issue an order:

(i) Fining Respondents $500,000 per day, doubling and cumulating each day that they continue to fail to comply with the Court's First and Second Enforcement Orders;

(ii) Granting CIMC Raffles their reasonable costs and attorney's fees in bringing this contempt motion; and

(iii) Granting such other and further relief as the Court finds just and proper.

Dated: New York, New York
August 27, 2013

Respectfully submitted,
DEBEVOISE & PLIMPTON LLP

By: Joseph P. Moodhe
jpmoodhe@debevoise.com
919 Third Avenue, 31st Floor
(212) 909-6000


SCHULMAN BLACKWELL LLP
Dan J. Schulman
dschulman@schulmanblackwell.com
Deric Gerlach
dgerlach@schulmanblackwell.com
11 Broadway, Suite 615
New York, New York 10004
(646) 225-6600


*Co-counsel for CIMC Raffles*

10