**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ——————————————— ) | |
| CIMC RAFFLES OFFSHORE (SINGAPORE) ) PTE. LTD. AND YANTAI CIMC RAFFLES ) OFFSHORE LIMITED, ) | |
| ) | |
|     Petitioners, ) | 13 Civ. 0052 (JSR) |
| ) | ECF Case |
|     v. ) | |
| ) | |
| SCHAHIN HOLDING S.A., SCHAHIN ) ENGENHARIA S.A., SEA BISCUIT ) INTERNATIONAL INC., BLACK GOLD ) DRILLING LLC, BAERFIELD DRILLING ) LLC AND SORATU DRILLING LLC, ) | |
| ) | |
|     Respondents. ) | |
| ——————————————— ) | |

**MEMORANDUM OF LAW IN OPPOSITION TO JUDGMENT**
**DEBTORS' MOTION TO STAY ENFORCEMENT**

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ........................................................................1

FACTUAL BACKGROUND ...........................................................................2

ARGUMENT ..................................................................................................7

I.     JUDGMENT DEBTORS' MOTION IS ANOTHER EFFORT TO
       STYMIE CIMC RAFFLES' RIGHT TO COLLECT ON ITS
       JUDGMENTS AND TO INSERT THE COURT INTO THE
       SETTLEMENT PROCESS AGAINST ITS STATED POLICY. ...........................7

       A.     Judgment Debtors Consistently Failed to Make Reasonable Efforts
              to Satisfy the Judgments ................................................................7

       B.     Judgment Debtors' Financial Statements & Sworn Statements
              Establish They Had Assets to Pay the ECA Debt When First Due
              in 2011 and When the Award Was Issued in 2012 .......................8

       C.     Schahin Should Have Secured Financing Immediately Following
              the Issuance of the Award Over Six Months Ago ......................10

       D.     By Asking the Court to Re-Visit the Stay It Previously Declined to
              Provide, Movants Are Seeking to Have The Court Interfere With
              and Dictate the Terms of Settlement ..........................................11

II.    The Financial Information Judgment Debtors provide Does Not Support
       the Delay they seek ................................................................................12

III.   Judgment Debtors have not Made the Necessary showing to Support a
       Atay of Enforcement...............................................................................13

CONCLUSION .............................................................................................18

# TABLE OF AUTHORITIES

**CASES**

*2301 Jerome Ave. Realty Corp. v. Di Paolo*, 737 N.Y.S.2d 816 (Sup. Ct. 2002) .......................... 15

*Bulkmatic Transp. Co. v. Pappas*, 99 Civ. 12070, 2002 WL 975625 (S.D.N.Y. May 9, 2002) ....................................................................................................................... 11

*HSBC Bank USA v. Silverline Techs. Ltd.*, 336 Fed. Appx. 97 (2d Cir. 2009) .............................. 15

*Kahara Bodas Co., LLC v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111 (2d Cir. 2007) ................................................................................. 17

*Midlantic Nat'l Bank/North v. Reif*, 732 F. Supp. 354 (E.D.N.Y. 1990) ...................................... 13

*Negron v. Woodhull Hosp.*, 173 Fed. Appx. 77 (2d Cir. 2006) ..................................................... 11

*NML Capital, Ltd. v. Republic of Argentina*, No. 12-105(L), slip op. (2d Cir. Aug. 23, 2013) ....................................................................................................................... 17

*Pine St. Assocs., L.P. v. Southridge Partners, L.P.*, No. 65109/2010, 2011 WL 10646532 (N.Y. Sup. Ct. Sept. 7, 2010) ..................................................................... 15

*Raji v. Bank Sepah-Iran*, 139 Misc. 2d 1026 (N.Y. Sup. Ct. 1988) .............................................. 16

*Seyfarth v. Bi-County Elec. Corp.*, 341 N.Y.S.2d 533 (Sup. Ct. 1973) ......................................... 14

**STATUTES**

CPLR § 5240 ..................................................................................................................1, 13, 14, 15

CPLR § 5234 ............................................................................................................................... 16

Petitioners CIMC Raffles Offshore (Singapore) Limited and Yantai CIMC Raffles Offshore Ltd. (collectively, "CIMC Raffles") respectfully submit this memorandum of law in opposition to Respondents Schahin Engenharia S.A. ("Schahin Engenharia"), Black Gold Drilling LLC ("Black Gold"), Baerfield Drilling LLC ("BDL") and Soratu Drilling LLC's ("SDL") (collectively, "Judgment Debtors") motion to stay enforcement of the judgments issued against them by this Court and entered by the Clerk of the Court on March 19, 2013 and April 24, 2013 ("Judgments").

## PRELIMINARY STATEMENT

Judgment Debtors, a group of corporations by their own estimation worth hundreds of millions of dollars, have asked this Court to prohibit CIMC Raffles from collecting on validly obtained $71 million judgments issued by this Court that have yet to be even partially satisfied. This request is unreasonable, contrary to controlling precedent, and an affront to the public policy objectives of the law governing arbitration awards and the enforcement of judgments. Judgment Debtors seek a complete stay of enforcement activities pursuant to New York C.P.L.R. 5240. But that provision only grants courts the ability to modify enforcement procedures on equitable grounds in the "gravest of circumstances" and where enforcement tools are used brutally and improperly to harm judgment debtors. The procedures followed by CIMC Raffles in this case are common place, and the only alleged harm that has been brought upon Judgment Debtors has been of their own making.

Judgment Debtors have had over two years to pay the debt they owed to CIMC Raffles.  They have resisted payment at every turn and have failed to secure in a timely manner the outside financing they now claim they need to pay the Judgments.  Although Judgment Debtors allege they have insufficient liquidity to pay the Judgments, the evidentiary proof they have offered to the Court proves precisely the opposite, and they also are judicially estopped from claiming to the contrary.  The balance of equities strongly favors not granting a stay, which would put the Court's thumb on the scale in favor of the Judgment Debtors if settlement talks continue, and harm CIMC Raffles' ability to maintain priority over other lien holders.  This Court has a vested interest in upholding the integrity of its own judgments and turnover orders, which means that it should encourage, not inadvertently impair, judgment holders in their reasonable collection attempts.

## FACTUAL BACKGROUND

On August 23, 2010, CIMC Raffles and Respondents entered into two Advance and Equity Conversion Agreements ("ECAs"), under which CIMC Raffles agreed to lend Respondents approximately $66 million ("ECA Debt") that Respondents were either to repay with interest, or convert into equity in SDL and BDL.  The ECAs were governed by New York law and disputes under them had to be resolved by arbitration in New York City.  Respondents failed to convert the loan into equity, and pursuant to the terms of the ECAs, on July and November 2011 the ECA Debt fell due.  (Dkt. 1 at 18.)  Judgment Debtors never disputed that they owed the debt to CIMC Raffles, and in response to

CIMC Raffles' demands for payment, they asked for more time and did not repay a penny of the sums due.  Declaration of Joseph P. Moodhe ("Moodhe Decl."), Ex. 1. After months of failed negotiations, on May 5, 2012, CIMC Raffles commenced arbitration in New York to collect on the ECA Debt.

In aid of that arbitration, CIMC Raffles also initiated an attachment proceeding before Justice Barbara Kapnick in the New York Supreme Court, captioned as *CIMC Raffles Offshore (Singapore) Ltd. et al. v. Schahin Holding, S.A., et al.*, Index No. 650850/12 (N.Y. Sup. Ct.).  During these attachment proceedings, the Chief Financial Officer of all of the Judgment Debtors, Fernando Schahin, expressly testified (orally and in writing) to the Supreme Court that Judgment Debtors would pay any award or judgment issued in favor of CIMC Raffles by any tribunal or court, and explained in detail that Judgment Debtors had ample financial resources to make such payments. (Dkt. 34, Ex. 1 ("Schahin Aff.").)  Relying on Mr. Schahin's testimony that Judgment Debtors had sufficient assets and liquidity to pay any arbitration award that could be issued against them, Justice Kapnick dismissed CIMC Raffles' attachment petition on August 30, 2012.[1]

---

[1] Justice Kapnick reasoned that "Petitioners have failed to establish that any arbitral award to which they may be entitled may be rendered ineffectual because of respondents' insolvency.  . . . as respondents point out, petitioners never allege respondents are incapable of paying a final money judgment against them.  To the contrary, in his sworn affidavit, Mr. Schahin states that respondents have substantial assets and the ability and willingness to pay any final judgment or award that might ultimately be rendered against them." *CIMC Raffles Offshore (Singapore) Ltd. et al. v. Schahin Holding, S.A., et al.* Index No. 650850/12 (N.Y. Sup. Ct. Aug. 30, 2012) (Kapnick J.) (Dkt. 47, Ex. 8 at 16-17.)

On December 28, 2012, ruling that the ECAs were "clear and unambiguous," the arbitral tribunal issued an award in CIMC Raffles' favor and ordered Judgment Debtors to repay CIMC Raffles the ECA Debt plus interest and arbitration costs within thirty days. (Dkt. 1 at 26, 31-32.)  On January 2, 2013, CIMC Raffles filed a petition to confirm the award and enter it as a judgment.  After receiving the first Judgment against Black Gold, SDL and BDL, CIMC Raffles took its very first post-judgment enforcement action on April 3, 2013 by serving restraining notices.  (Dkt. 67.)  On April 30, 2013, this Court ordered Black Gold, BDL and SDL to bring funds into New York sufficient to pay the Judgment ("April 30 Order").  (Dkt. 56.)  In the same order, this Court also permitted CIMC Raffles to restrain and collect on Schahin Engenharia's offshore operating expenses as paid out of certain accounts maintained in New York at Deutsche Bank Trust Company Americas.  Following the Court's order, Judgments Debtors stopped issuing the certificates that would permit Schahin Engenharia to receive those operating expense payments, and thus effectively prevented CIMC Raffles from collecting under the April 30 Order.  After further motion practice, on August 6, 2013, this Court ordered all Judgment Debtors to bring funds into New York by August 20, 2013 to satisfy the Judgments.  (Dkt. 86.)

During these weeks, CIMC Raffles and Judgment Debtors had engaged in efforts to resolve their dispute.  It was not until August 13, 2013 that the Judgment Debtors made an offer that included a payment schedule that met CIMC Raffles' stated demands. Judgments Debtors gave CIMC Raffles 24 hours to accept the offer, which CIMC Raffles did, even though Judgment Debtors had not yet provided the financial disclosures CIMC

Raffles had requested weeks before.  (Moodhe Decl. ¶¶ 4-5.)  On the understanding that remaining terms would be negotiated promptly, both parties represented to the Court at a hearing on August 15, 2013 that a settlement appeared imminent. (Moodhe Decl., Ex. 2 (Transcript of Aug. 15, 2013 Hearing) at 4:2-15, 6:21-25.)  CIMC Raffles subsequently also consented to delay the turnover deadline until August 23, 2013, which the Court so ordered on August 20, 2013. (Dkt. 89.)  However, during further discussions, Judgment Debtors for the first time advised that (i) the financing source still had not approved advancing the funds, (ii) they needed an additional 60 days to arrange financing for the offer that Judgment Debtors had insisted CIMC Raffles respond to in 24 hours, and (iii) Judgment Debtors also changed the payment schedule they had previously offered and which CIMC Raffles had accepted.  (Moodhe Decl. ¶ 7.)

Discussions between the two sides continued through August 23, when CIMC Raffles' legal department head, LUI Yen Chow, who had full authority to settle, flew in from Singapore  to attend settlement talks with the General Counsel of Judgment Debtors and their outside counsel, Linklaters LLP.  Mr. LUI also was accompanied to these discussions by the lead partners from both Debevoise & Plimpton LLP and Schulman Blackwell LLP.  However, no representatives from Judgment Debtors attended the settlement meeting nor did Mr. Hessler, the lead partner from Linklaters LLP.  The only person who attended the settlement conference for Judgment Debtors was Mr. Hessler's lead associate Patrick Ashby.  (*Id.* ¶¶ 8-9.)

5

Nevertheless, CIMC Raffles still tried to settle.  In order to maintain the payment schedule that Judgment Debtors had offered, CIMC Raffles suggested that the Judgment Debtors provide funds from their own resources (in addition to the amounts restrained and those owed by Petrobras) in advance of whatever financing they might be able to obtain from Petrobras, placing the risk of Petrobras not providing financing squarely on Respondents.  Mr. Ashby called Brazil, and CIMC Raffles was advised that Judgment Debtors refused to provide any funds from their own accounts in Brazil.  (*Id.* ¶ 10.)

It was only during the course of the phone call when CIMC Raffles spoke with the Court's law secretary to discuss the filing of a contempt motion on the afternoon of August 23 that Judgment Debtors announced that an unspecified amount was going to be paid to CIMC Raffles.  (Moodhe Decl. ¶ 11.)  Judgment Debtors informed CIMC Raffles on August 26, 2013 that they had filed a certificate permitting release of $7.8 million of operating expense payments to Schahin Engenharia.  (Moodhe Decl., Ex. 3 (Email exchange between D. Schulman and P. Ashby).)  At the time filing of this memorandum of law, these funds have not been delivered to CIMC Raffles.  Nor has any money been paid to CIMC Raffles from other sources to partially satisfy the Judgments, including the $4 million from Petrobras mentioned at page 13 of Judgment Debtors' memorandum of law.  (Moodhe Decl. ¶ 13.)   In short, Judgment Debtors have not paid one penny on their undisputed debts for two years, since the debts were due in 2011.

## ARGUMENT

I.    **JUDGMENT DEBTORS' MOTION IS ANOTHER EFFORT TO STYMIE CIMC RAFFLES' RIGHT TO COLLECT ON ITS JUDGMENTS AND TO INSERT THE COURT INTO THE SETTLEMENT PROCESS AGAINST ITS STATED POLICY.**

   A.    **Judgment Debtors Consistently Failed to Make Reasonable Efforts to Satisfy the Judgments**

Since 2011, Judgment Debtors have resisted every single one of CIMC Raffles' efforts to collect on the uncontested debt emanating from the ECAs. Their latest settlement offer, issued on August 13, 2013, was the first to meet in concrete terms CIMC Raffles' long-standing requirement that Judgments be paid by the end of 2013. This settlement offer only came at the last minute as Judgment Debtors scrambled to avoid missing the August 20th turnover deadline imposed by this Court and the inevitable contempt motion. On the understanding that the remaining settlement terms would be negotiated promptly, CIMC Raffles made representations to the Court that the Parties were close to an agreement in principle during the hearing on August 15, 2013. It is simply not correct that CIMC Raffles is here to cause injury rather than get paid—that is an absurd proposition belied by CIMC Raffles' optimism in reporting to the Court an approaching settlement on August 15th. (Moodhe Decl. Ex. 2 at 4:2-15.) It was only after the hearing that CIMC Raffles was told that a substantial amount of time—up to 60 days—was going to be needed for the financing to be arranged with Petrobras. The settlement talks broke down over CIMC Raffles' attempts to have the Judgment Debtors find alternative ways that appeared available to maintain the offered payment schedule.

7

**B.      Judgment Debtors' Financial Statements & Sworn Statements Establish They Had Assets to Pay the ECA Debt When First Due in 2011 and When the Award Was Issued in 2012**

This Stay Motion is yet another attempt by Judgment Debtors to deflect CIMC Raffles' rightful actions to collect the approximately $71 million, plus interest, now due to them.  What makes this Stay Motion manifestly unreasonable is that Judgment Debtors have had the last two years to satisfy this debt.  Judgment Debtors' constant representations—including in the submissions supporting their motion to stay enforcement—about how financially healthy they are demonstrate that they certainly could have paid what they owe CIMC Raffles when the debt arose in 2011 and  when the Award was issued in 2012.  (Resp't Br. 4; Declaration of José Isaias Hoffman, Aug. 27, 2013 ("Hoffman Decl.").)  As demonstrated by their financial statements, Respondents had cash and other resources then, and they even swore to the New York Supreme Court that they could use their cash resources to pay any judgments or awards issued against them. (Hoffman Decl., Exs. A, B, D, E.)  In April 2012, Fernando Schahin testified to the Supreme Court that "if final judgments or awards are rendered against the Defendants, the Defendants of course will satisfy them."  (Schahin Aff. ¶14.)  To support his claim, Mr. Schahin lauded the Judgment Debtors' high net worth and impressive liquidity ratios. He told the Supreme Court then that:

> The Defendants' net worth far exceeds the total amount claimed by the Plaintiffs in the proceedings that they have brought in London and in the arbitration they assert they will commence in New York. . . .  Defendants also have a high current liquidity ratio, which demonstrates their ability to adequately service their short-term debt obligations as they became due.  Within the oil and gas industry, a ratio

8

> above 1 demonstrates that a company is financial healthy.
> As of December 31, 2011, Schahin Holding's current
> liquidity ratio was 1.1505, and Schahin Engenharia's
> current liquidity ratio was 1.7157.  Defendants also have a
> high general liquidity ratio, which shows their ability to
> satisfy their long-term debt obligations as they become due.
> Within the oil and gas industry, a ratio above 1
> demonstrates that a company is financially healthy.  As of
> December 31, 2011, Schahin Holding's general liquidity
> ratio was 4.0892 and Schahin Engenharia's general
> liquidity ratio was 3.4169.

(Schahin Aff. ¶¶ 16-18.)  Today, Mr. Schahin would like this Court to believe that

Judgment Debtors cannot satisfy the Judgments because of "liquidity restraints" and that

Judgment Debtors are in desperate need of outside financing.  (Declaration of Fernando

Schahin, Aug. 27, 2013 ¶¶ 2-5.)  However, in response to a prior motion to limit CIMC

Raffles' enforcement abilities, in its April 30 Order, this Court ruled that, because the

Supreme Court relied on Mr. Schahin's statements to dismiss the attachment petition, it

would be inequitable to allow Judgment Debtors to avoid enforcement now.[2]  In the face

of Mr. Hoffman's declaration noting the overall financial health of the Judgment Debtors,

the Court's previous logic, and the doctrines of judicial estoppel and law of the case

supports the Court coming to the same conclusion now.  Judgments Debtors cannot now

convert their cash into new projects to avoid paying CIMC Raffles, and then claim

liquidity poverty (although not asset poverty) to prevent valid enforcement attempts.  In

---

[2] April 30 Order at 10 n.3 ("The Court also notes that respondents have represented in
New York State Supreme Court that '[i]f final judgments or awards are rendered against
the Defendants, the Defendants of course will satisfy them,' and that they 'have
substantial net worth and assets that are more than sufficient to pay any judgments that
might be rendered against them.' . . . To the extent that respondents induced that court's
reliance on their representations, it would be inequitable to allow them to avoid a restraint
on their assets now under the theory that they will not have enough funds to continue to
operate." (citations omitted)).

particular, according to publicly available reports, Respondents recently entered into a joint venture with MODEC, Inc. of Japan to purchase and operate a floating production, storage and offloading system ("FPSO") (in laymen's terms, huge oil tankers converted and used to store oil from offshore oil wells).[3]

### C. Schahin Should Have Secured Financing Immediately Following the Issuance of the Award Over Six Months Ago

Even if Mr. Schahin's testimony from April 2012 is discounted and Judgment Debtors are not judicially estopped, and Judgment Debtors do in fact need outside financing to pay for the Judgments, they had every opportunity to obtain it months ago before CIMC Raffles began enforcement activities in April 2013. (Dkt. 67; Dkt. 32.) Judgment Debtors received the Award on December 28, 2012. They knew that CIMC Raffles would be petitioning to convert the Award into a judgment, which occurred on January 2, 2013, and that they had no defenses against confirmation of the Award. Instead of obtaining financing at the beginning of 2013, Judgment Debtors made every effort to ignore their obligations and evade satisfaction, and for three whole months there was not even the service of a single restraining notice or any effort to enforce the Award. Judgment Debtors now bemoan that CIMC Raffles' enforcement attempts have crimped their access to traditional lending. (Resp't Br. 10.) If this is the case, Judgment Debtors are solely to blame for not paying their debts immediately, not CIMC Raffles for trying to obtain satisfaction after providing Judgment Debtors with numerous grace periods and

---

[3] *See* MODEC, Inc. Press Release, March 22, 2013, available at www.modec.com/up_pdf/20130322-press_release_en.pdf (announcing a new FPSO project in which the Schahin Group plans to invest up to 15%).

opportunities to pay, even after the Award and even after the initial judgment was obtained.

**D.**     **By Asking the Court to Re-Visit the Stay It Previously Declined to Provide, Movants Are Seeking to Have The Court Interfere With and Dictate the Terms of Settlement**

This Court has previously informed the Parties that it does not participate in any aspect of settlement between litigants. (Moodhe Decl. Ex. 2, 17:20-2.)  This Court has also informed the Parties that it would not further delay proceedings on the contempt motion.  With this Stay Motion, Judgment Debtors are asking the Court renege on both of these stated positions.

Judgment Debtors attempt to gild their invitation to the Court by castigating CIMC Raffles' settlement posture as being unreasonable and assumed in bad faith to injure them.  The law is clear that no party has an obligation to compromise a claim, even if others may believe that refusal to be inexplicable or unreasonable.  *See, e.g., Negron v. Woodhull Hosp.*, 173 Fed. Appx. 77, 79 n.1 (2d Cir. 2006) (summary order) (quoting *Bulkmatic Transp. Co. v. Pappas*, 99 Civ. 12070, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002) ("[A] court cannot force litigants to settle an action . . . .").  However, contrary to the portrait painted by Judgment Debtors, CIMC Raffles has articulated a reasoned position throughout the negotiations that was finally met, and then unilaterally taken off the table, by the Judgment Debtors.

Frankly, it matters not whose precise version of events is correct, or whether one or the other side was being unreasonable in the final moments of negotiation.  The simple

fact is settlement was not achieved.  However, were the Court to grant the stay of enforcement sought here, it would effectively be endorsing the settlement demand and obdurate negotiating strategy of Judgment Debtors, and forcing on CIMC Raffles terms that it believes are inappropriate and less favorable than those previously offered.  We submit that is a result that would be directly contrary to the Court's own view of its role in these proceedings.

## II.   THE FINANCIAL INFORMATION JUDGMENT DEBTORS PROVIDE DOES NOT SUPPORT THE DELAY THEY SEEK

In their memorandum of law in support of their motion, Judgment Debtors reassured the Court that they are profitable and have sufficient assets to pay the Judgments.  (Resp't Br. 3-6.)  Judgment Debtors sole-alleged limitation is that they lack liquidity.  (*Id*. at 6.) ████████████████████████████████████

████████████████████████████████████████████████████████

███████████████████████████████████████ ██████████████

████████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████████████

---

[4] The US dollar amounts in this paragraph were calculated by using the Brazilian Real exchange rate provided by the Federal Reserve System on the date the financial statement was made.  *See* http://federalreserve.gov/releases/h10/hist/dat00_bz.htm.



### III. JUDGMENT DEBTORS HAVE NOT MADE THE NECESSARY SHOWING TO SUPPORT A STAY OF ENFORCEMENT

This is Judgment Debtors' second attempt to use Section 5240 of the CPLR to prevent CIMC Raffles' from enforcing the Judgments.  (Dkt. 40.)  In rejecting the first attempt (aimed at limiting the effectiveness of the restraining notice served on Schahin Engenharia), this Court held that "only the gravest circumstances warrant CPLR 5240 equitable modification in the face of a valid judgment."  (Apr. 30 Order at 10 (citing *Midlantic Nat'l Bank/North v. Reif*, 732 F. Supp. 354, 357 (E.D.N.Y. 1990)).)  That principle is all the more relevant in the face of Judgment Debtors' most recent effort to delay payment of their debts, and to frustrate enforcement.

"CPLR 5240 is plainly designed to prevent the *brutal* use of legal procedures against a judgment debtor."  *Midlantic Nat'l Bank*, 732 F. Supp. at 356 (emphasis added).  Judgment Debtors have failed to establish that they face grave circumstances or that

CIMC Raffles' use of restraining notices, writs of execution or turnover orders granted by this Court have been a "brutal" use of legal procedures.  Circumstances in which courts have determined judgment debtors have met the CPLR 5240 standard are limited, and most involve dire factual circumstances, such as relief from the sale of a home which would render judgment debtors homeless. *See Seyfarth v. Bi-County Elec. Corp.*, 341 N.Y.S.2d 533, 535 (Sup. Ct. 1973) ("While the 5240 remedy must be used sparingly, its purpose is to protect persons from unnecessarily harsh use of legal procedures.  Perhaps nowhere is this more pertinent than in the area of unredeemable sheriff's sales of residential property.").  "Typically, CPLR 5240 is invoked in the belief that a particular enforcement procedure is either inappropriate or is being abused."  11 Weinstein, Korn & Miller, N.Y. Civ. Prac. ¶ 5240.00.

Although Judgment Debtors are not explicit about the scope of their request, presumably they wish to stay the turnover orders and prevent CIMC Raffles from issuing any new writs of execution and restraining notices, or prosecuting additional motions for receivership, installment payments or turnover orders.  Judgment Debtors basically argue that a CPLR 5240 stay of enforcement is justified because (i) CIMC Raffles' "aggressive" enforcement attempts have been annoying and disruptive to their business; (ii) a stay supposedly would allow them to obtain financing from Petrobras for the payment of the Judgments; and (iii) CIMC Raffles would not be prejudiced by the stay. (Resp't Br. 1, 12-14.)  Even if true, Judgment Debtors' allegations are not sufficient to meet the high standards required by CPLR 5240.  Unquestionably, any judgment creditors' attempts to collect a judgment from a recalcitrant judgment debtor can be

categorized as annoying and disruptive if the judgment debtor has not provided for payment of the debt in its business plan.  CIMC Raffles' enforcement actions have been predictable and common place, seeking to locate executable assets wherever they may lie, and are not the sort of behavior intended to be restricted by CPLR 5240.  *See HSBC Bank USA v. Silverline Techs. Ltd.*, 336 Fed. Appx. 97, 98 (2d Cir. 2009) (rejecting stay of enforcement to revitalize business because judgment creditor was entitled to immediate payment).  CPLR 5240 is certainly not applicable in cases, such as this one, where judgment debtors have brought embarrassment and harm to themselves by refusing to pay an uncontested debt for over two years.

Judgment Debtors have failed to provide the Court with a case where a court stayed enforcement in an analogous situation.  For support, Judgment Debtors cite only to *Pine St. Assocs., L.P. v. Southridge Partners, L.P.*, No. 65109/2010, 2011 WL 10646532, (N.Y. Sup. Ct. Sept. 7, 2010) and *2301 Jerome Ave. Realty Corp. v. Di Paolo*, 737 N.Y.S.2d 816 (Sup. Ct. 2002).  However, in *Pine St.* the court provided for a stay of enforcement only because the judgment debtor had evidence to establish it had already paid the judgment in full.  *Pine St. Assocs.*, 2011 WL 10646532, at *2-*4.  And in *2301 Jerome Ave.*, to avoid a technicality in a mortgage transfer deal, the court granted the judgment debtor a ten-day stay so he could pay his debt, the financing of which was *already* fully secured and sitting in an escrow account.  *2301 Jerome Ave. Realty Corp.*, 737 N.Y.S.2d at 817-18.

As explained earlier, Judgment Debtors have had more than six months since the issuance of the Award to obtain financing, if their previous representations of sufficient financial wherewithal were overstated or had been rendered moot.  There is no equitable justification for staying all of CIMC Raffles' enforcement procedures in order to allow substantially well-heeled enterprises to possibly obtain financing from a particular third-party.  Moreover, a stay would prejudice CIMC Raffles in a variety of ways.  First, Judgment Debtors have only partially provided CIMC Raffles answers to its interrogatories and document requests.  A stay of enforcement would prevent CIMC Raffles from receiving this missing discovery.  A stay would also prevent CIMC Raffles from learning the location of Judgment Debtors' other unencumbered assets, as well as determining if Judgment Debtors have violated the restraining notices issued on them, and then seeking relief for any such prior violations.  Second, the writs of execution CIMC Raffles has levied against the assets of the Judgment Debtors provide CIMC Raffles priority over other judgment holders.  *See* CPLR § 5234(b).  The time limitations imposed under the CPLR for the return of writs and satisfaction may threaten whatever priorities CIMC Raffles have achieved if CIMC Raffles is prevented from taking appropriate action to extend the writs.  Consequently, the stay would leave CIMC Raffles in a worse position—exactly the opposite of what Judgment Debtors claim the stay is intended to do.

Finally, Judgment Debtors' stay request should be denied because it violates the public policy objectives adhered to by this Court to protect the integrity of its own money judgments and enforcement orders.  *See, e.g., Raji v. Bank Sepah-Iran*, 139 Misc. 2d

16

1026, 1032 (N.Y. Sup. Ct. 1988) (reasoning that "that public policy mandates that no

obstacle be put in the path of a judgment creditor seeking to enforce the judgment of a

court of competent jurisdiction." (citation omitted)); *see also Kahara Bodas Co., LLC v.*

*Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 500 F.3d 111, 120 n.11 (2d

Cir. 2007) ("[A] court may freely protect the integrity of its judgments by preventing

their evasion through vexatious or oppressive relitigation." (citation omitted)).  By

requesting a stay, Judgment Debtors are asking the Court to reconsider and dilute its

previously rendered rulings and to redefine CIMC Raffles' rights under those orders.

Such an action would undercut the faith and respect for the efficacy of money judgments

and enforcement orders issued by courts in New York—clearly an errant signal that this

Court would not wish to send.  In a recent ruling relating to the refusal of Argentina to

pay bondholders in accordance with orders issued by this Court, the Second Circuit made

the following comment:

> [O]ur decision affirms a proposition essential to the
> integrity of the capital markets: borrowers and lenders may,
> under New York law, negotiate mutually agreeable terms
> for their transactions, but they will be held to those terms.
> We believe that the interest—one widely shared in the
> financial community—in maintaining New York's status as
> one of the foremost commercial centers is advanced by
> requiring debtors, including foreign debtors, to pay their
> debts.

*NML Capital, Ltd. v. Republic of Argentina*, No. 12-105(L), slip op. at 24-25 (2d Cir.

Aug. 23, 2013) (citation omitted).  Those observations apply no less to the private entities

before the Court today.

## CONCLUSION

For all the foregoing reasons, Petitioners respectfully request that Judgment Debtors' Motion to Say Enforcement be denied.


Dated: New York, New York
       September 3, 2013


                                    **DEBEVOISE & PLIMPTON LLP**

                                    By: _____
                                         Joseph P. Moodhe
                                         Nwamaka G. Ejebe
                                    919 Third Avenue
                                    New York, New York 10022
                                    Tel: (212) 909-6000
                                    Email: jpmoodhe@debevoise.com


                                    **SCHULMAN BLACKWELL LLP**
                                    Dan J. Schulman
                                    Deric Gerlach

                                    11 Broadway, Suite 615
                                    New York, New York 10004
                                    Tel: (646) 225-6600
                                    Email: dschulman@schulmanblackwell.com


                                    *Co-counsel for Petitioners*